**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| UNCONDITIONAL LOVE INC., *et al.*,[1] | Case No. 23-11759 (MFW) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR INTERIM AND FINAL**
**ORDERS (I) AUTHORIZING DEBTORS TO PAY CERTAIN**
**PREPETITION TAXES AND FEES AND RELATED OBLIGATIONS**
**AND (II) AUTHORIZING THE BANK TO HONOR AND PROCESS**
**CHECK AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO**

The debtors and debtors in possession in the above-captioned cases (the "Debtors") hereby file this motion (this "Motion") for the entry of interim and final orders, substantially in the forms attached hereto as Exhibit A (the "Interim Order") and Exhibit B (the "Final Order," and together with the Interim Order, the "Proposed Orders"), (i) authorizing, but not directing, the Debtors, in their discretion, to pay certain prepetition taxes and fees and related obligations that are payable to certain local, state, and federal taxing and regulatory authorities, and (ii) authorizing the Debtors' bank and other financial institutions (collectively, the "Bank") to honor and process check and electronic transfer requests related to the foregoing. In support of the Motion, the Debtors rely upon and incorporate by reference the *Declaration of Erica Buxton in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"),[2] filed contemporaneously herewith. In further support of this Motion, the Debtors respectfully represent as follows:

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification number, are Unconditional Love Inc. d/b/a Hello Bello (5895), Unconditional Love Canada, Inc., and The Best Training Pants in the World Inc. (9369). The Debtors' headquarters is located at 17383 Sunset Blvd, Suite B200, Pacific Palisades, CA 90272.

[2]    Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the First Day Declaration.

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.       Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and legal predicates for the relief sought herein are sections 363(b), 507(a)(8), 541, and 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9013-1(m).

## BACKGROUND

4.      On the date hereof (the "Petition Date"), each of the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the Court.  The Debtors are authorized to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No official committee has been appointed in these Chapter 11 Cases, and no request has been made for the appointment of a trustee or an examiner.

6.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the First Day Declaration.

## RELIEF REQUESTED

7.      By this Motion, the Debtors request that the Court enter the Proposed Orders (i) authorizing, but not directing, the Debtors, in their discretion, to pay prepetition Taxes and Fees owed to the Taxing Authorities, subject to the $220,000 cap provided for in the Interim Order and the $1,210,000 cap provided for in the Final Order; and (ii) authorizing the Bank to honor and process check and electronic transfer requests related thereto.

## THE TAXES AND FEES

8.      In the ordinary course of business, the Debtors collect, incur, and pay a variety of taxes, including, without limitation, (i) sales and use taxes, (ii) property taxes, (iii) income and franchise taxes, (iv) regulatory taxes, and (v) miscellaneous import taxes (collectively, the "Taxes").[3] The Debtors also incur various fees owed to the Taxing Authorities (defined below) in connection with the operation of their business (collectively, the "Fees," and together with the Taxes, the "Taxes and Fees"). The Debtors remit the Taxes and Fees to federal, state, and local authorities on a periodic basis in accordance with applicable law (collectively, the "Taxing Authorities"). The Debtors pay Taxes and Fees through electronic transfers that are processed through the Bank.

---

[3]   By this Motion, the Debtors do not seek the authority to collect and remit state and federal employee-related withholding taxes. Such relief is requested in the *Debtors' Motion For Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Pay Certain Prepetition Employment Obligations and (B) Maintain Employee Benefits Programs and (II) Granting Related Relief*, filed contemporaneously herewith.

9.    The Debtors estimate that, as of the Petition Date, the aggregate amount of prepetition Taxes and Fees currently owed to the Taxing Authorities (including taxes accrued during the so-called "straddle" periods)[4] does not exceed approximately $1,210,000, of which $220,000 will become due within the first twenty-one (21) days of these Chapter 11 Cases.  The Taxes and Fees are comprised of current tax obligations and are not in respect of "catch-up" payments.

10.    The Debtors seek authority, but not direction, to pay prepetition Taxes and Fees owed to the Taxing Authorities in the ordinary course; provided, however, that: (i) during the interim period and pending entry of the Final Order, payments on account of Taxes and Fees that accrued, in whole or in part, prior to the Petition Date, shall not exceed $220,000 in the aggregate; and (ii) following entry of the Final Order, payments on account of Taxes and Fees that accrued, in whole or in part, prior to the Petition Date, shall not exceed $1,210,000 in the aggregate.

