**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| UNCONDITIONAL LOVE INC., *et al.*,[1] | Case No. 23-11759 (MFW) |
| Debtors. | (Joint Administration Requested) |

**DECLARATION OF JOHN P. MADDEN**
**IN SUPPORT OF THE DEBTORS' MOTION FOR ENTRY**
**OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE**
**DEBTORS TO OBTAIN POSTPETITION FINANCING, GRANTING SENIOR**
**POSTPETITION SECURITYINTERESTS AND ACCORDING SUPERPRIORITY**
**ADMINISTRATIVE EXPENSE STATUS PURSUANT TO SECTIONS 364(c)**
**AND 364(d) OF THE BANKRUPTCY CODE, (II) AUTHORIZING THE USE**
**OF CASH COLLATERAL, (III) GRANTING ADEQUATE PROTECTION, (IV)**
**MODIFYING THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF**

I, John P. Madden, hereby declare, under penalty of perjury, as follows:

1.      I am the founder and Managing Partner of Emerald Capital Advisors, Corp. ("Emerald"), the proposed financial advisor to the debtors and debtors in possession (the "Debtors") in the above-captioned cases (the "Chapter 11 Cases").

2.      I submit this declaration (the "Declaration") on behalf of the Debtors in support of the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, Granting Senior Postpetition Security Interests and According Superpriority Administrative Expense Status Pursuant to Section 364(c) and 364(d) of the Bankruptcy Code, (II) Authorizing the Use of Cash Collateral, (III) Granting Adequate Protection,*

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification number, are Unconditional Love Inc. d/b/a Hello Bello (5895), Unconditional Love Canada, Inc., and The Best Training Pants in the World Inc. (9369).  The Debtors' headquarters is located at 17383 Sunset Blvd, Suite B200, Pacific Palisades, CA 90272.

*(IV) Modifying the Automatic Stay, and (V) Granting Related Relief*, filed contemporaneously herewith (the "Motion").[2]

3.       Unless otherwise indicated, all facts set forth in the Declaration are based upon (a) my personal knowledge of the Debtors' current operations and finances, (b) information learned from my review of relevant documents and information concerning the Debtors' operations and financial affairs; (c) information I received from members of the Debtors' management or advisors, including members of Emerald working directly with me and under my supervision, direction, or control; and (d) my opinions based on my experience and knowledge.

4.       I am over the age of 18 and am duly authorized to submit the Declaration on behalf of the Debtors and in support of the Motion.  I am not being compensated specifically for this testimony other than through payments received by Emerald as a proposed professional to be retained by the Debtors.  If called upon to testify, I could and would testify to the facts set forth herein.

### I.       Qualifications and Retention of Emerald

5.       I am a Managing Partner of Emerald, a financial advisory firm that specializes in distressed transactions, advising on restructurings and special situations.  Emerald was founded in 2012 and employs approximately 15 professionals in their two U.S. based offices.   The professionals of Emerald have advised distressed companies or their constituents across all levels of the capital structure on a myriad of transactions ranging from large, complex deals to small, unique situations, exceeding $115 billion in aggregate debt restructured.

6.       Emerald provides a broad range of financial advisory services to its clients, including:  (a) general corporate finance; (b) mergers, acquisitions, and divestitures; (c) corporate

---

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

restructurings; (d) interim management assignments, (e) special committee assignments; and (f) capital raising.  Emerald and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 cases.  Emerald's business reorganization professionals have served as financial advisors in numerous cases, including:  In re Olympia Sports Acquisitions, LLC, No. 22-10853 (MFW); In re Gold Standard Baking, LLC, No. 22-10559 (JKS); In re Escada America, LLC, No. 22-10266 (SB); In re The Collected Group, LLC, No. 21-10665 (LSS), In re Rubio's Restaurants, Inc., No. 20-12689 (MFW); In re SLT Holdco, Inc., No. 20-18368 (MBK); In re The Northwest Company, LLC, No. 20-10990 (MEW); In re Creative Hairdressers, Inc., No. 20-14583 (TJC); In re True Religion Apparel, Inc., No. 20-10941 (CTG); In re Rudy's Barbershop Holdings, LLC, No. 20-10746 (LSS); In re Valeritas Holdings, Inc., No. 20-10290 (JKS); In re API Americas Inc., No. 20-10239 (CSS); In re Fleetwood Acquisition Corp., No. 19-12330 (KBO); In re Sienna Biopharmaceuticals, Inc., No. 19-12051 (MFW); In re SportCo Holdings, Inc., No. 19-11299 (LSS); In re Glansaol Holdings Inc., No. 18-14102 (MEW); In re Sarar USA, Inc., No. 18-24538 (JKS).

7.      I have more than 30 years of experience in the restructuring sector, having been both an advisor and a principal in number U.S. restructurings.  I have been a Managing Partner at Emerald since its founding in 2012.  Prior to this, I served as a Managing Director at Chanin Capital Partners / Duff & Phelps Restructuring from 2004 to 2012 and as a Director at Zolfo Cooper from 1999 to 2004.  Prior to Zolfo Cooper, I was employed by Arthur Andersen LLP.  I graduated with a Bachelor of Science in Business Administration with a concentration in Accounting from Georgetown University.

