## Exhibit A

**Interim Approved Budget**

(See Attached)

**Unconditional Love dba Hello Bello**
*Forecast DIP Cash Forecast (in 000s)*
*Week Ending*

| | WK 1 10/28/23 | WK 2 11/4/23 | WK 3 11/11/23 | WK 4 11/18/23 | WK 5 11/25/23 | WK 6 12/2/23 | Sale Close WK 7 12/9/23 | Forecast 7 Week Total | Winddown 6 Week Total |
|---|---|---|---|---|---|---|---|---|---|
| **I. Receipts** | | | | | | | | | |
| **Total Cash Receipts** | $2,331 | $2,392 | $2,646 | $2,565 | $2,547 | $2,605 | $2,717 | $17,802 | - |
| **II. Disbursements** | | | | | | | | | |
| *Operating Disbursements* | | | | | | | | | |
| Raw Materials | $647 | $647 | $647 | $647 | $647 | $647 | $462 | $4,347 | - |
| Manufacturing | $537 | $537 | $537 | $537 | $537 | $537 | $384 | $3,607 | - |
| Shipping | $281 | $281 | $250 | $250 | $250 | $250 | $178 | $1,740 | - |
| Employee Related | $65 | $945 | $65 | $945 | $65 | $945 | $65 | $3,095 | $783 |
| Corporate & IT | $118 | $118 | $118 | $118 | $118 | $118 | $85 | $795 | - |
| Marketing | $228 | $228 | $228 | $228 | $228 | $228 | $163 | $1,532 | $0 |
| Rent & Equipment Related | $52 | $1,560 | $52 | $243 | $52 | $1,344 | $37 | $3,340 | $574 |
| Tax Related | $180 | $0 | $0 | $290 | $0 | $0 | $0 | $470 | $825 |
| **Total Operating Disbursements** | $2,109 | $4,317 | $1,898 | $3,259 | $1,898 | $4,070 | $1,374 | $18,925 | $2,181 |
| Debtor Professional Fees[1] | 345 | 345 | 445 | 345 | 345 | 371 | 345 | $2,541 | $1,360 |
| Creditor Committee Prof. Fees | - | 25 | 50 | 50 | 50 | 40 | 50 | $275 | $250 |
| Lender Legal Fees | 40 | 40 | 40 | 40 | 40 | 40 | 40 | $280 | $0 |
| UST Fees | - | - | - | - | $65 | - | - | $65 | $176 |
| Other Non-Operating | - | 321 | 233 | 233 | - | 25 | - | $813 | 2,238 |
| **Total Non-Operating Disbursements** | $385 | $731 | $768 | $668 | $500 | $486 | $435 | $3,974 | $4,024 |
| **Total Disbursements** | $2,494 | $5,048 | $2,666 | $3,927 | $2,398 | $4,556 | $1,809 | $22,899 | $6,205 |
| **III. Liquidity** | | | | | | | | | |
| Beginning Cash | $815 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | | |
| Net Cash Flow | ($164) | ($2,656) | ($21) | ($1,362) | $149 | ($1,951) | $908 | ($5,097) | (6,205) |
| DIP Draw / (Repayments) | $2,879 | $5,459 | $2,667 | $28,924 | (150) | $2,393 | 4,318 | | |
| Prepetition ABL Paydowns | ($2,331) | ($2,392) | ($2,646) | ($27,562) | - | ($442) | (52) | | |
| Financing Payments | ($200) | ($411) | - | - | - | - | - | | |
| Ending Cash | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $6,223 | | |
| **IV. Debt Summary** | | | | | | | | | |
| Prepetition ABL | $32,599 | $30,207 | $27,562 | | | | - | | |
| DIP Facility | $2,879 | $8,338 | $11,005 | $39,929 | $39,779 | $42,172 | $46,490 | | |
| Total Debt Outstanding | $35,478 | $38,545 | $38,567 | $39,929 | $39,779 | $42,172 | $46,490 | | |
| Net Debt Outstanding | $34,479 | $37,546 | $37,566 | $38,929 | $38,779 | $41,172 | $46,472 | | |
| Borrowing Base Availability | $43,640 | $43,640 | $43,640 | $43,640 | $43,640 | $43,640 | $46,490 | | |
| Remaining Availability | $8,162 | $5,095 | $5,073 | $3,711 | $3,861 | $1,468 | - | | |

Note:
(1) The Professional Fee line item does not include any transaction or sale fee payable to Jefferies; those fees are assumed to be paid out of the sale proceeds

## Exhibit B

## 363 Sale Milestones

The Debtors shall be required to comply with the following (the "**Milestones**") (provided that if any deadline set forth below shall be due on a day that is not a Business Day, such deadline shall be extended to the next succeeding Business Day). Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the applicable DIP Financing Documents.

a.      On the Petition Date, the Debtor shall have entered into an asset purchase agreement with the Stalking Horse Bidder, in form and substance satisfactory to the DIP Agent, providing for the Stalking Horse Bidder's purchase of substantially all of the Debtors' assets (subject to the Auction and process contemplated in the Sale Procedure Order)

b.      On or before one business day after the Petition Date, or such later date to which the DIP Agent consents in writing in its sole discretion, the Debtors shall file a motion, in form and substance acceptable to the DIP Agent, requesting entry of the Sale Procedure Order (as defined below) authorizing procedures for the sale of substantially all of the Debtors' assets to the Stalking Horse Bidder (or, if an Auction is held, to the Winning Bidder).

c.      On or before 30 days after Petition Date, or such later date to which the DIP Agent consents in writing in its sole discretion, the Bankruptcy Court shall have entered the Sale Procedure Order; and

d.      On or before the date that is 72 days after the Petition Date, the Debtors shall have conducted an auction for the sale of substantially all of their assets (if necessary) and selected the successful bidder for the substantially all of their assets;

e.      On or before the date that is 75 days after the Petition Date, or such later date to which the DIP Agent consents in writing in its sole discretion, the Bankruptcy Court shall have entered the Sale Order approving the 363 Sale; and

f.      On or before the date that is 77 days after the Petition Date, provided that the Bankruptcy Court has waived the stay imposed by Bankruptcy Rule 6004(h) or such later date to which the DIP Agent consents in writing in its sole discretion, the Sale shall be closed.

Notwithstanding anything to the contrary herein, the Bankruptcy Court may set dates with respect to the Milestones beyond the outer dates specified above to accommodate its own schedule and to the extent the Bankruptcy Court makes such an extension, the Milestones hereunder shall be automatically extended by the same period as the Bankruptcy Court's extension.

## **Exhibit C**

**Proceeds Application Waterfall**

(see attached)

1.  First, all Proceeds shall be applied to obligations owed under the Pre-Petition Credit Agreement and other Pre-Petition Credit Documents


2.  Second, all remaining Proceeds shall be applied to DIP Facility obligations arising under the DIP Credit Facility Documents.

## **Exhibit D**

### **DIP Term Sheet**

(see attached)

**Unconditional Love Inc.,** *et al.*
**Terms and Conditions of**
**Proposed Senior Secured, Super-Priority**
**Debtor-in-Possession Credit Facility**

*The terms outlined below in this Terms and Conditions (this "**DIP Term Sheet**") are the terms and conditions for a senior secured, super-priority debtor-in-possession credit facility (hereinafter referred to as the "**DIP Facility**") to be made available to the Debtors (as defined below). This DIP Term Sheet, the Interim Order (as defined below), the Final Order (as defined below), and such other documents as may be designated by the DIP Agent (including, without limitation, a potential DIP Credit Agreement) shall collectively constitute the exclusive and definitive documentation and agreement among the parties for the DIP Facility (the "**DIP Financing Documents**"). Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in that certain Loan, Security and Guarantee Agreement, dated as of April 12, 2022, by and among CIT Northbridge Credit LLC, as Agent, the lenders party thereto from time to time, Unconditional Love Inc., a Delaware corporation, The Best Training Pants in the World Inc., a Delaware corporation, and Unconditional Love Canada, Inc., a corporation organized under the laws of the Province of Ontario, Canada (as such agreement may be modified, amended, or restated from time to time, the "**Pre-Petition Credit Agreement**"). If the date for payment of any obligation of the Debtors or any Milestone (as defined below) date in this DIP Term Sheet is not a business day, such date shall be extended to the next business day.*