11.    The Debtors also request that: (i) the Bank through which checks to third parties are drawn and/or electronic payments are made pursuant to this Motion be authorized to receive, process, honor, and pay any and all such checks (whether issued or presented prior to or after the Petition Date) and electronic payments, and to rely on the representations of the Debtors as to which checks are authorized to be paid; and (ii) the Court schedule a hearing to consider entry of

---

[4]    Claims for so-called "straddle" Taxes and Fees may be entitled to administrative claim treatment pursuant to section 503(b)(1)(B) of the Bankruptcy Code.  A recent Delaware bankruptcy court decision held that the portion of a "straddle" tax claim that is attributable to the prepetition portion of a "straddle" period is not entitled to administrative priority and, in fact, is not entitled to priority under section 507(a)(8)(A) of the Bankruptcy Code. 11 U.S.C. § 503(b)(1)(B).  See In re Affirmative Ins. Holdings, Inc., 620 B.R. 73, 86 (Bankr. D. Del 2020). Because the Debtors could be subject to late payment penalties and interest in the event they do not pay such "straddle" Taxes and Fees and a court ultimately concludes that such Taxes are entitled to administrative treatment, the Debtors are seeking the authority to pay such "straddle" Taxes and Fees as they become due under applicable law.  The Debtors reserve their rights with respect to the proper characterization of such "straddle" Taxes and Fees and to seek reimbursement of any portion of a payment that was made that ultimately is not entitled to administrative or priority treatment.

the Final Order.  As described in further detail below, the obligations that the Debtors seek

authority to pay are summarized in the following table:

| Taxes | Requested Interim Amount | Requested Final Amount |
|---|---|---|
| Sales and Use Taxes | $220,000 | $432,000 |
| Property Taxes | $0 | $300,000 |
| Income and Franchise Taxes | $0 | $288,000 |
| Regulatory Taxes and Fees | $0 | $60,000 |
| Audits | $0 | $130,000 |
| TOTAL | $220,000 | $1,210,000 |

## I.    Sales and Use Taxes

12.    The Debtors incur, collect, and remit sales and use taxes in all fifty (50) states to

state and local Taxing Authorities in connection with the sale, purchase, and use of materials,

supplies, goods, and services that are necessary for the operation of their business (collectively,

the "Sales and Use Taxes").  Sales taxes are generally charged when a material, product, or service

is purchased, and are typically set by the applicable Taxing Authority as a percentage of the retail

price of the product.  The Debtors also purchase a variety of goods, materials, and supplies from

vendors that may not operate, or may not be registered to collect taxes, in the jurisdiction where

the goods or services are to be delivered or performed.  As a result, such vendors do not charge

the Debtors any sales taxes in connection with such purchases; instead, the Debtors pay use taxes

to the applicable Taxing Authorities in connection with such purchases.  The Debtors generally

remit Sales and Use Taxes on a monthly basis on the 15th of each month.  All Sales and Use Taxes

are paid in arrears.

13.    As of the Petition Date, the Debtors estimate that they have incurred or collected

approximately $389,000 in Sales and Use Taxes that have not been remitted to the relevant Taxing

Authorities, $200,000 of which will become payable during the first twenty-one (21) days

following the Petition Date.

14.     The Debtors also incur Canadian Sales Taxes, including Provincial Sales Taxes, Goods and Services Taxes, and Harmonized Sales Taxes, as a result of conducting business throughout Canada (collectively, the "Canadian Sales Taxes").  The Debtors remit any Goods and Services Taxes and Harmonized Sales Taxes owed on a monthly basis, while any Provincial Sales Taxes owed are remitted on either a monthly or quarterly basis, depending on the applicable laws and regulations of the relevant Canadian jurisdiction to which the tax is owed.  The Debtors remit all Canadian Sales Taxes directly to the relevant Taxing Authorities.  As of the Petition Date, the Debtors estimate that they have incurred or collected approximately $34,000 in Canadian Sales Taxes that have not been remitted to the relevant Taxing Authorities, $20,000 of which will become payable during the first twenty-one (21) days following the Petition Date.

## II.     Property Taxes

15.     The Debtors are subject to real property taxes (the "Real Property Taxes") and personal property taxes (the "Personal Property Taxes," and, together with the Real Property Taxes, the "Property Taxes") levied by state and local governments in the jurisdictions where they operate.  The Debtors typically pay Property Taxes in the ordinary course of business and remit such Property Taxes either directly to the relevant Taxing Authorities, or indirectly by reimbursing landlords who pay Property Taxes levied on the Debtors' leased properties.

16.     Specifically, the Debtors remit state-based Personal Property Taxes on an annual basis directly to the relevant Taxing Authorities in both Texas and California for all inventory owned by the Debtors.  The Debtors paid all state-based Personal Property Taxes for fiscal year 2022-2023 in April 2023 and, as a result, believe they are current on all state-based Personal Property Taxes payments.  As of the Petition Date, the Debtors estimate that they have accrued approximately $300,000 in Personal Property Taxes that will come due in January 2024.