8.      In August 2023, the Debtors retained Emerald Capital as their financial advisor with respect to their restructuring efforts and the preparation of their chapter 11 cases.  Since being retained, Emerald Capital has worked closely with the Debtors' management and other professionals retained by the Debtors in these Chapter 11 Cases, and has become well acquainted with the Debtors' capital structure, liquidity needs, and business operations.

## II.      Debtors' Prepetition Capital Structure

9.      As of the Petition Date, the Debtors' prepetition debt structure primarily consists of (i) the amounts outstanding under the Prepetition CIT Loan Documents, (ii) the Prepetition Subordinated Notes, (iii) the Equipment Leases, and (iv) other unsecured obligations, consisting of, among other things, trade debt.  As of the Petition Date, the Debtors have approximately $65 million in outstanding borrowings, consisting of (i) approximately $35 million aggregate principal amount outstanding under the Debtors' Prepetition CIT Loan Agreements and (ii) approximately $30 million in borrowings under the Debtors' Prepetition Subordinated Notes.

10.     It is my understanding that the obligations under the Prepetition First Lien Credit Agreement are secured by a first priority security interest in substantially all of the assets of the Debtors other than certain excluded assets (the "Prepetition Collateral").  As of the Petition Date, it is my understanding that the aggregate principal amount outstanding under the Prepetition First Lien Credit Agreement and other documents, instruments, and agreements executed in connection with the Prepetition First Lien Credit Agreement is $35 million, plus accrued and unpaid interest thereon.

11.     Likewise, it is my understand that the Debtors' Prepetition Subordinated Notes are secured by a lien on all personal property of Debtor Unconditional Love Inc., but are subordinated to payment in full of the Prepetition CIT Loan Documents.

**III.    The Debtors Have an Immediate Need for Access to the Cash Collateral**

12.    In the ordinary course of business, the Debtors rely upon the cash receipts from their business operations to fund their operating expenses, all of which is Cash Collateral.  I believe that it is essential to the success of the Debtors' Chapter 11 Cases, and the culmination of their sale process, that the Debtors receive immediate authority and access to use the Cash Collateral.

13.    Over the weeks leading up to the filing of these Chapter 11 Cases, I and my team at Emerald Capital, at the direction of the Debtors, reviewed and analyzed the Debtors' projected cash requirements and considered actionable alternatives that would provide sufficient liquidity to the Debtors to continue operating in the ordinary course.  As part of our evaluation, Emerald Capital analyzed the Debtors' near-term weekly and long-term cash flow forecasts, prepared an initial budget, and mutually agreed upon a final budget with the Prepetition CIT Secured Parties (the "Budget," attached to the Motion as Exhibit A).

14.    The Budget sets forth the Debtors' projected cash receipts and disbursements on a consolidated basis for a 13-week period commencing on the Petition Date.  The Budget takes into account various factors, including, but not limited to, the effect of the filing of these Chapter 11 Cases on the operations of the business, fees and interest payments associated with postpetition financing, professional fees, customer and vendor obligations, and the operational performance of the Debtors' business.

15.    I believe that the Budget accurately reflects the Debtors' near-term funding requirements over the thirteen week period following the Petition Date.  Failure to obtain the relief would eliminate the Debtors' ability to continue operating in the ordinary course, preserve the value of the Prepetition CIT Secured Parties' Prepetition Collateral, and fund the cost of administering the Debtors' estates.  Absent the relief requested in the Motion, the Debtors will

have no choice but to stop operating, with abrupt and damaging consequences for the Debtors, their estates, and their stakeholders—including the Prepetition CIT Secured Parties.

## IV.  The Prepetition CIT Secured Parties are Adequately Protected

16.   I believe that the Prepetition CIT Secured Parties are adequately protected.  The Prepetition CIT Secured Parties will receive adequate protection in exchange for their consent to use Cash Collateral, in the form of the Replacement Liens and DIP Superpriority Claims (each as defined in the Interim Order), as well as the periodic reporting and professional fees described therein.  The Prepetition CIT Secured Parties have consented to this adequate protection package.

17.   Moreover, the requested relief is intended to preserve the value of the Debtors' business—including the Prepetition Secured Parties' Collateral—by providing the Debtors with the liquidity needed to support their operations for the three-week period following the Petition Date.  The Debtors' key focus during this time period will be reaching agreement with a potential stalking horse purchaser for a going concern sale of substantially all of their assets.  If achieved, such a sale will directly benefit the Prepetition CIT Secured Parties.

## CONCLUSION

18.   Accordingly, it is my belief that there is a strong justification for the relief requested in the Motion.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 23 day of October, 2023.

/s/ John P. Madden
John P. Madden
Managing Partner
Emerald Capital Advisors, Corp.

*Proposed Financial Advisor to the Debtors*

7