| | |
|---|---|
| **Borrowers:** | (i)      Unconditional Love Inc. <br> (ii)     The Best Training Pants in the World Inc. <br> (iii)    Unconditional Love Canada, Inc. <br><br> Each of the borrowers listed above shall be referred to collectively herein as the "**Debtors**" and each individually, a "**Debtor**". |
| **Amount and Type of Facility:** | The DIP Facility will consist of a consolidated, revolving credit facility in the aggregate, maximum principal amount of forty-seven million dollars ($47,000,000) (such amount, the "**Maximum DIP Facility Amount**"), consisting of new revolving availability of up to twelve million seventy thousand six hundred sixty seven dollars and forty six cents ($12,070,667.46) (the "**Maximum DIP Funding Amount**"), and a conversion of thirty-four million, nine hundred twenty nine thousand three hundred thirty two dollars and fifty four cents ($34,929,332.54) of obligations under the Pre-Petition Credit Agreement into postpetition DIP Facility obligations; *provided*, however, that until entry of the Final Order, the amount of DIP Facility advances shall be limited to an amount that would not cause DIP Facility Usage to exceed the Opening Pre-Petition Loan Balance by more than five million five hundred thousand dollars ($5,500,000). |
| **Agent:** | CIT Northbridge Credit LLC (the "**DIP Agent**"). |
| **DIP Lender:** | CIT Northbridge Funding I LLC (the "**DIP Lender**" and collectively, with the DIP Agent, the "**DIP Secured Parties**"). |

**Borrowing Availability:**

All new advances under the DIP Facility shall be limited by DIP Availability, and the other terms of this DIP Term Sheet. From and after the entry of the Interim Order, the Debtors may request, and the DIP Lenders shall fund, revolving DIP Facility revolving advances subject to the existence of DIP Availability.

In the event that DIP Availability at the time of a borrowing request (or after advancing the amounts in the borrowing request) would be less than or equal $0.00, but the Approved Budget contemplates additional borrowings for such week and the Debtors would otherwise be entitled to receive a revolving DIP Facility advance in the event that DIP Availability were greater than $0.00, the Debtors shall be entitled to request, and the DIP Lenders shall fund, a limited DIP Facility overadvance, so long as the aggregate amount of such overadvances, together with any DIP facility protective advances extended by the DIP Agent or DIP Lenders, does not exceed the Approved Limited DIP Overadvance Amount (as defined below). Any such DIP Facility overadvances shall not be outstanding for more than sixty (60) consecutive days and shall be repaid within sixty (60) days after the incurrence of such DIP Facility overadvance. In no event shall a DIP facility overadvance cause the aggregate amount of DIP Facility obligations to exceed (a) prior to entry of the Final Order, the Maximum DIP Funding Amount, less the Carve-Out Trigger Reserve, or (b) after entry of the Final Order, the Maximum DIP Facility Amount, less the Carve-Out Trigger Reserve. In addition to any permitted DIP Facility overadvances, the DIP Agent and DIP Lenders shall be permitted to make protective advances (which protective advances shall also constitute DIP facility obligations), in the manner set forth in the DIP Facility credit agreement.

As used herein, the "**Approved Limited DIP Overadvance Amount**" shall mean (a) at any time prior to entry of the Sale Order, the lesser of (i) 10% of the amount by which DIP Facility Usage exceeds the Opening Pre-Petition Loan Balance (based on the projected ending balance of the DIP Facility for such week set forth in the Approved Budget), or (ii) $1,150,000; or (b) from and after the entry of the Sale Order, the lesser of (i) $1,150,000 plus the amount set in the Approved Budget as the last draw to be made immediately preceding the 363 Sale closing and (ii) the amount that, after giving effect to such overadvance, would not cause the aggregate amount of DIP Facility obligations to exceed the Maximum DIP Facility Amount, less the Carve-Out Trigger Reserve.

The Borrowing Base may be reduced from time to time by an Availability Reserve (defined in substantially the same manner as in the Pre-Petition Credit Agreement, but with the addition of a reserve, in an amount not to exceed $510,000, to cover any Carve-Out amounts that may be incurred or payable after the Carve-Out

2

Trigger Date (such reserve, a "**Carve-Out Trigger Reserve**"))
established by the DIP Agent at its sole discretion in  a manner
consistent with past practice and in good faith to reflect, among
other things, contingencies or risks that may materially impact the
DIP Collateral, the liens of the DIP Agent and the DIP Lender upon
the DIP Collateral, or the business and operations of the Debtors.
The Borrowing Base for the DIP Facility shall not include the
Availability Block (as that term is defined in the Pre-Petition Credit
Agreement), but shall include the Carve-Out Trigger Reserve.
Other than the Carve-Out Trigger Reserve, the DIP Agent shall
provide the Borrowers with at least three (3) business days' notice
before imposing any reserves that were not in effect immediately
prior to the Petition Date.

Unless the Debtors shall have obtained the written consent of the
DIP Agent for additional, DIP Facility advances, the Debtors shall
not be authorized to receive a DIP Facility advance more frequently
than once per calendar day.

**Budget and Variances:**    Subject to the Approved Budget Variances (as defined below)
(i) the Debtors' aggregate cash receipts budget line item (the
"Total Cash Receipts" line item) and (ii) the Debtors' aggregate
cash operating disbursement line item (the "Total Operating
Disbursements" line item) (which Total Operating
Disbursements Line item shall not include line items for fees and
expenses of third party professionals engaged by or for the
benefit of the Debtor or the Statutory Committee (if any)) shall
be adhered to on a weekly basis (for the Total Operating
Disbursements line item) and a cumulative basis (for the Total
Cash Receipts line item and Total Operating disbursements line
item) for the Approved Budget (as defined below) period then
ending as described below, provided, however, that amounts not
disbursed  under the Approved Budget shall be deemed to roll
over to subsequent weeks

The Debtors' disbursements for fees and expenses of third party
professionals engaged by or for the benefit of the Debtors or the
Statutory Committee (if any), including success or transaction
fees (collectively, "**Professional Fees**") shall be reported within
the Approved Budget in a manner so that Professional Fees for
each retained professional are reflected on its own line item.  The
Approved Budget line items for Professional Fees shall not be
tested for purposes of compliance with the Approved Budget or
calculation of any Approved Budget Variances; provided,
however, that Carve-Out for the respective Chapter 11
Professionals retained by the Debtors or Statutory Committee
shall nevertheless be governed by the amounts of Professional
Fees budgeted for each group's professionals within the
Approved Budget).

Any fees payable to professionals retained by the DIP Secured

3

Parties set forth in the Approved Budget shall not be limited by the amounts set forth in the Approved Budget and shall not be tested for purposes of compliance with the Approved Budget or calculation of any Approved Budget Variances.

Actual amounts for the Total Cash Receipts line item will be tested weekly beginning with the first full calendar week following the Petition Date and may not be less than the applicable Approved Budget on a cumulative basis for that portion of the Approved Budget period then ending by more than (a) fifteen percent (15.0%) for such line item for the first two testing periods, and (b) ten percent (10.0%) for such line item for each testing period thereafter. Actual amounts for the Total Operating Disbursements line item (which shall not and does not include any Professional Fee line items) will be tested weekly beginning with the first full calendar week following the Petition Date and may not exceed the applicable Approved Budget (including any amounts deemed to roll over from a previous week due to not being spent) by more than ten percent (10.0%) for such line item on a weekly basis or more than ten percent (10.0%) for such line item on a cumulative basis for that portion of the Approved Budget period then ending (collectively, the "**Approved Budget Variances**").

On or before Thursday of each week, commencing with the first full week following the Petition Date, the Debtors shall deliver to the DIP Agent an Approved Budget Variance Report.

The Approved Budget may be modified only with the subsequent written agreement of the Debtors and DIP Agent (at the DIP Agent's sole discretion).

**Fees:**

In addition to the costs and expenses of the DIP Secured Parties as set forth in the Section titled "Agent Fees and Expenses" below, the Debtors agree to pay the following fees (the "DIP Fees"):

(a) An unused line fee equal to 50 basis points per annum

(b) a collateral management fee of $7,000 per month, fully earned and payable in advance on the first business day of each month

(c) an upfront fee of $200,000, payable on the date of the first DIP Facility draw.