17.     Likewise, the Debtors remit Real Property Taxes in both Texas and California. With respect to the Debtors' California-based headquarters, the Debtors pay monthly common area maintenance ("CAM") fees under their lease to reimburse their landlord for any Real Property Taxes incurred on the property.  With respect to the Debtors' Texas-based properties, the Debtors pay monthly CAM fees under three (3) of their Texas-based leases to cover any Real Property Taxes incurred on the properties.  However, the Debtors do not pay any Real Property Taxes in connection with the Debtors' manufacturing facility located at 2101 Texas Central in Waco, Texas as such amounts are covered by the landlord of the property.

18.     The failure to pay Property Taxes may give rise to liens on the Debtors' properties in favor of the relevant Taxing Authorities and could also result in additional fees and penalties being assessed on the Debtors.  As of the Petition Date, the Debtors believe they are current on all obligations on account of the Property Taxes.  Out of an abundance of caution, the Debtors seek authority, but not direction, to pay or remit such obligations on account of the Property Taxes as they arise in the ordinary course of the Debtors' business.

### III.    Income and Franchise Taxes

19.     The Debtors are required to pay franchise taxes in Texas, California, and Delaware in order to conduct their business in such jurisdictions (the "Franchise Taxes").  The Debtors' obligations on account of Franchise Taxes arise from statutory requirements of the jurisdictions in which they conduct business.  The Debtors remit Franchise Taxes on an annual basis.  In addition, the Debtors historically pay federal, state, and local income and corporate taxes in the ordinary course of business in Texas, California, and Delaware (the "Income Taxes," and together with the Franchise Taxes, the "Income and Franchise Taxes").  The Debtors remit Income and Franchise Taxes to the relevant Taxing Authorities in Texas annually by May 31 and to the relevant Taxing

Authorities in California annually by April 15.  The Debtors remit Franchise Taxes to the relevant Taxing Authorities in Delaware on a quarterly basis.

20.     As of the Petition Date, the Debtors estimate that they have incurred approximately $288,000 in Delaware Franchise Taxes that are due and owing and have not been remitted to the relevant Taxing Authorities.

21.     The Debtors do not currently owe any federal Income Taxes liability due to net losses from continuing operations in fiscal year 2022.  As a result, as of the Petition Date, the Debtors do not currently owe, and do not expect to pay, any federal Income Taxes in the current year.  However, out of an abundance of caution, the Debtors seek authority, but not direction, to pay or remit any Income Taxes obligations as they arise in the ordinary course of the Debtors' business.

**IV.     Regulatory Taxes and Fees**

22.     The Debtors incur, in the ordinary course of business, certain regulatory assessments, registration, licensing, and other operational fees required to conduct business, and remain in good standing, in the jurisdictions and localities where they operate (collectively, the "Regulatory Taxes and Fees").  Specifically, the Debtors are obligated to pay certain regulatory and filing fees to register their production and sale of certain products, such as mosquito repellent spray and mosquito repellent bracelets, with state agencies in order to sell such products in the state.  The Debtors currently pay registration fees in 42 states across the United States in accordance with state laws.  The Debtors renew such registrations on an annual basis and remit all registration fees directly to the relevant state's department of agriculture.  Likewise, the Debtors currently pay user and registration fees to the Food and Drug Administration ("FDA") in connection with the production and sale of their diaper rash cream.  As of the Petition Date, the

Debtors estimate that they have incurred or collected approximately $60,000 in Regulatory Taxes and Fees that have not been remitted to the relevant Taxing Authorities.

## V.    Miscellaneous Import Taxes

23.    In the United States and foreign jurisdictions, the Debtors also incur, collect, and remit various other federal, state, and local taxes, charges, and fees in the ordinary course of business (including any amounts required to be withheld, incurred, or collected under applicable law) (collectively, the "Miscellaneous Import Taxes").  The Miscellaneous Import Taxes include, without limitation, import taxes and customs duties incurred in connection with the purchase and import of certain foreign products, supplies, and equipment from Mexico, China, and Canada. Specifically, the Debtors currently import personal care items, such as shampoo and body lotions, from Canada, baby wipes from Mexico, and gift bags and mosquito repellent products from China. Payment of such taxes and duties is critical to the uninterrupted flow of merchandise through the Debtors' supply chain.  As of the Petition Date, the Debtors believe they are current on their payments of the Miscellaneous Import Taxes.  Out of an abundance of caution, the Debtors seek authority, but not direction, to pay or remit such tax obligations on account of the Miscellaneous Import Taxes as they arise in the ordinary course of the Debtors' business.