**Termination Date:**

The earliest to occur of: (a) the Maturity Date (as defined below); (b) thirty (30) days after the Petition Date (as defined below), if the Final Order has not been entered on or before that date; (c) acceleration of the obligations under the DIP Facility; (d) the effective date of a confirmed plan of reorganization or liquidation;

or (e) the date which is the closing date of any sale of all or substantially all of any Debtor's assets. The date on which the earliest of clauses (a) through (e) above occurs and the DIP Agent provides written notice thereof to the Debtors being referred to hereinafter as the "**Termination Date**." On the Termination Date, the DIP Facility shall be deemed terminated, and the DIP Secured Parties shall have no further obligation to provide financing pursuant to the DIP Facility or DIP Financing Documents.

**Non-Default Interest Rate and Payment Terms:**

Interest on all outstanding advances under the DIP Facility shall accrue from and after the Petition Date at a per annum rate equal to Adjusted Term SOFR + 8.00% (the "**Non-Default Interest Rate**"). The Adjusted Term SOFR rate shall have a floor of 1.50%.

Interest on DIP Facility obligations shall be payable monthly, in arrears, on the first day of each calendar month.

Interest with respect to any outstanding obligations under the Pre-Petition Credit Agreement shall, to the extent permitted by applicable bankruptcy law, accrue from and after the Petition Date at the rate of interest set forth in the Pre-Petition Credit Agreement. For purposes of computing interest on DIP Facility obligations, any DIP Collateral proceeds applied by the DIP Agent shall be deemed applied on the third (3rd) Business Day after receipt.

**Default Interest Rate:**

Effective immediately upon the occurrence of an Event of Default unless waived in writing by the DIP Agent, interest on the outstanding loans under the DIP Facility shall accrue at a rate that is 3% per annum in excess of the Non-Default Interest Rate.

**Loan Payments:**

Each of the Debtors, jointly and severally, promises and agrees to pay to the DIP Agent and the DIP Lender all DIP Facility advances, together with interest thereon accruing pursuant to the DIP Financing Documents, in full, in cash, at the times set forth in the DIP Financing Documents, but no later than the Termination Date. All daily collections in respect of DIP Collateral shall be repaid to the DIP Agent, on a daily basis.

All unpaid principal, interest, fees, costs and expenses in respect of the DIP Facility shall be due and payable in full by the Debtors on the Termination Date, whether at maturity, upon acceleration or otherwise and if such amounts are not paid in full in cash, interest, fees, costs, and expenses in respect of the DIP Facility shall continue to accrue until paid in full.

In the event that the DIP Availability on any given date of determination would be less than $0.00, then the Debtors shall promptly (and in any event, no later than one business day after

such occurrence) repay the DIP Facility, in cash, in an amount required to ensure that DIP Availability (after giving effect to such cash payment) is not less than $0.00; provided, however, that any permitted overadvances (described in the Borrowing Availability) section, shall be repaid within 60 days after the incurrence of such permitted overadvance.  The DIP Agent and DIP Lender are authorized to exercise any offset rights with respect to any of the Debtors' deposit accounts in the event that such repayment does not occur within one business day as required herein.

**Use Of Proceeds:**                  Proceeds of the DIP Facility shall be used solely for the following purposes (and to the extent identified in the Approved Budget): (a) to fund postpetition operating expenses and working capital needs of the Debtors, including, but not limited to, those activities required to remain in, or return to, compliance with laws in accordance with 28 U.S.C. § 1930; (b) to pay interest, fees and expenses to the DIP Secured Parties in accordance with this DIP Term Sheet (whether or not such amounts are reflected in the Approved Budget); (c) to fund fees and expenses incurred in connection with the 363 Sale (as defined below); (d) to pay Professional Fees; and (e) to pay certain other costs and expenses of administration of the Chapter 11 Cases.

Proceeds of the DIP Facility or cash collateral shall not be used (a) to permit any Debtor, or any other party-in-interest or their representatives to challenge or otherwise contest or institute any proceeding to determine (i) the validity, perfection or priority of security interests in favor of the DIP Agent, the Pre-Petition Agent, the Pre-Petition Lenders or the DIP Lender or (ii) the enforceability of the obligations of any Debtor or any guarantor under the Pre-Petition Credit Agreement, any other Pre-Petition Loan Documents, or the DIP Facility, (b) to investigate, commence, prosecute or defend (or support any other person or entity in investigating, commencing, prosecuting, or defending) any claim, motion, proceeding or cause of action against the DIP Agent, the Pre-Petition Agent, the Pre-Petition Lenders, or the DIP Lender and their agents, attorneys, advisors or representatives including, without limitation, any lender liability claims or subordination claims, (c) to investigate, commence, prosecute or defend (or support any other person or entity in investigating, commencing, prosecuting, or defending) any claim or proceeding or cause of action to disallow or challenge the obligations of any Debtor or any guarantor under Pre-Petition Credit Agreement, any other Pre-Petition Loan Documents or the DIP Financing Documents, (d) to fund acquisitions, capital expenditures, capital leases, or any other expenditure not specifically set forth in the Approved Budget and approved by the DIP Agent, or (e) for any other purpose for which the Carve Out may not be used, provided that a Statutory Committee (if any) and its professionals shall be permitted to investigate the liens of the Pre-Petition Agent and Pre-Petition Lenders in connection with the

Pre-Petition Credit Agreement, with such investigation fees not to exceed $25,000.

**Cash Management Collections and Remittances:**

The Debtors shall use a cash management system that is the same as or substantially similar to their pre-petition cash management system. Any material changes from such pre-petition cash management system must be acceptable to the DIP Agent in its sole discretion. The Interim Order and Final Order shall provide the DIP Agent and the DIP Lender with a valid and enforceable lien and security interest on the cash held in the Debtors' bank accounts.

**Pre-Petition Obligations:**

All collections and proceeds of DIP Collateral shall be applied to reduce, on a dollar for dollar basis, the obligations under the Pre-Petition Credit Agreement and Pre-Petition Loan Documents. Upon entry of the Final Order, all obligations under the Pre-Petition Credit Agreement and other Pre-Petition Loan Documents shall be deemed and become postpetition obligations under the DIP Facility.

**Super-Priority Administrative Claim:**

Amounts owed by Debtors to the DIP Secured Parties pursuant to the DIP Facility (including all accrued interest, fees, costs and expenses) shall constitute, in accordance with Section 364(c)(1) of the Bankruptcy Code (as defined below), a claim having priority over any or all administrative expenses of the kind specified in, among other sections, Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code, subject to payment of the Carve Out (such claim, the "**DIP Superpriority Claim**").

**Collateral Security:**

Subject and subordinate only to: (i) any valid, properly perfected, enforceable, non-avoidable prior liens and security interests existing as of the Petition Date (including any Liens that are perfected after the Petition Date that are afforded priority due to the express relation back of the perfection of such lien to a date prior to the Petition Date as permitted by Bankruptcy Code section 546(b)) that are senior to the liens and security interests in favor of the Pre-Petition Agent and/or the Pre-Petition Lenders (the "**Permitted Senior Liens**"), and (ii) the Carve Out, the DIP Facility (including accrued interest, fees, costs and expenses) shall be secured by first priority senior and priming liens and security interests (the "**DIP Liens**") in all of the Debtors' property, including, without limitation, all of Debtors' existing and future acquired property and interests of any nature whatsoever, real and personal, tangible and intangible, including accounts receivable, general intangibles, payment intangibles, supporting obligations, investment property, commercial tort claims, inventory, rolling stock, machinery, equipment, subsidiary capital stock, chattel paper, documents, instruments, deposit accounts, contract rights, and tax refunds of each Debtor, excluding only Avoidance Actions, but including, subject to

entry of the Final Order, Avoidance Proceeds (collectively, the "**DIP Collateral**").

**Lien Validation and Perfection:**

All liens authorized and granted pursuant to the Interim Order or the Final Order entered by the Bankruptcy Court approving the DIP Facility or with respect to adequate protection shall be deemed effective and perfected as of the Petition Date, and no further filing, notice or act will be required to effect such perfection.