## VI.    Audits

24.    The Debtors are currently subject to ongoing audit investigations in Illinois and may be subject to further investigations on account of tax returns and/or tax obligations in prior years (collectively, the "Audits").  The Audits may result in additional prepetition Taxes and Fees being assessed against the Debtors (such additional Taxes and Fees, the "Assessments").  While the Audit in Illinois is currently ongoing, the Debtors estimate that, pursuant to the Audit, the Debtors will be subject to approximately $130,000 in Assessments, plus penalties and interest.

This estimate, however, is preliminary and subject to change.  Further, the Taxing Authorities may conduct additional Audits in the near future, resulting in additional Assessments on account of prepetition Taxes and Fees.[5]  The Debtors do not believe that any amount of additional Taxes and Fees assessed pursuant to the Audits will become payable during the first twenty-one (21) days of these Chapter 11 Cases.  Out of an abundance of caution, however, the Debtors seek authority, but not direction, to pay tax obligations on account of Audits as they arise in the ordinary course of the Debtors' business, including as a result of any settlements of issues addressed in an Audit.

## BASIS FOR RELIEF

**I.    Payment of the Taxes and Fees Is Necessary and Appropriate.**

25.     The Debtors' payment of Taxes and Fees in the ordinary course of business is justified because, among other things, (i) certain Taxes and Fees may constitute secured or priority claims; (ii) certain of the amounts held by the Debtors for Taxes and Fees are not property of the estates pursuant to section 541(d) of the Bankruptcy Code; (iii) such relief is warranted under the doctrine of necessity; and (iv) the Debtors' directors and officers may be held personally liable for the nonpayment of the Taxes or Fees or certain Taxing Authorities could take adverse action for such nonpayment, which would distract the Debtors from their efforts to reorganize.

**A.   Certain of the Taxes and Fees May Constitute Priority Claims Entitled to Special Treatment Under the Bankruptcy Code.**

26.     It is likely that some of the Taxes and Fees are entitled to priority status under the Bankruptcy Code.  See 11 U.S.C. § 507(a)(8).  If the Taxes are deemed to be entitled to priority status, section 1129(a)(9)(C) of the Bankruptcy Code requires that they be paid through regular installment payments (i) of a total value, as of the effective date of the plan, equal to the allowed

---

[5]    For the avoidance of doubt, the Debtors are not seeking authority in this Motion to pay any prepetition liabilities related to the Taxes and Fees that may later come due as the result of an Audit.  The Debtors expressly reserve all rights with respect to any such Audit.

amount of each such claim; (ii) over a period not exceeding five (5) years after the Petition Date; and (iii) in a manner no less favorable than the most favored nonpriority claim provided for by a debtor's chapter 11 plan, if any.  See 11 U.S.C. § 1129(a)(9)(C).  In other words, to the extent that the Taxes and Fees are entitled to priority status under section 507(a)(8) of the Bankruptcy Code, they must be paid in full under any chapter 11 plan before any of the Debtors' general unsecured obligations may be satisfied.  Moreover, since the Debtors expect to pay priority claims in full, the Debtors' payment of the Taxes and Fees at this juncture would only affect the timing of such payments, not the amounts ultimately received by the Taxing Authorities, while also reducing the amount of Taxes and Fees owed if later paid under a plan (due to the high interest rates and late fees attributable to delinquent payments).  Therefore, other creditors and parties in interest would not be prejudiced if the relief sought herein were granted by this Court at this time.

**B.  Certain of the Taxes and Fees May Not Be Property of the Estates.**

27.    Further, the Taxing Authorities might assert that certain of the Taxes and Fees are so-called "trust fund" taxes under section 541(d) of the Bankruptcy Code that the Debtors are required to collect from third parties and hold in trust for the benefit of the Taxing Authorities. Section 541(d) of the Bankruptcy Code provides, in relevant part, that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."  11 U.S.C. § 541(d).

28.    To the extent that the Debtors collect Taxes and Fees on behalf of the Taxing Authorities—or "trust fund" taxes—such Taxes and Fees may not constitute property of the Debtors' bankruptcy estates.  See Begier v. Internal Revenue Serv., 496 U.S. 53, 57-60 (1990); City of Farrell v. Sharon Steel Corp., 41 F.3d 92, 97 (3d Cir. 1994) (debtor's prepetition collection

11

of income taxes were held subject to trust and were not property of the estates); In re Net Pay Sols., Inc., 822 F.3d 144 (3d Cir. 2016) (same).  Further, to the extent that the Taxes and Fees are "trust fund" taxes and the funds representing such Taxes and Fees can be adequately identified and traced, the Debtors would have no equitable interest in such funds.  See 11 U.S.C. § 541(d); In re Am. Int'l Airways, Inc., 70 B.R. 102, 103 (Bankr. E.D. Pa. 1987).  Accordingly, the Debtors submit that the Court should authorize them to pay any of the Taxes and Fees that constitute trust fund taxes, and, further, that payment of such Taxes and Fees would not prejudice the rights of any of the Debtors' creditors or other parties in interest.