The Debtors shall stipulate in the Interim Order and Final Order that (i) the liens of the Pre-Petition Agent and the other Pre-Petition Lenders securing the Pre-Petition Credit Facility are valid, perfected, encumber all assets of the Debtors, and have first priority, and (ii) the Debtors possess no claims, offsets or any other type cause of action against the Pre-Petition Agent or any of the Pre-Petition Lenders that would impair, in any manner, the liens of the Pre-Petition Agent or any of the Pre-Petition Lenders against the Debtors' assets or the obligations of the Debtors to the Pre-Petition Agent and Pre-Petition Lenders under the Pre-Petition Credit Facility. The Debtors' stipulations shall be binding upon all parties in interest in the Chapter 11 Cases, including any Statutory Committee that is appointed, unless (i) an adversary proceeding is filed by any party-in-interest (including any Statutory Committee appointed in the Chapter 11 Cases) prior to the expiration of seventy-five (75) days after entry of the Interim Order (the "**Review Period**") against the Pre-Petition Agent or the Pre-Petition Lenders (as applicable) challenging the Pre-Petition Agent or the Pre-Petition Lender's liens (as applicable) or otherwise asserting estate claims against the Pre-Petition Agent or the Pre-Petition Lenders (as applicable), and (ii) a final, non-appealable judgment is entered against the Pre-Petition Agent or the Pre-Petition Lenders (as applicable) in such adversary proceeding. Any party-in-interest that fails to file an adversary proceeding within the Review Period shall be forever barred from asserting any claims against the Pre-Petition Agent or the Pre-Petition Lenders on behalf of any Debtor's estate, or challenging in any manner the liens and claims of the Pre-Petition Agent or the Pre-Petition Lenders against any of the Debtors.

**Release of Claims**

In consideration of the furnishing of the DIP Facility, each of the Debtors party hereto, subject to the rights of another party to bring a Challenge Action (as such term is defined in the Interim Order or the Final Order approving the DIP Facility) during the Review Period, and upon entry of the Final Order, hereby absolutely releases and forever discharges each of the Pre-Petition Agent and Pre-Petition Lenders and their affiliates, officers, directors, employees, attorneys, and other representatives from any and all claims and causes of action of every kind and nature that any of the Debtors may hold against

such released parties.

| | |
|---|---|
| **506(c) Surcharge/Equities of Case** | Upon entry of the Final Order, each of the Debtors hereby waive any right to surcharge the prepetition collateral securing the Pre-Petition Credit Agreement, Pre-Petition Loan Documents, or DIP Collateral, whether pursuant to Bankruptcy Code sections 506(c) or 105(a) or under any other applicable law. |

Upon entry of the Final Order, the DIP Agent, the DIP Lender, the Pre-Petition Agent and the Pre-Petition Lenders shall not be subject to the "equities-of-the case" exception of Bankruptcy Code section 552(b), or to the equitable doctrines of "marshaling" or any similar claim or doctrine with respect to any DIP Collateral or collateral securing the Pre-Petition Credit Agreement or Pre-Petition Loan Documents.

**Adequate Protection –**
**Pre-Petition Lenders:**

As adequate protection and in consideration for being primed by the DIP Lender's claims and liens, the Pre-Petition Agent and Pre-Petition Lenders shall receive, to the extent of diminution in value of the interests of the Pre-Petition Agent and Pre-Petition Lenders in the Debtors' collateral securing the amounts due under the Pre-Petition Credit Agreement and other Pre-Petition Loan Documents following the Petition Date, (a) a claim having priority over any and all expenses of the kind specified in, among other sections of the Bankruptcy Code, Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, and  1114, subject to payment of the Carve Out and subject to the super-priority administrative claims of the DIP Agent and the DIP Lender under the DIP Facility (such claim, the "**Pre-Petition Adequate Protection Superpriority Claim**"); and (b) valid, binding, enforceable and perfected replacement liens in all DIP Collateral, subject to payment of the Carve Out, Permitted Senior Liens (if any), and the DIP Liens (the "**Pre-Petition Adequate Protection Liens**").

The Pre-Petition Adequate Protection Liens granted herein in favor of the Pre-Petition Agent and Pre-Petition Lenders shall not encumber Avoidance Actions, but, subject to entry of the Final Order, shall encumber Avoidance Proceeds.

**Agent Fees and Expenses:**

The Debtors shall promptly pay or reimburse the DIP Agent when requested for all reasonable and documented costs and expenses of counsel (including, without limitation, local counsel) and financial advisors for the DIP Secured Parties relating to the DIP Facility and the administration and interpretation of, and the enforcement of remedies under, the DIP Facility, regardless of whether such amounts were incurred prior to or after the Petition Date, including but not limited to, due-diligence, duplication or printing costs, consultation, travel, and attendance at court hearings, regardless of whether the DIP Facility is consummated. The DIP Agent shall have the right to charge the DIP Facility for any such fees and costs. Failure to pay such fees and expenses within ten (10) days of delivery of the applicable fee

reimbursement request shall be an Event of Default under the DIP Facility if such failure continues unremedied for more than two (2) business days after written notice of such failure to the Debtors, provided that the DIP Agent shall concurrently provide copies of any fee reimbursement request to the U.S. Trustee and the Statutory Committee (if any) and allow such parties and the Debtors ten (10) days to review and object to any fees or expenses requested therein. If any objection is asserted, the Bankruptcy Court shall decide the issue and the Debtors shall not be required to pay any disputed portion of such fees or expenses until the matter is resolved.

| | |
|---|---|
| **Carve-Out:** | The "**Carve-Out**" shall be an amount equal to the sum of: |

(a)     unpaid, postpetition fees and expenses of the Clerk of the Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) in such amount, with respect to the U.S. Trustee, as agreed to by the U.S. Trustee or as determined by the Court (collectively, the "**Statutory Fees**");

(b)     the unpaid postpetition fees and expenses of the professionals retained by the Debtors and by the Statutory Committee (if any), whose retentions are approved pursuant to final orders of the Court under sections 327, 328, 363 or 1103(a) of the Bankruptcy Code (the "**Chapter 11 Professionals**"), but only to the extent that such fees and expenses are (i) incurred prior to delivery of a Carve-Out Trigger Notice (the date of delivery of such notice the "**Carve-Out Trigger Date**"), (ii) within the amounts set forth in the Approved Budget approved by the DIP Agent for the respective Chapter 11 Professionals of the Debtors and Statutory Committee as of the Carve-Out Trigger Date, and (iii) subsequently allowed (whether prior or subsequent to the Carve-Out Trigger Date) by the Bankruptcy Court under sections 330, 331, or 363 of the Bankruptcy Code; and

(c)     after the Carve-Out Trigger Date: (i) postpetition fees and expenses of the Chapter 11 Professionals incurred in an aggregate amount not to exceed $500,000, to the extent such fees and expenses are subsequently allowed by the Bankruptcy Court under sections 330, 331, or 363 of the Bankruptcy Code; and (ii) fees and expenses of a chapter 7 trustee in an amount not to exceed $10,000.

Provided, however, that (a) the Carve-Out shall only be available to pay fees and expenses set forth herein to the extent that unencumbered funds are not otherwise available; and (b) in no event shall (i) the aggregate pre-Carve-Out Trigger Date amount provided in clause (b) above for all the Chapter 11 Professionals retained by the Debtors exceed the aggregate amount budgeted for such professionals within the Approved Budget and (ii) the

aggregate pre-Carve-Out Trigger Date amount provided in clause (b) above for all the Chapter 11 Professionals retained by the Statutory Committee exceed the aggregate amount budgeted for such professionals within the Approved Budget.

Provided, further, however, that the Carve-Out for Chapter 11 Professional fees shall be first paid from any retainers or any professional expense escrow account established by the Debtor.

The Carve-Out shall not include payment for any fees and expenses, if any, of the Chapter 11 Professionals incurred directly or indirectly, in respect of, arising from or relating to:

(i) the initiation, joinder, support, or prosecution of any action contesting the indebtedness owed to the DIP Agent, the DIP Lender, the Pre-Petition Agent, or the Pre-Petition Lenders, or the validity of any liens granted to the DIP Agent, the DIP Lender, the Pre-Petition Agent, or the Pre-Petition Lenders;

(ii) preventing, hindering or otherwise delaying (or supporting any other person or entity in preventing, hindering or otherwise delaying), whether directly or indirectly, the exercise by the DIP Agent or the Pre-Petition Agent of any of its rights and remedies under the Interim Order, Final Order, or documents comprising the DIP Facility, DIP Financing Documents, Pre-Petition Credit Agreements, or other Pre-Petition Loan Documents, including, without limitation, any attempt to prevent, hinder or delay (or supporting any other person or entity in preventing, hindering or delaying) the submission of any credit bid by the DIP Agent, DIP Lender, Pre-Petition Agent, or Pre-Petition Lenders;

(iii) the commencement, support, or prosecution of any action or proceeding of any claims, causes of action or defenses against the DIP Agent, the DIP Lender, the Pre-Petition Agent, the Pre-Petition Lenders or any of their respective officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from the DIP Agent, the DIP Lender, the Pre-Petition Agent, or the Pre-Petition Lenders;

(iv) any request to borrow money other than pursuant to the terms of the Interim Order, the Final Order, or the DIP Financing Documents;

(v) with respect to any Debtor, any of the Debtors' Chapter 11 Professionals, or any of their successors or assigns (including, without limitation, any trustee, responsible officer, examiner, estate administrator or representative or similar person appointed in a case for the Debtors under any chapter of the Bankruptcy Code) performing or commencing any investigation or litigation (whether threatened or pending) by the Debtors with respect to

any matter released or to be released, waived, or to be waived, or specified as not subject to challenge by the Debtors pursuant to the Interim Order or Final Order; or

(vi) for any other purpose for which proceeds of the DIP Facility may not be used pursuant to this DIP Term Sheet.