> **C.** **Payment of the Taxes and Fees Is Warranted Under the Business Judgment Standard and Doctrine of Necessity.**

29.    The Court may authorize the Debtors to pay any prepetition amounts related to Taxes and Fees pursuant to section 363(b) of the Bankruptcy Code.  Section 363(b)(1) of the Bankruptcy Code provides that, after notice and a hearing, the trustee "may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ."  11 U.S.C. § 363(b)(1).  Under this section, a court may authorize a debtor to pay certain prepetition claims where a sound business purpose exists for doing so, such as to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  See Tropical Sportswear Int'l Corp., 320 B.R. 15, 20 (Bankr. M. D. Fla. 2005) ("Bankruptcy courts recognize that section 363 is a source for authority to make critical vendor payments, and section 105 is used to fill in the blanks.").

30.    When applying the "business judgment" rule, courts show great deference to the debtor's decision making.  See, e.g., In re Martin, 91 F.3d 389, 395 (3d Cir. 1996); In re Castre, Inc., 312 B.R. 426, 430-31 (Bankr. D. Colo. 2004); In re Murphy, 288 B.R. 1, 5 (D. Me. 2002); In re Bakalis, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998).  The payment of the Taxes and Fees requested herein is not only critical to minimizing disruptions to the Debtors' operations, but also

necessary to prevent the irreparable harm that would result from non-payment of such Taxes and Fees (including, but not limited to, being forced to cease business operations in certain jurisdictions due to the failure to pay Taxes and Fees).  The Debtors believe there exists a sound business purpose to permit the Debtors to honor payment of the Taxes and Fees because payment of such Taxes and Fees is essential to the Debtors' business and doing so is in the best interests of their estates, creditors, and all parties in interest.

31.    In a long line of well-established cases, federal courts consistently have permitted postpetition payment of prepetition obligations that are essential to preserve the value of the debtor's estate for the benefit of all creditors.  See, e.g., Miltenberger v. Logansport, C. & S. W. Ry. Co., 106 U.S. 286, 312 (1882) (payment of pre-receivership claim permitted to prevent "stoppage of [crucial] business relations"); In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that "[i]f payment of a [pre-petition] claim…is essential to the continued operation of [the debtor], payment may be authorized"); In re Boston & Me. Corp., 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtor's continued operation).

32.    Likewise, section 105(a) of the Bankruptcy Code empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Known as the "doctrine of necessity," this principle permits bankruptcy courts to exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.  In turn, bankruptcy courts have invoked the equitable power of section 105 of the Bankruptcy Code to authorize the postpetition payment of prepetition claims where such payment is necessary to preserve the value of a debtor's estate.  See,

e.g., In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing In re Ionosphere Clubs, Inc., 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989)) (acknowledging that that "[u]nder [section] 105, the court can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor").

33.     The United States Court of Appeals for the Third Circuit recognizes the doctrine of necessity.  In Lehigh, the court explained that payments made under the doctrine of necessity are in the interest of all parties because such payments serve to facilitate the continued operation of the debtor.  See In re Lehigh & New England Ry. Co., 657 F.2d at 581 (stating courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); see also In re Just for Feet, Inc., 242 B.R. 821, 825 (D. Del. 1999) (citing In re Penn Central Transp. Co., 467 F.2d 100, 102 n.1 (3d Cir. 1972)) (holding that the court is authorized under section 105(a) of the Bankruptcy Code to allow immediate payment of prepetition claims of vendors found to be critical to the debtor's continued operation).  Here, the Debtors' failure to pay the Taxes and Fees could have a material adverse impact on their ability to operate in the ordinary course to the detriment of the value of the estates as well as all creditors, as the Taxing Authorities could, among other things, attempt to prevent or delay the Debtors' operations by revoking product registrations and  business licenses if the Taxes and Fees are not paid.