"**Carve-Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Statutory Committee (if any), which notice is identified as a Carve-Out Trigger Notice and is delivered following the occurrence and during the continuation of an Event of Default and acceleration of the obligations under the DIP Facility.

The Debtors shall establish and fund a segregated account not subject to the control of the DIP Agent (such account, the "**Carve-Out Account**") for purposes of funding the Carve-Out. So long as a Carve-Out Trigger Date shall not have occurred, the Debtor shall transfer to the Carve-Out Account on a weekly basis, the amounts that the Chapter 11 Professionals may be paid pursuant to the Approved Budget for such week. Such funds shall be held for the benefit of the Chapter 11 Professionals, to be applied to the fees and expenses of such Chapter 11 Professionals that are approved for payment pursuant to one or more orders of the Bankruptcy Court. Any fees and expenses payable to Chapter 11 Professionals shall be paid first out of the Carve-Out Account, and all amounts deposited in the Carve-Out Account shall reduce, on a dollar for dollar basis, the Carve-Out.

Upon the occurrence of the Carve-Out Trigger Date, the Debtors shall be required to deposit in the Carve-Out Account an amount equal to (a) the unpaid amount (if any) of Chapter 11 Professional fees contemplated in the Approved Budget for such week that should have been paid into the Carve-Out Account during the Approved Budget week in which the Carve-Out Trigger Date occurs (to the extent such amount has not already been paid into the Carve-Out Account during such Approved Budget week); and (b) the $510,000 Carve-Out Trigger Reserve. To the extent that the cash of the Debtors is not sufficient to fund the amounts set forth in the preceding items (a) or (b), the DIP Lenders shall make advances under the DIP Facility sufficient to deposit such amounts into the Carve-Out Account.

To the extent that the fees and expenses of the Professionals performed prior to a Carve-Out Trigger Date and allowed pursuant to one or more orders of the Bankruptcy Court are less than the amounts funded into the Carve-Out Account, the excess amounts in the Carve-Out Account shall be remitted to the DIP Agent to reduce the obligations under the DIP Facility.     The

DIP Agent shall not foreclose or sweep amounts in the Carve-Out Account unless and until the final, allowed amounts payable to Chapter 11 Professionals have been disbursed to the Chapter 11 Professionals from the Carve-Out Account, and, following delivery of a Carve-Out Trigger Notice, the DIP Agent shall not sweep or foreclose on cash of the Debtors that would be required to fund the Carve-Out Account after the occurrence of the Carve-Out Trigger Date in the manner set forth in the paragraph above. The DIP Agent and DIP Lenders reserve all of their rights to challenge or otherwise object to the allowance of any fees or expenses sought to be paid to any Chapter 11 Professionals.

For the avoidance of doubt, and notwithstanding anything to the contrary in the Interim Order, Final Order, or the DIP Facility Documents, the Carve-Out shall be senior to all liens and claims securing the DIP Facility, the DIP Liens, the DIP Superpriority Claims, and any and all other forms of liens or claims securing the obligations under the DIP Facility.

| | |
|---|---|
| **Conditions Precedent to Initial DIP Facility Advance:** | The closing of the DIP Facility shall be subject to (a) approval of the Approved Budget by the DIP Agent, together with all financial information and projections regarding the Debtors requested by the DIP Agent, all in form and substance satisfactory to the DIP Agent in its sole discretion, (b) entry of an Interim Order approving the DIP Facility, the DIP Liens, and the DIP Superpriority Claim, and containing such other orders and findings as the DIP Agent may require, including modification of the automatic stay after a specified notice period following the occurrence of an Event of Default enabling the DIP Agent to exercise certain rights and remedies against the DIP Collateral, which Interim Order or Final Order, as applicable, shall not have been modified or amended without approval of the DIP Agent, and shall not have been reversed, vacated or stayed pending appeal, in form and substance satisfactory to the DIP Agent in its sole discretion, (c) the DIP Agent's approval (not to be unreasonably withheld, conditioned, or delayed) of all material first day motions and orders filed in the Chapter 11 Cases relating to the 363 Sale or requiring the expenditure of cash amounts greater than $25,000 in the aggregate, (d) continuation of Debtors' present cash management system, (e) the form and substance of this DIP Term Sheet shall be satisfactory to the DIP Agent in its sole discretion, and (f) the Debtors' delivery to the DIP Agent of an executed asset purchase agreement, prior to the Petition Date, between the Debtors and the Stalking Horse Bidder, in form and substance satisfactory to the DIP Agent at its sole discretion, providing for the Stalking Horse Bidder's purchase of substantially all of the Debtors' assets; and (g) no material adverse change in the Debtors' operations (financial, environmental, or otherwise), performance, or properties (other than as a result of (i) the commencement of the Chapter 11 Cases or (ii) events or circumstances disclosed to the DIP Agent prior to |

the Petition Date), has occurred since the Petition Date.

| | |
|---|---|
| **Additional Conditions to Each Borrowing Under the DIP Facility:** | The funding of each DIP Facility advance shall be subject to the following conditions precedent:  (a) There shall exist no Event of Default (or event that would constitute an Event of Default with the giving of notice or lapse of time) under any of the DIP Financing Documents, and the representations and warranties therein shall be true and correct in all material respects; (b) compliance with Bankruptcy Rule 4001 and any applicable Local Bankruptcy Rules, the entry of the Interim Order and the Final Order (as applicable), together with any other order requested by the DIP Agent authorizing and approving the DIP Facility in form, substance and amount acceptable to the DIP Agent in its sole discretion; (c) payment of all fees and expenses owing to the DIP Agent in connection with the DIP Facility (which payment may be made from the proceeds of such borrowing); (d) satisfaction of all other borrowing conditions set forth in the DIP Credit Agreement (which shall be substantially the same as in the Pre-Petition Credit Agreement, including, the absence of any Material Adverse Effect since the Petition Date), and (e) the DIP Financing Documents and the Interim and Final Orders shall include such waivers, indemnities, and other provisions as are acceptable to the DIP Agent in its sole discretion. |
| **Affirmative and Negative Covenants:** | The Debtors shall comply with the following affirmative and negative covenants: (a) compliance with Approved Budget covenants consistent with the section titled "Budget and Variances," (b) the Debtors shall, from and after the Petition Date, satisfy the Milestones; (c) other customary DIP Facility covenants, including covenants substantially the same as in the Pre-Petition Credit Agreement (subject to revisions necessary or appropriate for DIP Facility financings). |
| **Reporting Matters** | On the fifteenth (15th) day of each calendar month the Debtors shall deliver to the DIP Agent a report, in the form substantially similar to the form utilized for the Pre-Petition Credit Agreement, showing the computation of the Borrowing Base as of the end of the immediately preceding calendar month (such report a "**Borrowing Base Report**"). The Borrowing Base Report shall include a detailed report of all Accounts that are not Eligible Accounts and all Credit Card Receivables that are not Eligible Credit Card Receivables.   All information (including a calculation of DIP Availability) in a Borrowing Base Report shall be certified by the Debtors' chief executive officer, chief financial officer, chief restructuring officer, Christina Keady (senior manager, finance), or Brad Self (director, finance). DIP Agent may from time to time adjust such report (x) to reflect DIP Agent's reasonable estimate of declines in value of DIP Collateral, due to collections received; (y) to adjust advance rates to reflect changes in dilution, quality, mix and other factors affecting DIP Collateral; and (z) to the extent any information or |

calculation does not comply with the DIP Facility requirements.