**D. Payment of the Taxes and Fees Will Avoid Unnecessary Distractions in These Chapter 11 Cases.**

34.     Any regulatory dispute or delinquency that affects the Debtors' ability to conduct business could have a wide-ranging and adverse impact on the Debtors' operations as a whole. Specifically, the Debtors' failure to pay the Taxes and Fees could adversely affect their business operations because, among other things: (i) the Taxing Authorities could audit the Debtors or

distract the Debtors from continuing their business, which, even if unsuccessful, would unnecessarily divert the Debtors' attention from the Debtors' sale process; (ii) the Taxing Authorities could attempt to suspend the Debtors' operations, file liens, seek to lift the automatic stay, and pursue other remedies that will harm the estates; and (iii) in many states, officers and directors of a debtor may be held personally liable even if a failure to pay such Taxes or Fees is not a result of their own malfeasance, which would undoubtedly distract those key officers and employees from their duties when their immediate and full-time attention should be directed towards the Debtors' chapter 11 process.  As a result, it is in the best interest of the Debtors' estates to remit payment of the Taxes and Fees in a timely manner, thereby eliminating the possibility of such time-consuming and potentially damaging distractions and loss of focus on the part of the Debtors' directors and officers resulting from the risk of personal liability or audits.

## II.   Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers.

35.    The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from anticipated postpetition financing and access to use of their cash collateral.  Additionally, under the Debtors' existing cash management system, the Debtors represent that checks or electronic payment requests can be readily identified as relating to an authorized payment in respect of the Taxes and Fees. Accordingly, the Debtors believe that checks or electronic payment requests, other than those relating to authorized payments, will not be honored inadvertently and that all applicable financial institutions should be authorized, when requested by the Debtors, to receive, process, honor, and pay any and all checks or electronic payment requests in respect of the Taxes and Fees, whether issued or presented prior to or after the Petition Date, to the extent that there are sufficient funds in the applicable accounts to make such payments.

## SATISFACTION OF BANKRUPTCY RULE 6003

36.     Pursuant to Bankruptcy Rule 6003, the Court may grant relief within twenty-one (21) days after the filing of the petition regarding a motion to "use, sell, lease, or otherwise incur an obligation regarding property of the estate" only if such relief is necessary to avoid immediate and irreparable harm.  See Fed. R. Bankr. P. 6003(b).  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  See In re Ames Dep't Stores, Inc., 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

37.     As described herein and in the First Day Declaration, the Debtors will suffer immediate and irreparable harm without authorization for the relief requested herein.  Accordingly, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

38.     The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their business without interruption and to preserve value for their estates.  Accordingly, the Debtors respectfully request that the Court waive the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

39.     To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent they are deemed to apply.

## **RESERVATION OF RIGHTS**

40.     Nothing in the Proposed Orders or this Motion (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to any and all claims or causes of action; or (iv) shall be construed as a promise to pay a claim.

## **NOTICE**

41.     Notice of this Motion has been or will be provided to:  (i) U.S. Trustee; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the Food & Drug Administration; (v) counsel to the Prepetition CIT Secured Parties; (vi) counsel to the Stalking Horse Bidder; (vii) those creditors holding the thirty (30) largest unsecured claims against the Debtors' estates; (viii) the Bank; (ix) the Taxing Authorities; and (x) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors will serve copies of this Motion and an order entered in respect of this Motion as required by Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.  No previous motion for the relief sought herein has been made to this court or any other court.

*[Remainder of Page Left Intentionally Blank]*

## CONCLUSION

WHEREFORE, the Debtors request that the Court enter the Proposed Orders, granting

the relief requested herein and such other and further relief as is just and proper.

Dated: October 23, 2023
      Wilmington, Delaware

                                        **YOUNG CONAWAY STARGATT & TAYLOR, LLP**

                                        */s/ Heather P. Smillie*
                                        Edmon L. Morton (Del. No. 3856)
                                        Matthew B. Lunn (Del. No. 4119)
                                        Heather P. Smillie (Del. No. 6923)
                                        Rodney Square
                                        1000 North King Street
                                        Wilmington, Delaware 19801
                                        Telephone: (302) 571-6600
                                        Facsimile: (302) 571-1253
                                        emorton@ycst.com
                                        mlunn@ycst.com
                                        hsmillie@ycst.com

                                        -and-

                                        **WILLKIE FARR & GALLAGHER LLP**
                                        Brian S. Lennon (*pro hac vice* pending)
                                        Debra M. Sinclair (*pro hac vice* pending)
                                        Erin C. Ryan (*pro hac vice* pending)
                                        Jessica D. Graber (*pro hac vice* pending)
                                        787 Seventh Avenue
                                        New York, New York 10019
                                        Telephone:  (212) 728-8000
                                        Facsimile:  (212) 728-8111
                                        blennon@willkie.com
                                        dsinclair@willkie.com
                                        eryan@willkie.com
                                        jgraber@willkie.com

                                        *Proposed Co-Counsel to the Debtors and Debtors in Possession*

**<u>EXHIBIT A</u>**

**Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| UNCONDITIONAL LOVE INC., *et al.*,[1] | Case No. 23-11759 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. __** |