On or before Thursday of each week, the Debtors shall deliver to the DIP Agent a rollforward of sales, accounts receivable, and collections, in form and substance reasonably satisfactory to the DIP Agent.

On or before the fifteenth (15th) day of each calendar month, the Debtors shall deliver to the DIP Agent both (a) an accounts receivable aging, accounts payable aging, sales/invoice registers and collection journals as of the end of the prior month, and (b) a schedule of business locations and inventory locations, which has been updated as of the end of the immediately preceding month, in form and substance satisfactory to DIP Agent in its discretion.

**Application of 363 Sale Proceeds:** The DIP Facility obligations shall be fully satisfied upon the closing of the 363 Sale (whether via repayment in cash or assumption of such obligations by the 363 Sale purchaser in a manner satisfactory to the DIP Agent at its sole discretion) and 363 Sale cash proceeds required to satisfy the DIP Facility shall be paid to the DIP Agent at the closing of the 363 Sale.

**Bankruptcy Court Filings:** As soon as reasonably practicable in advance of filing with the Bankruptcy Court, the Debtors shall furnish to the DIP Agent the drafts of forms of the following (which shall not have been modified or amended upon filing in any material respect without approval of the DIP Agent) (i) any motions, proposed orders, and pleadings related to the approval of the DIP Facility, which motion and orders shall be in form and substance satisfactory to the DIP Agent in its sole discretion, (ii) the motions seeking approval of the Sale Procedure Order and the 363 Sale, and the proposed forms of the orders related thereto, which shall be in form and substance reasonably satisfactory to the DIP Agent, (iii) any plan of reorganization or liquidation, and/or any disclosure statement related to such plan (which plan or disclosure statement shall comply with the requirements set forth herein), which shall be in form and substance reasonably satisfactory to the DIP Agent, (iv) any motion seeking approval of any sale of the Debtors' assets and any proposed form of a related bidding procedures order and sale order (other than those with respect to the bidding procedures and the 363 Sale), and (v) any other motion filed seeking approval of any matter requiring material expenditures of DIP Collateral (each of which must be in form and substance reasonably satisfactory to the DIP Agent).

**Sale Process:** The Debtors shall conduct a sale process for the sale of substantially all of the assets of the Debtors to the Stalking Horse Bidder (or, if an Auction is held, to the Winning Bidder) in accordance with the Milestones defined below.

The Debtors' current management, together with Investment Banker, the Debtors' counsel, and the Debtors' other professionals, shall oversee the sale process on behalf of the Debtors, including all activities of any advisors retained by the Debtors in connection with the sale process.   Current management shall at all times be entitled to take any action necessary or appropriate to conduct the sale process, and shall not interfere with, and shall use its commercially reasonable best efforts to provide DIP Agent with access to all potential bidders, lessors, and other interested parties requested by DIP Agent, and, so long as no DIP Agent, DIP Lender, Pre-Petition Agent, or Pre-Petition Lender has provided written notice of its intent to submit a bid at the Auction, any materials, term sheets, bids, or financial information provided in writing to the Debtors by such parties.

The Debtors shall provide or cause to be provided to DIP Agent a written report from current management bi-weekly (or more frequently as reasonably requested by the DIP Agent) in form and substance satisfactory to, and addressing such items as are requested by DIP Agent, including addressing the status of the marketing and sale process of the Debtors. The Debtors shall also cause current management and the Investment Banker to be made available to provide periodic telephonic updates of such reports to DIP Agent from time to time (but not less than bi-weekly), as requested by DIP Agent.

Milestones. The Debtors shall be required to comply with the following, (the "**Milestones**"):

(a)     On the Petition Date, the Debtor shall have entered into an asset purchase agreement with the Stalking Horse Bidder, in form and substance satisfactory to the Agent, providing for the Stalking Horse Bidder's purchase of substantially all of the Debtors' assets (subject to the Auction and process contemplated in the Sale Procedure Order)

(b)     On or before one business day after the Petition Date, or such later date to which the DIP Agent consents in writing in its sole discretion, the Debtors shall file a motion, in form and substance acceptable to the DIP Agent, requesting entry of the Sale Procedure Order (as defined below) authorizing procedures for the sale of substantially all of the Debtors' assets to the Stalking Horse Bidder (or, if an Auction is held, to the Winning Bidder).

(c)     On or before 30 days after Petition Date, or such later date to which the DIP Agent consents in writing in its sole discretion, the Bankruptcy Court shall have entered the Sale Procedure Order; and

(d)     On or before the date that is 72 days after the Petition Date, the Debtors shall have conducted an auction for the sale of substantially all of their assets (if necessary) and selected the successful bidder for the substantially all of their assets;

(e)     On or before the date that is 75 days after the Petition Date, or such later date to which the DIP Agent consents in writing in its sole discretion, the Bankruptcy Court shall have entered the Sale Order approving the 363 Sale; and

(f)     On or before the date that is 77 days after the Petition Date, provided that the Bankruptcy Court has waived the stay imposed by Bankruptcy Rule 6004(h) or such later date to which the DIP Agent consents in writing in its sole discretion, the Sale shall be closed.

Notwithstanding anything to the contrary herein, the Bankruptcy Court may set dates with respect to the Milestones beyond the outer dates specified above to accommodate its own schedule and to the extent the Bankruptcy Court makes such an extension, the Milestones hereunder shall be automatically extended by the same period as the Bankruptcy Court's extension.

The DIP Agent, DIP Lender, Pre-Petition Agent, and Pre-Petition Lenders shall have the right to "credit bid" any secured obligations owed to them in any sale of the Debtors' assets.

|  |  |
|---|---|
| **Representations and Warranties:** | The representations and warranties of the Debtors set forth in the Pre-Petition Credit Agreement and other Pre-Petition Loan Documents, except (i) as otherwise disclosed to the DIP Agent in writing, or (ii) with acceptable qualifications for the commencement of the Chapter 11 Cases and other matters contemplated herein, are hereby incorporated in all material respects into this DIP Term Sheet as if made on the date hereof (except to the extent such representations and warranties expressly relate to an earlier date, in which case they are true and correct in all material respects as of such earlier date) |
| **Remedies:** | Following the Termination Date or the occurrence of an Event of Default, unless such Event of Default has been waived by the DIP Agent in writing in its sole discretion, subject to the terms of the Interim Order or the Final Order (as applicable), the DIP Agent shall be entitled to exercise: (i) any remedies with respect to the DIP Facility that would be available to the Pre-Petition Agent as a result of an event of default under the Pre-Petition Credit Agreement, as well as all other remedies set forth in this DIP Term Sheet, the Interim Order, or the Final Order, including, without limitation, the ability to accelerate the entire DIP Facility and the right to terminate the Debtors' use of cash collateral; and (ii) any customary remedies that would have been available under the Pre-Petition Loan |

Documents, including, without limitation, the right to realize on all DIP Collateral and the right to exercise any remedy available under applicable law, without the necessity of obtaining any further relief or order from the Bankruptcy Court. Consistent with the foregoing sentence, section 362 relief from the stay in favor of the DIP Agent, as provided herein, shall be embodied in any order approving the DIP Facility and the use of cash collateral.

**Events of Default:**

Defaults and Events of Default shall mean the occurrence of any of the following:

- The Debtors shall cease to employ a chief executive officer or chief restructuring officer who is reasonably acceptable to the DIP Agent (it being understood that Erica Buxton and John Madden shall be acceptable to the DIP Agent).

- Any of the Chapter 11 Cases shall be converted to a case under Chapter 7 of the Bankruptcy Code or be dismissed.

- Filing or support of a proposed plan of reorganization by any Debtor that does not provide for the indefeasible payment in full and in cash of Debtors' obligations outstanding under the DIP Facility, unless otherwise agreed in writing by the DIP Agent in its sole discretion.

- The filing by the Debtor of, or the filing of motion or pleading requesting confirmation of, a plan of reorganization that does not require the indefeasible repayment in full, in cash of the DIP Facility as of the effective date of the plan, unless otherwise agreed in writing by the DIP Agent in its sole discretion.

- Appointment of a trustee under Section 1104 of the Bankruptcy Code without the express written consent of the DIP Agent, or the failure of the Debtors to oppose prior to the applicable objection deadline (as such deadline may be extended from time to time) any motion or other pleading requesting such relief.

- Appointment of an examiner with expanded or enlarged powers (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code without the prior written consent of the DIP Agent, or the failure of the Debtors to oppose prior to the applicable objection deadline (as such deadline may be extended from time to time) any motion or other pleading requesting such relief.