### INTERIM ORDER (I) AUTHORIZING
### DEBTORS TO PAY CERTAIN PREPETITION
### TAXES AND FEES AND RELATED OBLIGATIONS
### AND (II) AUTHORIZING THE BANK TO HONOR AND PROCESS
### CHECK AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (the "Debtors") for the entry of interim and final orders (i) authorizing, but not directing, the Debtors, in their discretion, to pay Taxes and Fees related to the period prior to the Petition Date to the Taxing Authorities; and (ii) authorizing the Bank to honor and process check and electronic transfer requests related to the foregoing; and upon consideration of the Motion and all pleadings related thereto, including the First Day Declaration; and due and proper notice of the Motion having been given; and having determined that no other or further notice of the Motion is required; and having determined that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012; and having determined that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and having

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification number, are Unconditional Love Inc. d/b/a Hello Bello (5895), Unconditional Love Canada, Inc., and The Best Training Pants in the World Inc. (9369).  The Debtors' headquarters is located at 17383 Sunset Blvd, Suite B200, Pacific Palisades, CA 90272.

[2]     Capitalized terms used but not otherwise defined in this Interim Order shall have the meanings ascribed to them in the Motion.

determined that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      **A final hearing on the relief sought in the Motion shall be conducted on _____, 2023 at _____ (ET) (the "<u>Final Hearing</u>").**  Any party-in-interest objecting to the relief sought at the Final Hearing or in the Final Order shall file and serve a written objection, which objection shall be served upon (i) Unconditional Love Inc. d/b/a Hello Bello, 17383 Sunset Blvd, Suite B200, Pacific Palisades, CA 90272, Attn: Erica Buxton (CEO@hellobello.com); (ii) proposed co-counsel for the Debtors, (a) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, Attn: Brian S. Lennon, Esq. (blennon@willkie.com), Debra M. Sinclair, Esq. (dsinclair@willkie.com), and Erin C. Ryan, Esq. (eryan@willkie.com) and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn:  Edmon L. Morton, Esq. (emorton@ycst.com) and Matthew B. Lunn, Esq. (mlunn@ycst.com); (iii) counsel to any official committee appointed in these Chapter 11 Cases; and (iv) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn:  Richard Schepacarter, Esq. (Richard.Schepacarter@usdoj.gov), in each case no later than _____, 2023 at 4:00 p.m. (ET).  If no objections to the entry of the Final Order are timely filed, this Court may enter the Final Order without further notice or a hearing.

3.      The Debtors are authorized, but not directed, in their discretion, to pay prepetition Taxes and Fees to the Taxing Authorities in the ordinary course of their business in an amount not to exceed $220,000 pending entry of the Final Order, subject to the caps set forth in <u>Exhibit 1</u>;

provided, however, that in no event shall the Debtors pay any Taxes or Fees before such amounts are due and payable, and this Interim Order shall not be deemed to allow the Debtors to accelerate the payment of any amounts for any Taxes or Fees that may be due and owing by the Debtors.

4.     Notwithstanding anything to the contrary herein or in the Motion, in the event the Debtors make a payment with respect to any Taxes for periods that begin prepetition and end postpetition (the "Straddle Taxes"), and if the Court subsequently determines that any portion of such Straddle Taxes is not entitled to treatment as a priority or administrative tax claim under Bankruptcy Code section 507(a)(8) or 503(b)(1)(B), the Debtors may, in their sole discretion (but shall not be required to), seek an order from the Court requiring a return of such amounts and the payment of such amount shall, upon the order of the Court, be refunded to the Debtors.

5.     The Bank is authorized, when requested by the Debtors, in the Debtors' discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations authorized to be paid hereunder, whether such checks or other requests were submitted prior to or after the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments.  The Bank may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Interim Order, and the Bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Interim Order.

6.     Nothing in this Interim Order (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority,

or amount of any claim against the Debtors and their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to any and all claims or causes of action against any Taxing Authority; or (d) shall be construed as a promise to pay a claim.

7.    The Debtors are authorized, but not directed, to issue postpetition checks, or to effectuate postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with the Taxes and Fees that are approved herein.

8.    The Debtors are authorized, but not directed, to take any and all actions necessary to effectuate the relief granted herein.

9.    Notwithstanding anything contained in the Motion or this Interim Order, any payment authorized to be made by the Debtors herein shall be subject to the terms and conditions contained in any applicable interim or final orders authorizing the debtor-in-possession financing facility or the use of cash collateral (collectively, the "DIP Orders"), including, without limitation, any budgets in connection therewith, and to the extent there is any inconsistency between any DIP Order and any action taken or proposed to be taken hereunder, the terms of such DIP Order shall control.