- Entry of an order by the Bankruptcy Court amending, supplementing, staying, vacating or otherwise modifying the DIP Facility, the Interim Order or Final Order approving the DIP Facility, without the prior written consent of the DIP Agent or the failure of the Debtors to oppose prior to the

18

applicable objection deadline (as such deadline may be extended from time to time) any motion or other pleading requesting such relief.

- Any Debtor commences an adversary proceeding or files a motion to obtain, or if any other party in interest obtains, an order of the Bankruptcy Court or other judgment, and the effect of such order or judgment is to, invalidate, reduce or otherwise impair the claims of the DIP Agent, DIP Lender, Pre-Petition Agent, or Pre-Petition Lenders, or to subject any of the collateral of the DIP Agent or Pre-Petition Agent to a surcharge pursuant to Section 506(c) of the Bankruptcy Code.

- Any Debtor shall request approval of any postpetition financing, other than the DIP Facility, that would not immediately repay all DIP Facility obligations, in full, in cash, on the date of the closing of such postpetition financing.

- Any Debtor shall apply for an order substituting any assets for all or any portion of the DIP Collateral.

- Subject to the Carve Out and the Permitted Senior Liens, entry of an order granting liens or claims that are senior or *pari passu* to the liens granted in favor of the DIP Agent and/or the DIP Lender under the DIP Financing Documents.

- Any Debtor shall assert in any pleading that any of the DIP Liens are invalid, or any DIP Liens granted to the DIP Agent or DIP Lender shall be determined by the Bankruptcy Court to be invalid.

- Any payment on, or application for authority to pay any pre-petition claim owing to terminated employees or lease rejection damages without prior written consent of the DIP Agent or as otherwise set forth in the Approved Budget.

- If at any time prior to the conclusion of the sale process, either (i) the Debtors announce or state in writing that the sales process has been terminated or suspended, and such termination or suspension continues for more than seven (7) days without the DIP Agent's consent; or (ii) the DIP Agent has filed a notice with the Bankruptcy Court, at least two (2) business days before the effective date of any declared default, of its intent to declare an event of default as a result of the sales process being terminated or suspended for more than seven (7) days (with the Debtors reserving all rights to seek further order of the Bankruptcy Court concerning whether such alleged suspension is an actionable default).

- A final order is entered granting any creditor relief from the automatic stay that would permit the foreclosure of any assets of the Debtors with a value in excess of $500,000 in

the aggregate.

- Failure to make any payment of (i) principal, interest, or DIP Fees under the DIP Facility when due or (ii) any other amount (other than principal, interest, or DIP fees) where such payment default has continued for five (5) days.

- Failure to pay by the applicable due dates (after giving effect to applicable grace periods) any material indebtedness in excess of $500,000 incurred after the Petition Date, which payment is not otherwise stayed.

- Breach of any Milestones.

- Breach of any other covenant set forth in any DIP Financing Document and such breach shall continue for five (5) Business Days after notice by the DIP Agent to the Debtors.

- Any material representation or warranty by any Debtor is incorrect or misleading in any material respect when made.

- Exclusivity shall have been terminated or any Debtor shall have agreed to any such termination.

- After entry thereof, either of the Sale Procedure Order or the Sale Order shall cease to be in full force and effect, shall have been reversed, stayed, vacated or subject to stay pending appeal or shall have been modified or amended without the prior written consent of the DIP Agent (not to be unreasonably withheld, conditioned, or delayed).

- Unless the Stalking Horse Bidder fails to be the Winning Bidder, or a back-up-bidder, following the conclusion of an Auction, the Stalking Horse Bidder designated in the motion seeking approval of the Sale Procedures Order shall drop out of the sale process or otherwise indicate that it is unable to close the sale process within ninety (90) days of the Petition Date.

- Any Debtor shall file a motion to seek (or support any other Person in seeking) an order to restrict or prohibit the DIP Agent, DIP Lender, Pre-Petition Agent, or Pre-Petition Lender from submitting a "credit bid" for any DIP Collateral.

- Any Debtor commences any Challenge Action (as such term is defined in the interim or final order approving the DIP Facility) against the Pre-Petition Agent or any Pre-Petition Lender.

- The Debtors fail to enter into a Pre-Petition Credit Agreement, in form and substance satisfactory to the DIP Agent, on or before three (3) days prior to the hearing to consider entry of the Final Order.

**Indemnification:**                          The Debtors shall, jointly and severally, indemnify and hold the

DIP Agent, the DIP Lender, and their officers, directors, employees and agents (including all of their attorneys and other professionals) (each an "**Indemnified Party**") harmless from and against any and all claims, damages, losses, liabilities and expenses (including, without limitation, all fees and disbursements in respect of attorneys and other professionals) to which any Indemnified Party may become liable or which may be incurred by or asserted against any Indemnified Party, in each case in connection with or arising out of or by reason of any investigation, litigation or proceeding arising out of or relating to or in connection with the DIP Facility, the DIP Financing Documents, any obligation, or any act, event or transaction related or attendant thereto or any use or intended use of the proceeds of the DIP Facility, except to the extent the same is found in a final, non-appealable judgment by a court of competent jurisdiction to have resulted from such Indemnified Party's gross negligence, fraud, or willful misconduct.  The indemnification terms and conditions of the Pre-Petition Credit Agreements are hereby incorporated in this DIP Term Sheet and applied to the DIP Facility.

**Governing Law:**     All documentation in connection with the DIP Facility shall be governed by the laws of the state of New York, subject to applicable federal bankruptcy laws.

**Other Definitions:**

The definition of the "Borrowing Base" and other definitions related to the computation of the Borrowing Base, are set forth on Annex I hereto.

"**363 Sale**" means the sale of all or substantially all of the assets of the Debtors under Section 363 of the Bankruptcy Code.

"**Adjusted Term SOFR**" means (a) Term SOFR plus (b) the Term SOFR Adjustment.  In no event shall Adjusted Term SOFR be less than 1.50%.

"**Approved Budget**" means the 13-week budget of the Debtors relative to the operations of the Debtors in the Chapter 11 Cases for any fiscal period, as delivered to the DIP Agent in form and substance satisfactory to the DIP Agent at its sole discretion. The Approved Budget shall include the Debtors' projected cash receipts and disbursements, and  projected ending cash balance, for each Approved Budget week.  The Approved Budget may be amended from time to time as may be agreed to by the DIP Agent, in writing, in its sole discretion.

"**Approved Budget Variance Report**" means a current report, in form and substance satisfactory to the DIP Agent, that: (i) details the actual amount of cash receipts and disbursements for the prior week for each line item included in the Approved Budget (on a weekly and cumulative basis), (ii) compares such actual cash receipts and disbursements (on a line item by line item basis) with the weekly and cumulative budgeted amounts for each such line item set forth in the Approved Budget for such period, and (iii) provides a reasonable explanation for all variances between budgeted and actual amounts.  Each Approved Budget Variance Report will be certified as true and correct by the Debtors' chief financial officer, chief executive officer, chief restructuring officer, Christina Keady (senior manager, finance), or Brad Self (director, finance).

"**Auction**" means an auction held in connection with the 363 Sale and in accordance with the provisions set forth in the Sale Procedure Order.

"**Avoidance Actions**" means any causes of action that could be brought pursuant to section 544, 545, 547, or 548 of the Bankruptcy Code, or any applicable state fraudulent transfer statutes.

"**Avoidance Proceeds**" means the proceeds received from, or property recovered in respect of, Avoidance Actions.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware presiding over the Chapter 11 Cases.

"**Business Day**" means any day other than a Saturday, Sunday or other day on which commercial banks are authorized or required to close under the Laws of either New York or the state where Agent is located, and, if such day relates to Term SOFR, means any such day meeting the above requirements that is also a U.S. Government Securities Business Day.

"**Chapter 11 Cases**" means the voluntary Chapter 11 cases commenced by the Debtors in the Bankruptcy Court.

"**DIP Availability**" means the lesser of (a) (i) prior to entry of the Final Order, the Maximum DIP Funding Amount, and (ii) after entry of the Final Order, the Maximum DIP Facility Amount; (b) the maximum amount of DIP Facility obligations contemplated in the Approved Budget as of any particular date and (c) the Borrowing Base (as defined in Annex I) minus the DIP Facility Usage.