10.    The requirements of Bankruptcy Rule 6003(b) have been satisfied because the relief set forth in this Interim Order is necessary to avoid immediate and irreparable harm.

11.    Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be effective and enforceable immediately upon its entry.

12.    Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

13.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**Exhibit 1**

| Taxes | Interim Amount |
|---|---|
| **Sales and Use Taxes** | $220,000 |
| **Property Taxes** | $0 |
| **Income and Franchise Taxes** | $0 |
| **Regulatory Taxes and Fees** | $0 |
| **Miscellaneous Import Taxes** | $0 |
| **Audits** | $0 |
| **TOTAL** | **$220,000** |

## EXHIBIT B

**Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| UNCONDITIONAL LOVE INC., *et al.*,[1] | Case No. 23-11759 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. ___** |

**FINAL ORDER (I) AUTHORIZING**
**DEBTORS TO PAY CERTAIN PREPETITION**
**TAXES AND FEES AND RELATED OBLIGATIONS**
**AND (II) AUTHORIZING THE BANK TO HONOR AND PROCESS**
**CHECK AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (the "Debtors") for the entry of interim and final orders (i) authorizing, but not directing, the Debtors, in their discretion, to pay Taxes and Fees related to the period prior to the Petition Date to the Taxing Authorities; and (ii) authorizing the Bank to honor and process check and electronic transfer requests related to the foregoing; and upon consideration of the Motion and all pleadings related thereto, including the First Day Declaration; and due and proper notice of the Motion having been given; and having determined that no other or further notice of the Motion is required; and having determined that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012; and having determined that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and having

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification number, are Unconditional Love Inc. d/b/a Hello Bello (5895), Unconditional Love Canada, Inc., and The Best Training Pants in the World Inc. (9369).  The Debtors' headquarters is located at 17383 Sunset Blvd, Suite B200, Pacific Palisades, CA 90272.

[2]    Capitalized terms used but not otherwise defined in this Final Order shall have the meanings ascribed to them in the Motion.

determined that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, in their discretion, to pay prepetition Taxes and Fees to the Taxing Authorities in the ordinary course of business in an amount not to exceed $1,210,000, subject to the caps set forth in Exhibit 1; provided, however, that in no event shall the Debtors pay any Taxes or Fees before such amounts are due and payable, and this Final Order shall not be deemed to allow the Debtors to accelerate the payment of any amounts for any Taxes or Fees that may be due and owing by the Debtors.

3.      Notwithstanding anything to the contrary herein or in the Motion, in the event the Debtors make a payment with respect to any Taxes for periods that begin prepetition and end postpetition ("Straddle Taxes"), and if the Court subsequently determines that any portion of such Straddle Taxes is not entitled to treatment as a priority or administrative tax claim under Bankruptcy Code section 507(a)(8) or 503(b)(1)(B), the Debtors may, in their sole discretion (but shall not be required to), seek an order from the Court requiring a return of such amounts and the payment of such amount shall, upon order of the Court, be refunded to the Debtors.

4.      The Bank is authorized, when requested by the Debtors, in the Debtors' discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations authorized to be paid hereunder, whether such checks or other requests were submitted prior to or after the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments.  The Bank may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors

prior to the Petition Date should be honored pursuant to this Final Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Final Order.

5.      Nothing in this Final Order (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to any and all claims or causes of action against any Taxing Authority; or (d) shall be construed as a promise to pay a claim.

6.      The Debtors are authorized, but not directed, to issue postpetition checks, or to effectuate postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with the Taxes and Fees that are approved herein.

7.      The Debtors are authorized, but not directed, to take any and all actions necessary to effectuate the relief granted herein.

8.      Notwithstanding anything contained in the Motion or this Final Order, any payment authorized to be made by the Debtors herein shall be subject to the terms and conditions contained in any applicable interim or final orders authorizing the debtor-in-possession financing facility or the use of cash collateral (collectively, the "DIP Orders"), including, without limitation, any budgets in connection therewith, and to the extent there is any inconsistency between any DIP

Order and any action taken or proposed to be taken hereunder, the terms of such DIP Order shall control.

9.      Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be effective and enforceable immediately upon its entry.

10.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Final Order.

**Exhibit 1**

| Taxes | Final Amount |
|---|---|
| **Sales and Use Taxes** | $432,000 |
| **Property Taxes** | $300,000 |
| **Income and Franchise Taxes** | $288,000 |
| **Regulatory Taxes and Fees** | $60,000 |
| **Miscellaneous Import Taxes** | $0 |
| **Audits** | $130,000 |
| **TOTAL** | **$1,210,000** |