"**DIP Facility Usage**" means the sum of (a) the total principal amount of obligations under the DIP Facility (prior to giving effect to a proposed DIP Facility revolving advance); plus (b) the total balance of obligations under the Pre-Petition Loan Documents.

"**Final Order**" means a final, non-appealable order of the Bankruptcy Court, that, without limitation, approves the DIP Facility and grants the liens and security interests contained therein, on terms satisfactory to the DIP Agent in its sole discretion.

"**Governmental Authority**" means any federal, state, provincial, territorial, local, foreign or other agency, authority, body, commission, court, instrumentality, political subdivision, central bank, or other entity or officer exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions for any governmental, judicial, investigative, regulatory or self-regulatory authority (including the Financial Conduct Authority, the Prudential Regulation Authority and any supra-national bodies such as the European Union or European Central Bank).

"**Interim Order**" means an interim order of the Bankruptcy Court authorizing Debtors, among other things, to obtain interim financing and incur postpetition indebtedness on terms satisfactory to the DIP Agent in its sole discretion.

"**Investment Banker**" means Jefferies LLC

"**Material Adverse Effect**" means (a) a material adverse change in, or a material adverse effect upon, the operations,

business, assets, properties, liabilities (actual or contingent) or condition (financial or otherwise) of the Debtors; (b) a material impairment of the rights and remedies of any of the DIP Agent, DIP Lender, Pre-Petition Agent, or Pre-Petition Lenders under any of the DIP Financing Documents, Pre-Petition Credit Agreement, or other Pre-Petition Loan Documents, (c) a material impairment of the Debtors' ability to perform any of their obligations under the DIP Financing Documents, Pre-Petition Credit Agreement, or other Pre-Petition Loan Documents, or (d) a material adverse effect upon the legality, validity, binding effect, or enforceability against any Debtor of any of the DIP Financing Documents, Pre-Petition Credit Agreement, or other Pre-Petition Loan Documents, in each of the foregoing cases, other than as a result of (i) the commencement of the Chapter 11 Cases or (ii) events or circumstances disclosed to the DIP Agent prior to the Petition Date.

"**Maturity Date**" means the date that is seventy seven (77) days after the Petition Date, or such later date to which the DIP Agent consents in writing.

"**Monthly Period**" means a period that commences on the first day of any calendar month (or in the case of a calendar month in which the first DIP Facility advance occurs, such period shall commence on the date of the first advance) and ends on (and includes) the last day of such calendar month.

"**Opening Pre-Petition Loan Balance**" means $34,929,332.54.

"**Person**" means any individual, corporation, limited liability company, partnership, joint venture, association, trust, unincorporated organization, Governmental Authority, or other entity.

"**Petition Date**" means the date on which the Chapter 11 Cases for the Debtors were commenced.

"**Pre-Petition Agent**" means CIT Northbridge Credit LLC, in its role as Agent for the Pre-Petition Lenders under the Pre-Petition Credit Agreement.

"**Pre-Petition Credit Agreement**" has the meaning ascribed to it in the preamble to this term sheet.

"**Pre-Petition Credit Facility**" means the facility furnished by the Pre-Petition Agent and Pre-Petition Lenders pursuant to the Pre-Petition Credit Agreement and other Pre-Petition Loan Documents.

"**Pre-Petition Lenders**" means the lenders party to the Pre-

24

Petition Credit Agreement.

"**Pre-Petition Loan Documents**" means, collectively, the Pre-Petition Credit Agreement, and each other document relating to, and executed in connection with, the credit facility governed by the Pre-Petition Credit Agreement.

"**Sale**" means a sale of all or substantially all of the Debtors' assets.

"**Sale Order**" means the order entered by the Bankruptcy Court in form and substance reasonably satisfactory to the DIP Agent that, among other things, approves the 363 Sale, the results of the Auction (if applicable) and the Winning Bidder's bid.

"**Sale Procedure Order**" means an order in form and substance satisfactory to the DIP Agent approving the bidding procedures to be applicable to the 363 Sale for the sale to the Stalking Horse Bidder or, if an Auction is held, to the Winning Bidder.

"**SOFR**" means a rate per annum equal to the secured overnight financing rate as administered by the SOFR Administrator.

"**SOFR Administrator**" means the Federal Reserve Bank of New York (or a successor administrator of the secured overnight financing rate).

"**Stalking Horse Bidder**" means shall mean Bucky Acquisition Holdco, LLC.

"**Statutory Committee**" means any statutory committee appointed in the Chapter 11 Cases.

"**Term SOFR**" means the rate determined by agent to be the Term SOFR Reference Rate for a tenor comparable to the applicable Monthly Period on the day (such day, the "**Periodic Term SOFR Determination Day**") that is two (2) U.S. Government Securities Business Days prior to the first day of such Monthly Period, as such rate is published by the Term SOFR Administrator and obtained by DIP Agent through the Bloomberg Data License service or a comparable service acceptable to DIP Agent; provided, however, that if as of 5:00 p.m. (New York City time) on any Periodic Term SOFR Determination Day the Term SOFR Reference Rate for the applicable tenor has not been published by the Term SOFR Administrator and a Benchmark Replacement Date with respect to the Term SOFR Reference Rate has not occurred, then Term SOFR will be the Term SOFR Reference Rate for such tenor as published by the Term SOFR Administrator on the first preceding U.S. Government Securities Business Day for which such Term SOFR Reference Rate for such tenor was published

25

by the Term SOFR Administrator so long as such first preceding U.S. Government Securities Business Day is not more than three (3) U.S. Government Securities Business Days prior to such Periodic Term SOFR Determination Day.

"**Term SOFR Adjustment**" means 0.11448%

"**Term SOFR Administrator**" means CME Group Benchmark Administration Limited (CBA) (or a successor administrator of the Term SOFR Reference Rate selected by DIP Agent at its reasonable discretion).

"**Term SOFR Reference Rate**" means the rate per annum determined by DIP Agent as the forward-looking term rate based on SOFR.

"**Termination Event**" means the occurrence of the earlier of:

(i) an Event of Default under the DIP Facility; or

(ii) the Debtors' failure to comply with the terms of the DIP Financing Documents (including, without limitation, their failure to comply with the Approved Budget, subject to any approved variances).

"**UCC**" means the Uniform Commercial Code as in effect in the State of New York or, when the laws of any other jurisdiction govern the perfection or enforcement of any Lien, the Uniform Commercial Code of such jurisdiction.

"**U.S. Government Securities Business Day**" means any day except for (a) a Saturday, (b) a Sunday or (c) a day on which the Securities Industry and Financial Markets Association recommends that the fixed income departments of its members be closed for the entire day for purposes of trading in United States government securities and is otherwise a Business Day.

"**Winning Bidder**" means the bidder that agrees (at the Auction if applicable) to purchase all or substantially all of the assets of the Debtors.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their duly authorized officers as of the date first set forth above.

**<u>DEBTORS</u>:**

**UNCONDITIONAL LOVE INC.**

By:        _____
Name:
Title:

**THE BEST TRAINING PANTS IN THE WORLD INC.**

By:        _____
Name:
Title:

**UNCONDITIONAL LOVE CANADA, INC.**

By:        _____
Name:
Title:

**DIP AGENT**:

**CIT NORTHBRIDGE CREDIT LLC**


By: _____
Name:
Title:



**DIP LENDER**:

**CIT NORTHBRIDGE FUNDING I LLC**


By: _____
Name:
Title:

## Annex I

### Calculation of the Borrowing Base

The Borrowing Base shall be substantially the same as under the Pre-Petition Credit Agreement, with the following exceptions: (a) the Availability Block shall be $0.00; (b) the Availability Reserve will include provision for all Carve-Out amounts payable after the Carve-Out Trigger Date, and (c) the Special Advance Amount shall be computed as set forth below.

SPECIAL ADVANCE FORMULA:  Up to the lesser of a) $13,900,000 and b) the sum of (x) Up to 10% of the U.S. Formula Amount, plus the Canadian Formula Amount, minus the Availability Reserve and (y) $11,700,000.

The existing Special Advance Formula (in effect under the Pre-Petition Credit Agreement) provides availability of $6.9 million. The revised Special Advance Formula above, combined with the lifting of the $5 million Availability Block, will produce incremental DIP Facility availability of $12,000,000 (prior to giving effect to the post-termination Carve-Out reserve).

SPECIAL ADVANCE AMORT:  No amortization of the Special Advance Formula Amount during the DIP period.