## EXHIBIT 2

**Blackline**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| UNCONDITIONAL LOVE INC., *et al*,[1] | Case No.  23-11759 (MFW) |
| | (Jointly Administered) |
| Debtors. | **Ref. Docket ~~No~~Nos. 11 & 63** |

**~~INTERIM~~FINAL ORDER (I) AUTHORIZING
THE DEBTORS TO OBTAIN POST-PETITION FINANCING,
GRANTING SENIOR POSTPETITION SECURITY INTERESTS
AND ACCORDING SUPERPRIORITY ADMINISTRATIVE EXPENSE
STATUS PURSUANT TO SECTIONS 364(c) AND 364(d) OF THE BANKRUPTCY
CODE, (II) AUTHORIZING THE USE OF CASH COLLATERAL,
(III) GRANTING ADEQUATE PROTECTION, (IV) MODIFYING
THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the above-captioned debtors (each a "Debtor" and collectively, the "Debtors") seeking, among other things:

(1) authority pursuant to sections 363 and 364(c) and (d) to obtain debtor-in-possession senior secured financing (the "DIP Credit Facility") pursuant to the following terms and agreements (collectively, the "DIP Credit Facility Documents"): (a) ~~this~~the interim order entered with respect to the Motion on October 25, 2023 [D.I. 63] (the "Interim Order")~~,~~ and ~~any final order entered by the Court with respect to the Motion~~this Order (the "Final Order"), (b) the *Terms and Conditions of Proposed Senior Secured, Super-Priority Debtor-in-Possession Credit Facility*, by and among the Debtors, as borrowers and debtors-in-possession, CIT Northbridge Credit LLC, as agent (the "DIP Agent") for the lenders and other financial institutions that will be party to the DIP Credit Agreement (as defined herein), attached ~~hereto~~to the Interim Order as Exhibit D (the "DIP Term Sheet"); and (c) the *Senior Secured, Super-Priority Debtor-in-Possession Loan, Security and Guarantee Agreement*, contemplated in the DIP Term Sheet, as amended, modified, and/or supplemented (the "DIP Credit Agreement"),[2] ~~to be executed~~attached hereto as Exhibit C, by and among the Debtors, as borrowers and debtors-in-possession, CIT Northbridge Credit LLC, as agent (the "DIP Agent") for the lenders and other financial institutions party to the DIP Credit Agreement or which extend credit

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification number, are Unconditional Love Inc. d/b/a Hello Bello (5895), Unconditional Love Canada, Inc., and The Best Training Pants in the World Inc. (9369).  The Debtors' headquarters is located at 17383 Sunset Blvd., Suite B200, Pacific Palisades, CA 90272.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Term Sheet or DIP Credit Agreement, as applicable.

thereunder (the "DIP Lenders," and collectively with the DIP Agent, the "DIP Secured Parties"); which DIP Credit Facility will consist of a consolidated, revolving credit facility in the aggregate, maximum principal amount of forty-seven million dollars ($47,000,000), consisting of new revolving availability of up to ~~twelve~~eleven million ~~seventy thousand six~~four hundred ~~sixty    seven~~and   three   thousand   twenty   dollars   and   ~~forty   six~~five   cents ($~~12,070,667.46~~11,403,020.05), and a conversion of $~~34,929,332.54~~[__] of obligations under the Prepetition First Lien Credit Agreement into post-petition debtor-in-possession financing obligations;

(2) the grant to the DIP Agent, for the benefit of itself and the other DIP Lenders, of superpriority administrative claim status pursuant to sections 364(c)(1) and 507(b) of the Bankruptcy Code in accordance with the terms of this Final Order and the Interim Order;

(3) authorization for the Debtors' use of cash collateral whenever or wherever acquired, and the proceeds of all collateral pledged to the Prepetition CIT Secured Parties (defined below), as contemplated by section 363 of the Bankruptcy Code in accordance with the terms ~~set forth herein~~of this Final and the Interim Order;

(4) authorizing and approving the Debtors to incur obligations under the DIP Credit Facility Documents, including to borrow under the DIP Credit Facility (collectively, the "DIP Obligations"), and to use the proceeds of the DIP Credit Facility on the terms and conditions set forth in the DIP Orders and DIP Credit Facility Documents, including the Approved Budget (as defined below), subject to any variances expressly permitted with respect to the Approved Budget;

(5) authorizing the Debtors to pay principal, interest, fees, expenses, and other DIP Obligations payable under the DIP Credit Facility Documents as they become due;

(6) a grant of adequate protection to the Prepetition CIT Secured Parties (as defined below) under and in connection with the Prepetition CIT Loan Documents (as defined below) in accordance with the terms ~~set forth herein~~of this Final Order and the Interim Order;

(7) modification of the automatic stay to the extent hereinafter set forth and waiving the fourteen (14) day stay provisions of Federal Rule of Bankruptcy Procedure 4001(a)(3) and 6004(h); and

~~(8) scheduling a final hearing setting for the Motion for entry of an order authorizing the DIP Credit Facility and use of cash collateral on a final basis; and~~

(~~9~~8) granting related relief.

Notice of the Motion, the relief requested therein, ~~and~~ the Interim Hearing (as defined below) and the Final Hearing (as defined below) (the "Notice") having been served by the Debtors in accordance with Bankruptcy Rule 4001(c) on: (i) the DIP Agent and the DIP Lenders

and the Prepetition CIT Secured Parties; (ii) the U.S. Trustee; (iii) the holders of the thirty (30) largest unsecured claims against the Debtors' estates; (iv) proposed counsel for the Statutory Committee (as defined below); (v) all parties known to the Debtors who hold any liens or security interest in the Debtors' assets who have filed liens or UCC-1 financing statements against the Debtors, or who, to the Debtors' knowledge, have asserted any liens on any of the Debtors' assets; (vvi) the Internal Revenue Service and all taxing authorities of states in which the Debtors conduct business; and (vivii) certain other parties identified in the certificates of service filed with the Court.

The Court held an interim hearing with respect to the Motion on October 24, 2023 (the "Interim Hearing").  The Court held a final hearing with respect to the Motion on November 21, 2023 (the "Final Hearing").

After the Motion and the proceedings before the Court at the Interim Hearing and the Final Hearing; the Court having considered the Motion, the exhibits attached thereto, the First Day Declaration, the White Declaration, the Madden Declaration, and the evidence submitted and arguments made at the Interim Hearing and the Final Hearing; notice of the Interim Hearing and the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court as reflected on the record established by the Debtors at the Interim Hearing and the Final Hearing; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and it is otherwise fair and reasonable and in the best interests of the Debtors and their estates, and is essential for the administration of the Chapter 11 Cases, the continued operation of the Debtors in the ordinary course, and the

preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Credit Facility Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:[3]

A.    On October 23, 2023 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for relief pursuant to Chapter 11 of title 11, United States Code, 11 U.S.C. §§ 101-1532 (the "<u>Bankruptcy Code</u>");[4]

B.    The Debtors have continued in the management and operation of their business pursuant to sections 1107 and 1108, and no trustee or examiner has been appointed;

C.    The Debtors gave appropriate notice under the circumstances of the Motion and hearing in accordance with the Federal Rules of Bankruptcy Procedure and any applicable local rules of this Court;

D.    The Court has core jurisdiction over the Debtors' bankruptcy cases, the Motion, and the parties and property affected by this ~~Interim~~Final Order pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *Amended Standing Order of Reference*, dated February 29, 2012, from the United States District Court for the District of Delaware, and venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court may enter a final order consistent with Article III of the United States Constitution; ~~as of the date hereof~~

---

[3] To the extent, any findings of fact constitute conclusions of law, they are adopted as such, and vice versa, pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

[4] Unless otherwise noted, all statutory references are to the Bankruptcy Code.

E.    On November 2, 2023, the United States Trustee has not yet appointed an official committee of unsecured creditors in this casethe Chapter 11 Cases pursuant to section 1102 (athe "Statutory Committee");

F.    E. The Debtors agree, admit, represent and stipulate for themselves and their estates, subject to the challenge rights of third parties set forth in this InterimFinal Order, the following (collectively, the "Stipulations"):

(1)    as of the Petition Date, the Debtors were party to each of:

(x) a Loan, Security and Guarantee Agreement dated as of April 12, 2022 (such agreement, as amended and existing immediately prior to the Petition Date, the "Prepetition First Lien Credit Agreement") with CIT Northbridge Credit LLC as agent and the lenders party thereto;  and

(y)  all other documents, instruments, and agreements executed in connection with the Prepetition First Lien Credit Agreement (such agreements, collectively with the Prepetition First Lien Credit Agreement, the "Prepetition CIT Loan Documents");

(2)    As of the Petition Date, CIT Northbridge Credit LLC serves as agent (in such capacity, the "Prepetition CIT Agent") under each of the Prepetition CIT Loan Documents.  The lenders party to each of the Prepetition CIT Loan Documents shall be referred to in this InterimFinal Order as the "Prepetition CIT Lenders", and the Prepetition CIT Lenders and Prepetition CIT Agent shall be collectively be referred to herein as the "Prepetition CIT Secured Parties";

(3)    As of the Petition Date, the Debtors and other obligors under the Prepetition CIT Loan Documents were indebted to the Prepetition CIT Secured Parties,

without defense, counterclaim, recoupment or offset of any kind, in the non-contingent liquidated amount of no less than $~~34,929,332.54~~35,596,979.95, plus other fees, costs, expenses, and other amounts arising in respect of the Prepetition CIT Loan Document obligations existing immediately prior to the Petition Date (such obligations, the "Prepetition CIT Obligations").   The Prepetition CIT Obligations had been accruing interest at the default rate of interest prior to the Petition Date and the default rate shall continue to be in effect with respect to the Prepetition CIT Obligations from and after the Petition Date.

(4)     As of the Petition Date, the Prepetition CIT Obligations were secured by valid, enforceable, properly perfected, and unavoidable liens on and security interests (the "Prepetition CIT Liens") encumbering substantially all assets of the Debtors (other than Excluded Assets (as defined in the Prepetition First Lien Credit Agreement)) existing immediately prior to the commencement of the Debtors' bankruptcy proceeding (the "Prepetition Collateral"), which Prepetition CIT Liens are senior, first priority liens and security interests with respect to all Prepetition Collateral, other than Senior Third Party Liens (as defined below);

(5)     The Prepetition CIT Liens were granted by the Debtors to, or for the benefit of, the Prepetition CIT Secured Parties for fair consideration and reasonably equivalent value;

(6)     The Debtors possess no claims, counterclaims, cross-claims, offsets, challenges, objections, defenses, or other rights or causes of action of any kind or nature against the Prepetition CIT Secured Parties including, without limitation, avoidance, disallowance, disgorgement, impairment, reduction, attachment, recoupment, defense,

objection, recovery, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or other applicable non-bankruptcy law;

(7)     The Prepetition CIT Obligations constitute valid, binding, and legal obligations of the Debtors, enforceable in accordance with their terms, and the Debtors and all other obligors under the Prepetition CIT Loan Documents will not assert any claims or defenses of any kind or nature that in any way would affect the validity and enforceability of any of the Prepetition CIT Obligations and/or the security interests or liens of the Prepetition CIT Secured Parties upon the Prepetition Collateral, or which would in any way reduce the obligation of the Debtors to pay in full all of the Prepetition CIT Obligations; and

(8)     the use of Cash Collateral (as defined below) and the loans, advances, and other financial accommodations to be obtained pursuant to the DIP Credit Facility are sufficient to fund the projected legitimate and allowable expenses of their Chapter 11 cases from the Petition Date during the period to which the Approved Budget pertains.

G.    F. The DIP Facility is the best source of debtor-in-possession financing available to the Debtors.  Given their current financial condition, financing arrangements, and capital structure, the Debtors are unable to obtain financing from sources other than the DIP Agent and DIP Lenders on terms more favorable than the DIP Facility.  The Debtors are unable to obtain sufficient levels of unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense necessary to maintain and conduct their business, unable to obtain credit secured solely by a lien on unencumbered property, and unable to obtain credit secured solely by junior liens on property of the Debtors.  The DIP Secured Parties are willing to provide

postpetition financing to the Debtors only through DIP Credit Facility and the DIP Credit Facility Documents;

H. G. All cash of the Debtors, wherever located (including any cash in deposit accounts), represents (i) proceeds of loans or other financial accommodations provided to the Debtors by the Prepetition CIT Secured Parties under Prepetition CIT Loan Documents; or (ii) proceeds of Prepetition Collateral; (iii) proceeds of loans or other financial accommodations provided to the Debtors by the DIP Secured Parties pursuant to the DIP Credit Facility Documents; or (iv) DIP Collateral (or proceeds thereof). Such funds (the "Cash Collateral") constitute cash collateral within the meaning of section 363 of the Bankruptcy Code;

I. H. It is in the best interest of the Debtors' estates that the Debtors be allowed to enter into the DIP Credit Facility in order to obtain postpetition secured financing from the DIP Secured Parties, and use Cash Collateral subject to and in accordance with the terms of this Interim Final Order and the DIP Credit Facility Documents, and to grant adequate protection to the Prepetition CIT Secured Parties on account of the Debtors' Prepetition CIT Obligations, on an interim basis under the terms and conditions set forth herein and in the DIP Credit Facility Documents, as such is necessary to avoid immediate and irreparable harm to the Debtors' estate pending the Final Hearing;

J. I. The Debtors require access to the funding available under the DIP Credit Facility and the DIP Credit Facility Documents and Cash Collateral in order to satisfy administrative expenses associated with the operation of their business as a going concern, pursuing the Sale Process and other costs relating to the administration of the Chapter 11 Cases, and in order to avoid immediate and irreparable harm to the Debtors' estates pending the Final Hearing. The priming of the Prepetition CIT Liens on the Prepetition Collateral under section

364(d), as contemplated by the DIP Facility, is necessary for the Debtors to obtain the DIP

Facility and to continue to operate their businesses to the benefit of their estates and creditors;

K.     ~~J.~~ The Prepetition CIT Secured Parties and DIP Secured Parties are unwilling to

consent to use of Cash Collateral by the Debtors, except under the terms of the DIP Credit

Facility Documents and this ~~Interim~~Final Order assuring that the liens and the various claims,

superpriority claims, and other protections granted in this ~~Interim~~Final Order will not be affected

by any subsequent reversal or modification of this ~~Interim~~Final Order or any other order, as

provided in section 364(e) of the Bankruptcy Code, which is applicable to the postpetition

financing arrangement contemplated in the DIP Credit Facility Documents and the use of Cash

Collateral pursuant to this ~~Interim~~Final Order;

L.     ~~K.~~ The Prepetition CIT Secured Parties are each entitled to receive adequate

protection as set forth in this ~~Interim~~Final Order pursuant to sections 361, 362, 363, and 507(b)

of the Bankruptcy Code, to the extent of any aggregate diminution in value of their respective

interests in the Prepetition Collateral resulting from, among other things, the Debtors' use~~,~~ of

Cash Collateral and other Prepetition Collateral, the subordination of the Prepetition CIT

Secured Parties' respective interests in the Prepetition Collateral (including Cash Collateral) to

the Carve Out, and the imposition of the automatic stay pursuant to section 362 of the

Bankruptcy Code (the "Diminution in Value");

M.     ~~L.~~ Upon ~~(a)~~ entry of this ~~Interim Order, without any further action by the Debtors~~

~~or any other party, but subject to Paragraph 28 herein, all collections and proceeds of DIP~~

~~Collateral shall be applied to reduce, on a dollar-for-dollar basis, the obligations under the~~

~~Prepetition CIT Loan Documents, and (b) entry of the~~ Final Order, but subject to the other terms

herein, all remaining outstanding obligations under the Prepetition CIT Credit Agreement shall

be converted into and constitute DIP Credit Facility Document obligations. Such administration and treatment of the Prepetition CIT Credit Agreement ~~Obligations~~obligations shall be authorized as compensation for, in consideration for, and solely on account of, the agreement of the DIP Lenders to fund advances under the DIP Credit Facility Documents and not as adequate protection for, or otherwise on account of, any Prepetition Credit Agreement obligations. The Prepetition CIT Secured Parties would not otherwise consent to the use of their Cash Collateral or the subordination of their liens as provided herein, and the DIP Agent and the DIP Lenders would not be willing to provide the DIP Credit Facility Document advances or extend credit to the Debtors thereunder or otherwise consent to the use of their Cash Collateral without the inclusion of such terms. Moreover, the conversion of all outstanding Prepetition CIT Credit Agreement obligations into DIP Credit Facility Document obligations upon entry of ~~the~~this Final Order will enable the Debtors to obtain urgently needed financing to administer these cases and fund their operations. ~~Because the~~Such conversion ~~of Prepetition Credit Agreement obligations into DIP Credit Facility Document obligations is subject to the reservation of rights in Paragraph 28 below, they~~ will not prejudice the right of any other party in interest.

N. ~~M.~~ The DIP Secured Parties and Prepetition CIT Secured Parties negotiated in good faith regarding the DIP Credit Facility and the Debtors' use of Cash Collateral to fund the administration of the Debtors' estates, pursuit of the Sale Process, and continued operation of the Debtors' businesses in accordance with the terms of this ~~Interim~~Final Order. Based on the Motion and on the record presented to the Court at the Interim Hearing and the Final Hearing, the terms of the DIP Credit Facility, DIP Credit Facility Documents, proposed adequate protection arrangements and ~~of~~ the use of Cash Collateral as set forth in this ~~Interim~~Final Order are (i) consistent with and authorized by the Bankruptcy Code, (ii) fair and reasonable, (iii)

reflect the Debtors' prudent exercise of business judgment, (iv) necessary to protect the Prepetition CIT Secured Parties from the Diminution in Value of their respective interests in the Prepetition Collateral, and (v) constitute reasonably equivalent and fair consideration for the Prepetition CIT Secured Parties' consent thereto.  The DIP Secured Parties are entitled to the protections of Bankruptcy Code Section 364(e).

O.    N.  Each of the Debtors is a duly organized, validly existing legal entity and has the requisite power and authority to own, lease, and operate its property, including, without limitation, the DIP Collateral.  Each of the Debtors has the requisite power and authority to enter into, execute, deliver, and perform its obligations under the DIP Credit Facility Documents and this Interim Final Order and to incur the obligations provided for thereon.  Except as may be explicitly required in the DIP Credit Facility Documents, no consent or waiver of, filing with, authorization, approval or other action by any shareholder, any federal, state, or other governmental authority or regulatory body or any other Person (other than the DIP Secured Parties), which has not already been obtained or done, is required in connection with the execution, delivery and performance by the Debtors of any of the documents required as a condition to the validity or enforceability of the DIP Credit Facility Documents, other than entry by this Court of this Interim Final Order; and

P.    O.  Good and sufficient cause exists for the issuance of this Interim Order, to prevent immediate and irreparable harm to the Debtors' estates entry of this Final Order.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:**

1.    The Motion is granted on an interim a final basis effective as of the Petition Date, as set forth herein.  All objections to this Interim Final Order, to the extent not withdrawn,

waived, settled, or resolved, are hereby denied and overruled on the merits.  This ~~Interim~~Final Order shall be valid, binding on all parties-in-interest and fully effective immediately upon entry. The Debtors are authorized, pursuant to sections 363 and 364 of the Bankruptcy Code, to enter into the DIP Credit Facility and DIP Credit Facility Documents (and, to the extent executed prior to entry of this ~~Interim~~Final Order, such execution is hereby ratified and affirmed), to execute such other and additional documents necessary or desired to implement the DIP Credit Facility or DIP Credit Facility Documents, to obtain postpetition secured financing from the DIP Secured Parties, and to use Cash Collateral, and the proceeds and products thereof, pursuant to the terms and conditions of the DIP Credit Facility Documents ~~and this~~, the Interim Order ~~to avoid immediate and irreparable harm to the Debtors' estates pending the~~, and this Final ~~Hearing~~Order. The Debtors shall use the advances obtained under the DIP Credit Facility and the DIP Collateral (including Cash Collateral) only for the purposes and in the amounts set forth in the DIP Credit Facility Documents and Approved Budget attached hereto as Exhibit A, as such budget may be amended from time to time with the consent of the DIP Agent in its sole discretion, without the need for further Court approval (such budget, the "Approved Budget"), subject to the terms and conditions set forth in the DIP Credit Facility Documents and this ~~Interim~~Final Order (including the Approved Budget Variances (as defined below)). The DIP Secured Parties shall have no obligation to make DIP Credit Facility advances in excess of the amounts and times set forth in the Approved Budget and DIP Credit Facility Documents; provided that the obligation to make DIP Credit Facility overadvances shall be determined in accordance with the DIP Credit Facility Documents.

2.    With respect to the Approved Budget:

(a)  Subject to the Approved Budget Variances (as defined below) (i) the Debtors' aggregate cash receipts budget line item (the "Total Cash Receipts" line item) and (ii) the Debtors' aggregate cash operating disbursement line item (the "Total Operating Disbursements" line item) (which Total Operating Disbursements Line item shall not include line items for fees and expenses of third party professionals engaged by or for the benefit of the ~~Debtor~~Debtors or the Statutory Committee ~~(if any)~~) shall be adhered to on a weekly basis (for the Total Operating Disbursements line item) and a cumulative basis (for the Total Cash Receipts line item and Total Operating disbursements line item) for the Approved Budget (as defined below) period then ending as described below, provided, however, that amounts not disbursed  under the Approved Budget shall be deemed to roll over to subsequent weeks.

(b) Actual amounts for the Total Cash Receipts line item will be tested weekly beginning with the first full calendar week following the Petition Date and may not be less than the applicable Approved Budget on a cumulative basis for that portion of the Approved Budget period then ending by more than (a) fifteen percent (15.0%) for such line item for the first two testing periods, and (b) ten percent (10.0%) for such line item for each testing period thereafter. Actual amounts for the Total Operating Disbursements line item (which shall not and does not include any Professional Fee line items) will be tested weekly beginning with the first full calendar week following the Petition Date and may not exceed the applicable Approved Budget (including any amounts deemed to roll over from a previous week due to not being spent) by more than ten percent (10.0%) for such line item on a weekly basis or more than ten percent (10.0%) for such line item on a cumulative basis for that portion of the Approved Budget period then ending (collectively, the "Approved Budget Variances").

(c) The Debtors' disbursements for fees and expenses of third party professionals engaged by or for the benefit of the Debtors or the Statutory Committee (if any), including success or transaction fees (collectively, "Professional Fees") shall be reported within the Approved Budget in a manner so that Professional Fees for each retained professional are reflected on its own line item.  The Approved Budget line items for Professional Fees shall not be tested for purposes of compliance with the Approved Budget or calculation of any Approved Budget Variances; *provided*, *however*, that Carve-Out for the respective Chapter 11 Professionals retained by the Debtors or Statutory Committee shall nevertheless be governed by the amounts of Professional Fees budgeted for each group's professionals within the Approved Budget).

(d)  Any fees payable to professionals retained by the DIP Secured Parties set forth in the Budget shall not be tested for purposes of compliance with the Budget or calculation of any Budget Variances.

3.    No proceeds of the DIP Credit Facility or Cash Collateral shall be used to (a) permit the Debtors or any other party-in-interest to challenge or institute any proceeding to determine (i) the validity, perfection, or priority of any security interests in favor of the Prepetition CIT Secured Parties or the DIP Secured Parties or (ii) the enforceability of the Debtors' obligations or the obligations of any obligor under the Prepetition CIT Loan Documents or DIP Credit Facility Documents; (b) investigate, commence, prosecute or defend (or support any other person or entity in investigating, commencing, prosecuting, or defending) any claim, motion, proceeding or cause of action against the Prepetition CIT Secured Parties or the DIP Secured Parties or any of their agents, attorneys, advisors or representatives, including, without limitation, claims or causes of action relating to lender liability or subordination claims; (c)

investigate, commence, prosecute, or defend (or support any other person or entity in investigating, commencing, prosecuting, or defending) any claim or proceeding or cause of action to disallow or challenge the obligations of the Debtors or any other obligor under the Prepetition CIT Loan Documents or the DIP Credit Facility Documents, or (d) fund any acquisitions, capital expenditures, capital leases, or similar expenditures other than those specifically set forth in the Approved Budget; provided, however, that a~~the~~ Statutory Committee ~~(if any)~~ and its professionals shall be allowed to use proceeds of the DIP Credit Facility or Cash Collateral, in an amount not to exceed twenty five thousand dollars ($25,000), to investigate the validity and perfection of the Prepetition CIT Liens (the "Committee Budget"); provided further, however, that any fees and expenses incurred by ~~any~~the Statutory Committee or any of its legal or financial advisors in connection with any such investigation in excess of the Committee Budget, and any fees or expenses incurred by ~~any~~the Statutory Committee or its legal or financial advisors in connection with commencing or prosecuting any Challenge Action, shall not be paid from the proceeds of the ~~Prepetition~~DIP Collateral, including any Cash Collateral or the Carve-Out, and all rights of all parties in interest are reserved to challenge the status of such fees or expenses as allowed administrative expense claims for purposes of section 1129(a)(9)(A) of the Bankruptcy Code.

4.      Pursuant to sections 363 and 364(c) and (d), the DIP Credit Facility funds advanced pursuant to the terms of ~~this~~the Interim Order or this Final Order (collectively, the "~~Interim~~ DIP Advances") ~~and, upon entry of the Final Order, any further DIP Credit Facility funds advanced pursuant to the terms of the Final Order,~~ shall be allowed administrative expenses of the Debtors' estates, which shall have priority in payment over any other indebtedness and/or obligations now in existence or incurred hereafter by the Debtors and over

all administrative expenses or charges against property arising in the Debtors' Chapter 11 ~~cases~~Cases and any superseding Chapter 7 case including, without limitation, those specified in Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c) ~~(subject to the entry of the Final Order)~~, 507(a), 507(b), 726, 1113 or 1114, subject and junior only to the Carve-Out (as hereinafter defined) (such claim, the "DIP Superpriority Claim")~~; provided, that the DIP Superpriority Claim shall not be asserted against or payable from (i) Avoidance Proceeds (as defined below) or (ii) Estate Cause of Action Proceeds (as defined below), in each case, prior to entry of the Final Order~~.  The time of payment of the ~~Interim~~ DIP Advances shall not be altered, extended or impaired without the consent of the DIP Agent by any plan or plans of reorganization that may hereafter be accepted or confirmed or any further orders of the Court which hereafter may be entered.  No lien or interest avoided and preserved for the benefit of the estates pursuant to section 551 of the Bankruptcy Code shall be pari passu with or senior to the DIP Superpriority Claim.

5.      Interest on the Prepetition CIT Obligations shall, to the extent permitted under the Bankruptcy Code, accrue from and after the Petition Date at the rate set forth in the Prepetition First Lien Credit Agreement and be payable along with interest accruing on the ~~Interim~~ DIP Advances, as set forth in the Approved Budget and DIP Credit Facility Documents.  The reasonable and documented fees and expenses of the DIP Secured Parties shall be payable without further notice, motion, or application to, order of, or hearing before, the Court (except such notice as may be required in the DIP Credit Facility Documents); provided, however, the DIP Agent shall submit copies of its professionals' invoices to the Debtors, the U.S. Trustee and counsel for ~~any~~the Statutory Committee, which invoices may be in summary form only (provided, that such invoices contain data regarding hours worked by each timekeeper for the

applicable professional and such timekeepers' hourly rates), and such parties shall have ten (10) days following the receipt of such invoices to object to the reasonableness of the fees and expenses included in any such invoices. If any objection is asserted, the Court shall decide the issue and the Debtors shall pay any undisputed portion of such fees or expenses notwithstanding the pending resolution of the disputed portion. Any fees payable to professionals retained by the DIP Secured Parties set forth in the Approved Budget shall not be limited by the amounts set forth in the Approved Budget.

6.      Upon entry of this ~~Interim Order, without any further action by the Debtors or any other party, but subject to Paragraph 28 herein, all collections and proceeds of DIP Collateral shall be applied to reduce, on a dollar-for-dollar basis, the obligations under the Prepetition CIT Loan Documents, and upon entry of the~~ Final Order, but subject to the other terms herein, all remaining outstanding obligations under the Prepetition CIT Credit Agreement ~~shall be~~are hereby converted into and constitute DIP Credit Facility Document obligations.

7.      Pursuant to sections 363, 364(c), and 364(d), as security for the ~~Interim~~ DIP Advances and other postpetition costs payable under the DIP Credit Facility Documents~~, and, upon entry of the Final Order, any further DIP Credit Facility funds advanced pursuant to the terms of the Final Order~~, the Debtors are hereby authorized to and are hereby deemed to grant to the DIP Agent a valid, binding and enforceable lien, mortgage and/or security interest (a "<u>Lien</u>," and as so granted to the DIP Agent, the "<u>DIP Credit Lien</u>") in all of the Debtors' presently owned or hereafter acquired property and assets, whether such property and assets were acquired before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, and the proceeds and products thereof (collectively, the "<u>DIP Collateral</u>"), including the proceeds of any actions brought under section 549 of the Bankruptcy Code to

recover any post-petition transfer of DIP Collateral, but excluding (i) any causes of action that could be brought pursuant to sections 544, 545, 547, 548 of the Bankruptcy Code, or any applicable state fraudulent transfer statutes (the "Avoidance Actions") but, ~~subject to entry of the Final Order,~~ including proceeds of (and property received in respect of) Avoidance Actions ("Avoidance Proceeds"), and (ii) any estate causes of action upon which the Prepetition CIT Agent did not have a validly perfected, unavoidable lien as of the Petition Date against current or former insiders, as such term is defined ~~Section~~section 101(31) of the Bankruptcy Code, including, without limitation, officers, directors and controlling shareholders~~, but, subject to the entry of the Final Order,~~ ("Unencumbered Estate Causes of Action"), but including the proceeds thereof ("Estate Cause of Action Proceeds"). ~~In the interest of clarity, nothing herein shall prejudice the rights of any party in interest to object to any provision in the Final Order that would include Avoidance Proceeds and/or Estate Cause of Action Proceeds in the DIP Collateral and all such rights are reserved.~~

8.     Pursuant to sections 364(c) and (d), the DIP Credit Lien shall be a first priority senior and priming lien on the DIP Collateral, subject and junior only to (a) the Carve-Out and (b) valid, enforceable, properly perfected, and unavoidable prepetition Liens (including any Liens that are perfected after the Petition Date that are afforded priority due to the express relation back of the perfection of such lien to a date prior to the Petition Date as permitted by Bankruptcy Code section 546(b)) that are senior to the Prepetition CIT Liens ("Senior Third Party Liens"). The DIP Credit Lien shall not be subject or subordinate to any Lien which is avoided and which would otherwise be preserved for the benefit of the Debtors' estates under section 551, and in no event shall any person or entity who pays (or causes to be paid) any of the obligations under the Prepetition CIT Loan Documents or DIP Credit Facility Documents be

subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens or security interests granted to or in favor of, or conferred upon, the DIP Secured Parties by the terms of the DIP Credit Facility Documents until such time as the obligations under the DIP Credit Facility Documents and this ~~Interim~~Final Order are indefeasibly paid in full, in cash.  The DIP Credit Lien shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code.  The DIP Credit Lien shall not be subject or subordinate to Liens arising after the Petition Date, other than Liens granted pursuant to this ~~Interim~~Final Order to the extent set forth in this ~~Interim~~Final Order.

9.      All rents, income, profits, cash in accounts and deposits derived from the Prepetition Collateral and DIP Collateral constitute Cash Collateral.  Provided that each of the conditions set forth in this Paragraph are satisfied, the Debtors shall be authorized to use the Cash Collateral only in accordance with the terms of the Approved Budget (subject to Approved Budget Variances), ~~this~~the Interim Order, this Final Order, and the other DIP Credit Facility Documents. The satisfaction of each of the following conditions shall constitute a condition to the Debtors' authorization to use any Cash Collateral: (i) no Event of Default under (and as defined in the DIP Credit Facility Documents) shall exist or be continuing; and (ii) the Commitment Termination Date (as defined in the DIP Credit Agreement) ~~or the Termination Date (as defined in the DIP Term Sheet)~~ shall not have occurred.

10.     Until the indefeasible payment in full of the Prepetition CIT Obligations, the Prepetition CIT Secured Parties are entitled to adequate protection of their interests in the Prepetition Collateral (including Cash Collateral) solely to the extent of the Diminution in Value of the Prepetition Collateral as a result of (a) the provisions of ~~this~~the Interim Order or this Final Order granting first priority and/or priming liens on such Prepetition Collateral to the DIP Agent for the benefit of the DIP Secured Parties, (b) the Debtors' use of the Prepetition Collateral

(including Cash Collateral), (c) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, or (d) otherwise, pursuant to sections 361(a), 363(c), and 364(d)(1) of the Bankruptcy Code. The Prepetition CIT Agent, on behalf of and for the benefit of the Prepetition CIT Secured Parties, is hereby granted, solely to the extent of Diminution in Value of the Prepetition CIT Liens in the Prepetition Collateral from and after the Petition Date the following:

      A.      a Lien in all DIP Collateral (the "Prepetition CIT Adequate Protection Lien") junior only to (i) the Carve-Out and (ii) Senior Third Party Liens, and (iii) the DIP Credit Lien; and

      B.      a postpetition superpriority administrative expense claim (the "Prepetition CIT Adequate Protection Claim") against the Debtors with recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (excluding Avoidance Actions, ~~but, subject to entry of the Final Order,~~ and Unencumbered Estate Causes of Action, but including Avoidance Proceeds and Estate Cause of Action Proceeds) under sections 503 and 507 of the Bankruptcy Code against the Debtors' estates to the extent the Prepetition CIT Adequate Protection Lien does not adequately protect against the Diminution in Value of the Prepetition CIT Liens, which shall have priority in payment over any other indebtedness and/or obligations now in existence or incurred hereafter by the Debtors or their estates and over all other administrative expenses of any kind, including, without limitation, those specified in sections 105, 326, 328, 330, 331, 503(b), 506(c) ~~(subject to entry of the Final Order)~~, 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code, or otherwise and including those resulting from the conversion of the chapter 11 case pursuant to section 1112 of the Bankruptcy Code; subject and junior only to the Carve-Out and the DIP Superpriority Claim~~; provided, that the Prepetition CIT~~

~~Adequate Protection Claim shall not be asserted against or payable from Avoidance~~
~~Proceeds or Estate Cause of Action Proceeds prior to the entry of the Final Order. In the~~
~~interest of clarity, nothing herein shall prejudice the rights of any party in interest to~~
~~object to any provision in the Final Order that would include Avoidance Proceeds and/or~~
~~Estate Cause of Action Proceeds in the CIT Adequate Protection Claim and all such~~
~~rights are reserved.~~.

11.     Nothing herein shall be deemed to be a waiver by any Prepetition CIT Secured Party of its right to request additional or further protection of its interests in any property of the Debtors, to move for relief from the automatic stay (if such relief is required), to seek the appointment of a trustee or examiner or the dismissal of any of the Debtors' bankruptcy cases, or to request any other relief. The Prepetition CIT Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be pari passu or senior to the Prepetition CIT Adequate Protection Liens or Prepetition CIT Liens.

12.     The automatic stay provisions of section 362 are hereby modified to permit (a) the Debtors and the DIP Agent to implement and perform under the DIP Credit Facility and the DIP Credit Facility Documents, including without limitation the provisions thereof with respect to the collection of Proceeds, and the maintenance and implementation of the Collection Accounts and the Collection Procedures (as such terms are defined below), and (b) the creation and perfection of all Liens granted or permitted by this ~~Interim~~Final Order. The Debtors and the holders of any DIP Credit Lien or Prepetition CIT Adequate Protection Lien shall not be required to enter into any additional security agreements to create, memorialize, and/or perfect any such liens, or to file UCC financing statements, mortgages, or other instruments with any other filing authority or

take any other action to perfect any such Liens, which Liens shall be and are deemed valid, binding, enforceable and automatically perfected by the docket entry of ~~this~~the Interim Order by the Clerk of the Court.  If, however, the holder of any DIP Credit Lien or Prepetition CIT Adequate Protection Lien in its sole and absolute discretion shall elect for any reason to enter into, file, record or serve any such financing statements or other documents with respect to any such Lien, then the Debtors shall execute same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time and on the date of the docket entry of ~~this~~the Interim Order by the Clerk of the Court.  The holders of any DIP Credit Facility obligations or Prepetition CIT Obligations are hereby relieved of any requirement to file proofs of claim in the Debtors' bankruptcy cases with respect to any claims or Liens securing such claims, but any such holder may in its sole and absolute discretion file any such proof of claim.

13.     Each of the DIP Agent and the Prepetition CIT Agent, in its discretion, may file a photocopy of this ~~Interim~~Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument. To the extent that the Prepetition CIT Agent is the secured party under any security agreement, mortgage, leasehold mortgage, landlord waiver, credit card processor notices or agreements, bailee letters, custom broker agreements, financing statement, account control agreements, or any other collateral documents or relevant Prepetition CIT Documents then automatically and without further action, (i) the DIP Agent shall be deemed to be a secured party under such documents, (ii) the DIP Credit Facility Document obligations, together with any refinancings or replacements thereof, shall be deemed to be secured obligations under such documents, and (iii) the applicable provisions of such documents shall

apply to the DIP Credit Facility Documents, the DIP Credit Liens, and the DIP Credit Facility Document obligations, and (iv) such documents shall be deemed to be DIP Credit Facility Documents hereunder; all as fully and completely as if the DIP Agent was an original secured party in such documents and the DIP Credit Facility Document obligations were original secured obligations in such documents. To the extent the Prepetition CIT Agent is listed as loss payee, lender loss payee, mortgagee or additional insured under any of the Debtors' insurance policies, the DIP Agent shall also be deemed to be the secured party under such documents or to be the loss payee, lender loss payee, mortgagee or additional insured, as applicable.

14.    The DIP Credit Liens, DIP Superpriority Claims, Prepetition CIT Adequate Protection Liens, and Prepetition CIT Adequate Protection Claim shall be subject to right of payment of the following expenses (the following subparagraphs, collectively, the "Carve-Out," and all amounts payable in connection therewith, the "Carve-Out Amounts"):

A.    unpaid postpetition fees and expenses of the Clerk of the Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) in such amount, with respect to the U.S. Trustee, as agreed to by the U.S. Trustee or as determined by the Court;

B.    subject to the limits set forth in this InterimFinal Order, unpaid postpetition fees and expenses of professionals of the Debtors and professionals of athe Statutory Committee (if any), which are retained by an order of the Court pursuant to sections 327, 328, 363 or 1103(a) of the Bankruptcy Code (the "Chapter 11 Professionals"), but only to the extent such fees and expenses are (i) incurred prior to delivery of a Carve-Out Trigger Notice (the date of delivery of such notice, the "Carve-Out Trigger Date"), (ii) within the amounts set forth in the Approved Budget approved by the DIP Agent for such Chapter 11 Professional as of the date of the

Carve-Out Trigger Date, and (iii) subsequently allowed (whether prior or subsequent to the Carve-Out Trigger Date) by the Bankruptcy Court under sections 330, 331, or 363 of the Bankruptcy Code; and

C.      after the Carve-Out Trigger Date, postpetition fees and expenses of the Chapter 11 Professionals incurred after the Carve-Out Trigger Date in an aggregate amount not to exceed $500,000, to the extent such fees and expenses are subsequently allowed by the Bankruptcy Court under sections 330, 331, or 363 of the Bankruptcy Code, and fees and expenses of a chapter 7 trustee in an amount not to exceed $10,000;

provided, however, that (a) the Carve-Out shall only be available to pay fees and expenses set forth herein to the extent that unencumbered funds are not otherwise available; and (b) in no event shall (i) the aggregate pre-Carve-Out Trigger Date amount of the Carve-Out provided in clause 14(bB) above for all the Chapter 11 Professionals retained by the Debtors exceed the aggregate amount budgeted for such professionals within the Approved Budget and (ii) the aggregate pre-Carve-Out Trigger Date amount of the Carve-Out provided in clause 14(bB) above for all the Chapter 11 Professionals retained by the Statutory Committee exceed the aggregate amount budgeted for such professionals within the Approved Budget; provided, further however, that the Carve Out for Chapter 11 Professional fees shall first be paid from any retainers or any professional expense escrow account established by any Debtor.  Any amounts paid from the DIP Collateral or the proceeds thereof, or funded by the DIP Agent or DIP Secured Parties with respect to the Carve-Out prior to the entry of the Final Order shall be Interim DIP Advances and such obligations shall be secured by the DIP Credit Lien.  As used in this InterimFinal Order, the term "Carve-Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent to the Debtors, their lead restructuring counsel, the U.S.

- 24 -

Trustee, and counsel to the Statutory Committee (if any), which notice is identified as a Carve-Out Trigger Notice and is delivered following the occurrence and during the continuation of an Event of Default under a DIP Credit Facility Document or this InterimFinal Order and the acceleration of the obligations under the DIP Facility.  Further, the payment of the fees or costs of any Chapter 11 Professional and/or Statutory Committee (if any) shall be subject to Court approval, and DIP Agent and the DIP Secured Parties reserve the right to object to any Chapter 11 Professional's application for payment.

15.    Neither the payment of any Chapter 11 Professional fees, nor the Carve-Out shall include payment for any fees and expenses, if any, of the Chapter 11 Professionals incurred directly or indirectly, in respect of, arising from or relating to:

A.    the initiation, joinder or prosecution of any action contesting the indebtedness owed to DIP Secured Parties or the Prepetition CIT Secured Parties, or the validity of any liens granted to any of such parties, provided, however, that athe Statutory Committee (if any) and its professionals shall be allowed to use the Committee Budget to investigate the validity of the Prepetition CIT Liens;

B.    preventing, hindering or otherwise delaying (or supporting any other person or entity in preventing, hindering or otherwise delaying), whether directly or indirectly, the exercise by DIP Agent or Prepetition CIT Agent of any of its rights and remedies under the Interim Order, this Final Order, Prepetition CIT Loan Documents, or DIP Credit Facility Documents, including, without limitation, any attempt to prevent, hinder or delay (or supporting any other person or entity in preventing, hindering or delaying) the submission of any credit bid by any of the DIP Secured Parties or Prepetition CIT Secured Parties;

- 25 -

C.      the commencement, support, or prosecution of any action or proceeding of any claims, causes of action or defenses against the DIP Secured Parties, Prepetition CIT Secured Parties, or any of their respective officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from the DIP Secured Parties or Prepetition CIT Secured Parties, or any of them;

D.      any request to borrow money other than pursuant to the terms of the Interim Order, ~~the~~this Final Order, or the DIP Credit Facility Documents;

E.      with respect to the Debtors, any of the Debtors' Chapter 11 Professionals, or any of their successors or assigns (including, without limitation, any trustee, responsible officer, examiner, estate administrator or representative, or similar person appointed in a case for the Debtors under any chapter of the Bankruptcy Code) performing or commencing any investigation or litigation (whether threatened or pending) by the Debtors with respect to any matter to be released, waived or specified as not subject to challenge by the Debtors pursuant to ~~this~~the Interim Order or ~~the~~this Final Order (including, without limitation, Paragraphs 26, 27, and 28 herein); or

F.      For any other purpose for which proceeds of the DIP Credit Facility may not be used pursuant to the DIP Credit Facility Documents.

16.     The Debtors shall establish and fund a segregated account not subject to the control of the DIP Agent (such account, the "**Carve-Out Account**") for purposes of funding the Carve-Out.  So long as a Carve-Out Trigger Date shall not have occurred, the ~~Debtor~~Debtors shall transfer to the Carve-Out Account on a weekly basis, the amounts that the Chapter 11 Professionals may be paid pursuant to the Approved Budget for such week.  Such funds shall be

held for the benefit of the Chapter 11 Professionals, to be applied to the fees and expenses of such Chapter 11 Professionals that are approved for payment pursuant to one or more orders of the Bankruptcy Court.  Any fees and expenses payable to Chapter 11 Professionals shall be paid first out of the Carve-Out Account, and all amounts deposited in the Carve-Out Account shall reduce, on a dollar for dollar basis, the Carve-Out.  Upon the occurrence of the Carve-Out Trigger Date, the Debtors shall be required to deposit in the Carve-Out Account an amount equal to (a) the unpaid amount (if any) of Chapter 11 Professional fees contemplated in the Approved Budget for such week that should have been paid into the Carve-Out Account during the Approved Budget week in which the Carve-Out Trigger Date occurs (to the extent such amount has not already been paid into the Carve-Out Account during such Budget week); and (b) the $510,000 ~~Carve-Out~~post-Carve-Out Trigger ~~Reserve~~Date amount.  To the extent that the cash of the Debtors is not sufficient to fund the amounts set forth in the preceding items (a) or (b), the DIP Lenders shall make advances under the DIP Facility sufficient to deposit such amounts into the Carve-Out Account.  To the extent that the fees and expenses of the Chapter 11 Professionals performed prior to a Carve-Out Trigger Date and allowed pursuant to one or more orders of the Bankruptcy Court are less than the amounts funded into the Carve-Out Account, the excess amounts in the Carve-Out Account shall be remitted to the DIP Agent to reduce the obligations under the DIP Facility.   The DIP Agent shall not foreclose or sweep amounts in the Carve-Out Account unless and until the final, allowed amounts payable to Chapter 11 Professionals have been disbursed to the Chapter 11 Professionals from the Carve-Out Account, and, following delivery of a Carve-Out Trigger Notice, the DIP Agent shall not sweep or foreclose on cash of the Debtors that would be required to fund the Carve-Out Account after the occurrence of the Carve-Out Trigger Date in the manner set forth in this paragraph.  The DIP Agent and DIP

Lenders reserve all of their rights to challenge or otherwise object to the allowance of any fees or expenses sought to be paid to any Chapter 11 Professionals.

17.     ~~Subject to the~~Upon entry of ~~the~~this Final Order, in light of, among other things, the subordination of the liens and superpriority claims of the DIP Secured Parties and Prepetition CIT Secured Parties to the Carve-Out, effective as of the time of commencement of the Debtors' bankruptcy cases on the Petition Date:

A.      each of the Debtors (and any successors thereto or any representatives thereof, including any trustees appointed in the Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Debtors' Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (each, a "Successor Case") waives, and shall be deemed to waive, irrevocably all claims, causes of action, benefits, and rights, if any, it or its estate might otherwise assert against the Prepetition Collateral, DIP Collateral, Prepetition CIT Secured Parties, and DIP Secured Parties pursuant to Bankruptcy Code sections 506(c), 105(a) or any other applicable law;

B.      except from and pursuant to the terms of the Carve-Out, no person or entity in the course of the Debtors' bankruptcy cases shall be permitted to recover from the DIP Collateral or Prepetition Collateral (whether directly or through the grant of derivative or equitable standing in the name of the Debtors or any Debtor's estate) any cost or expense of preservation or disposition of the Prepetition Collateral or DIP Collateral, including, without limitation, expenses and charges as provided in Bankruptcy Code sections 506(c), 105(a), or any other applicable law;

C.      except from and pursuant to the terms of the Carve-Out, no person or entity shall be permitted to recover from the DIP Collateral or Prepetition Collateral, or

assert against any DIP Secured Party or any Prepetition CIT Secured Party, any claim with respect to any unpaid administrative expense of the Debtors' bankruptcy cases, whether or not the Debtors' payment of such administrative claim was contemplated by or included in the Approved Budget;

D.    Nothing contained in this ~~Interim~~Final Order shall be deemed a consent by the DIP Secured Parties or Prepetition CIT Secured Parties to any charge, lien, assessment, or claim against, or in respect of, the Prepetition Collateral or DIP Collateral under section 506(c) of the Bankruptcy Code or otherwise, and no consent shall be implied from any other action, inaction, or acquiescence by any such parties; and

E.    the Prepetition CIT Secured Parties and the DIP Secured Parties shall not be subject to the "equities of the case" exception of Bankruptcy Code section 552(b), or to the equitable doctrines of "marshaling" or any similar claim or doctrine, with respect to any DIP Collateral or Prepetition Collateral, and the proceeds of the Prepetition Collateral shall be received and applied pursuant to the Prepetition CIT Loan Documents.

18.    So long as the DIP Credit Facility obligations remain outstanding, unless consented to in writing by the DIP Agent, the Debtors shall not seek entry of any further orders in their Chapter 11 Cases which authorize (a) under section 363 of the Bankruptcy Code, the use of Cash Collateral; (b) the obtaining of credit or the incurring of indebtedness pursuant to sections 364(c) or 364(d) of the Bankruptcy Code that does not indefeasibly repay the DIP Credit Facility in full, in cash, (c) the return of goods pursuant to section 546(h) of the Bankruptcy Code to any creditor of the Debtors or to consent to any creditor taking any setoff against any of such creditor's prepetition indebtedness based upon any such return pursuant to section 553 of the Bankruptcy Code or otherwise, or (d) any other grant of rights against the Debtors and/or their

estates that is secured by a Lien in the DIP Collateral or is entitled to superpriority administrative status that does not indefeasibly repay the DIP Credit Facility in full, in cash.

19.    Upon the occurrence of: (i) an Event of Default (as such term is defined in any DIP Credit Facility Document); (ii) the Debtors' failure to comply with the terms of this ~~Interim Order or the~~ Final Order (including, without limitation, its failure to comply with the Approved Budget, subject to any Approved Budget Variances); or (iii) the Debtors' failure to comply with any of the sale milestones attached hereto as <u>Exhibit B</u> (such milestones, the "<u>Milestones</u>"), and the giving of written notice thereof by the DIP Agent to counsel to the Debtors, the Statutory Committee ~~(if any)~~, and the U.S. Trustee (which notice may be given by any manner of electronic transmission, the automatic stay being deemed lifted for such purpose) (the "<u>Default Notice</u>"), then (i) the DIP Agent shall be fully authorized, in its sole discretion to immediately cease making DIP Credit Facility advances to the Debtors, (ii) the DIP Agent shall be fully authorized, in its sole discretion to terminate the Debtors' use of the DIP Collateral (including without limitation Cash Collateral) pursuant to this ~~Interim~~<u>Final</u> Order and the Approved Budget, and/or (iii) the DIP Agent shall be fully authorized, in its sole discretion to terminate the DIP Credit Facility, accelerate the obligations under the DIP Facility, and demand repayment of the DIP Credit Facility obligations then outstanding; in each of cases (i) through (iii), which termination shall become effective five (5) days after delivery of the Default Notice, <u>provided however</u> that the DIP Agent consents to the scheduling of an expedited hearing to consider further access to the DIP Credit Facility, DIP Collateral usage, and/or or Cash Collateral usage by the Debtors.

20.      Further, upon the occurrence of an Event of Default and transmission of a Default Notice or upon the Commitment Termination Date (as such term is defined in the DIP Credit Agreeent):

A.      the DIP Agent shall have the right, free of the restrictions of sections 362 or under any other section of the Bankruptcy Code or applicable law or rule (including, without limitation, Bankruptcy Rule 4001(a)), to take immediate reasonable action to protect the DIP Collateral from harm, theft and/or dissipation;

B.      with respect to an Event of Default as to which a Default Notice has been given, the Debtors, the Statutory Committee (if any), and the U.S. Trustee shall have five (5) business days from the date of the Default Notice (the "Remedy Notice Period") to obtain an order of the Court on notice to the DIP Agent (a) enjoining or restraining the DIP Secured Parties from taking action or exercising rights and remedies (other than any rights and remedies that may be exercised immediately upon the satisfaction of the conditions set forth set forth in Paragraph 19 herein) based upon the Event of Default specified in the Default Notice; or (b) challenging whether an Event of Default in the Default Notice has occurred or is continuing without cure (a "Restraint on Remedies"). During the Remedy Notice Period, the DIP Agent shall refrain from exercising its rights and remedies (other than those that may be exercised immediately as set forth in Paragraph 19). Immediately upon expiration of the Remedy Notice Period unless a Restraint on Remedies has timely been obtained from the Court, or with respect to and upon the maturity date for the DIP Credit Facility, immediately:

(1)      the DIP Agent shall have the right, free of the restrictions of section 362 or under any other section of the Bankruptcy Code or Bankruptcy

Rules (including, without limitation, Bankruptcy Rule 4001(a)), but subject to the provisions hereof relating to the Carve-Out, to exercise contractual, legal and equitable rights and remedies as to all or such part of the DIP Collateral as it shall elect, and to apply the Proceeds (as such term is defined below) of the DIP Collateral to the repayment of the DIP Credit Facility obligations and Prepetition CIT Obligations; and

(2)     the DIP Agent, should it so elect in its sole and absolute discretion as exercised by the filing of an appropriate statement with the Court, shall be deemed to have been granted "peaceful possession" of, and right of access to, all or any portion of the DIP Collateral, by the Debtors.

21.     The Debtors shall provide the DIP Agent with (i) all financial statements, certificates, and reports required by any DIP Credit Facility Document in the manner specified therein (including, without limitation, a weekly Approved Budget Variance Report) and (ii) such additional information as the DIP Agent shall reasonably request from the Debtors.  The DIP Agent and its representatives shall have reasonable access to the Debtors' business premises and to the DIP Collateral in order to review and evaluate the physical condition of any of the DIP Collateral and/or to inspect the financial records and other records of the Debtors concerning the operation of the Debtors' business.

22.     For purposes of this ~~Interim~~Final Order, (a) "Proceeds" shall mean both (i) proceeds (as defined in the Uniform Commercial Code for the State of New York) and (ii) any and all payments, proceeds or other consideration realized upon the sale, liquidation, realization, collection or other manner of disposition of the DIP Collateral, whether in the ordinary course of the Debtors' business (including without limitation accounts, receivables, and other proceeds

arising from the Debtors' sales of goods and/or performance of services) or other than in the ordinary course of the Debtors' business, and (b) "Disposition" shall mean any sale, liquidation, realization, collection or other manner of disposition of DIP Collateral other than in the ordinary course of the Debtors' business, including without limitation any sale conducted pursuant to Section 363 of the Bankruptcy Code.

23.     The Debtors shall maintain in full force and effect the deposit, clearing, dominion, lockbox, and similar accounts maintained by or on behalf of the Debtors pursuant to Prepetition CIT Loan Documents for the collection of Proceeds obtained in the ordinary course of the Debtors' business (the "Collection Accounts"), and the cash management systems, treasury management systems, and payment procedures under which such accounts and systems are administered (the "Collection Procedures").  In furtherance of the foregoing, the DIP Agent shall be deemed to have control of all of the Debtors' bank accounts, and any financial institutions in which such accounts of the Debtors are located are hereby authorized to act in accordance with any request of the DIP Agent concerning such accounts, including, without limitation, requests to turnover funds therein without offset or deduction of any kind.

24.     The Debtors and any successors to the Debtors, including without limitation any successor trustee or trustees, shall assign or direct to the DIP Agent any and all Proceeds realized in ~~any Disposition~~respect of any DIP Collateral, and immediately deliver any and all such Proceeds which come into their possession to the DIP Agent in the form received; provided, however, that the foregoing shall be subject in all respects to (a) payment of the Carve-Out and (b) the priorities of the DIP Credit Lien granted by this ~~Interim~~Final Order.  The foregoing is without prejudice to the rights of (a) the DIP Agent, the Statutory Committee ~~(if any)~~, or any other party to object to any proposed Disposition, (b) any third party with respect to the allocated

- 33 -

Proceeds of any Disposition of Collateral encumbered by a Senior Third Party Lien, or (c) the rights of third parties set forth below with respect to a Challenge Action and the remedies that may result from a successful Challenge Action. All Proceeds received by the DIP Agent shall be applied to the repayment of the Prepetition CIT Obligations and DIP Credit Facility obligations, in the manner set forth (a) prior to entry into the DIP Credit Agreement, on Exhibit C, and (b) after entry into the DIP Credit Agreement, in the manner set forth in Section 5.6.2 of the DIP Credit Agreement, until such obligations are paid in full; provided, however, that the foregoing shall be subject in all respects to the terms and the priorities of liens under this Interim Final Order. Such applications of Proceeds shall be free and clear of any claim, charge, assessment or other liability.

25.    Subject to Paragraph 28 of this Order, the DIP Agent and Prepetition CIT Agent are hereby authorized to credit-bid all or any of the obligations under the DIP Credit Facility and Prepetition CIT Loan Documents at any Disposition of any Prepetition Collateral and/or DIP Collateral, including, without limitation, any sale conducted pursuant to Section section 363 of the Bankruptcy Code.

26.    Subject to the right to bring a Challenge Action as set forth in Paragraph 28 below, upon entry of this Interim Final Order:

    A.    the Stipulations shall be binding upon the Debtors and all other persons, entities, and/or parties in all circumstances;

    B.    the validity, extent, priority, perfection, enforceability and non-avoidability of the Prepetition CIT Secured Parties' validly perfected prepetition claims and liens against the Debtors and the Prepetition Collateral shall not be subject to challenge by the Debtors or any other person, entity, or party; and

C.    neither the Debtors, nor any other person, entity, or party shall seek to avoid or challenge (whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise) any transfer made by or on behalf of the Debtors to or for the benefit of any of the Prepetition CIT Secured Parties prior to the Petition Date.

27.    In consideration of and as a condition to, among other things, the DIP Secured Parties making the ~~Interim~~ DIP Advances and providing credit and other financial accommodations to the Debtors, the Prepetition CIT Secured Parties consenting to, among other things, the use of Cash Collateral, and subordination by the DIP Secured Parties and Prepetition CIT Secured Parties of their Liens to the Carve-Out pursuant to the terms of ~~this~~the Interim Order, this Final Order, and the DIP Credit Facility Documents, each of the Debtors, on behalf of themselves, their estates, and their affiliated obligors under the Prepeittion CIT Loan Documents (each a "Releasor" and collectively, the "Releasors"), subject to Paragraph 28 herein, absolutely releases, forever discharges and acquits each of the Prepetition CIT Secured Parties and their respective successors and assigns, affiliates, officers, directors, employees, attorneys and other representatives (the "Releasees") of and from any and all claims, demands causes of action, damages, choses in action, and all other claims, counterclaims, defenses, setoff rights, and other liabilities whatsoever (the "Prepetition Released Claims") of every kind, name, nature, and description, whether known or unknown, both at law and equity (including, without limitation, any "lender liability" claims) that any Releasor may now or hereafter own, hold, have or claim against each and every of the Releasees arising at any time prior to the entry of this ~~Interim~~Final Order (including, without limitation, claims relating to the Debtors, the Prepetition CIT Loan Documents, and other documents executed in connection therewith, and the obligations thereunder); provided, however, that such release shall not be effective with respect to the

Debtors until entry of the Final Order, and with respect to the Debtors' bankruptcy estates, until the expiration of the Challenge Period.  In addition, upon the indefeasible payment, in full, in cash, of all DIP Credit Facility obligations owed to the DIP Secured Parties arising under this InterimFinal Order and the DIP Credit Facility Documents, the DIP Secured Parties shall be released from any and all obligations, actions, duties, responsibilities, and causes of action arising or occurring in connection with or related to the DIP Credit Facility Documents.

28.    Notwithstanding any other provisions of this InterimFinal Order, any interested party with requisite standing (other than the Debtors or their Professionals) in these cases (including, without limitation, the Statutory Committee (if any)) shall have until the date that is seventy-five (75) days after entry of this OrderJanuary 8, 2024 (such period, the "Challenge Period"), to commence an adversary proceeding against the Prepetition CIT Secured Parties (as applicable) for the purpose (collectively, a "Challenge Action") of:

A.    challenging any of the Stipulations;

B.    challenging the validity, extent, priority, perfection, enforceability and non-avoidability the Prepetition CIT Secured Parties' Liens (as applicable) against the Debtors;

C.    contesting the amount of the Prepetition CIT Secured Parties' asserted claims;

D.    seeking to avoid or challenge (whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise) any transfer made by or on behalf of the Debtors to or for the benefit of any of the Prepetition CIT Secured Parties, or any of their predecessors in interest under the Prepetition CIT Loan Documents (as applicable) prior to the Petition Date; or

- 36 -

E.      seeking damages or equitable relief against any of the Prepetition CIT Secured Parties (as applicable) arising from or related to prepetition business and lending relationships of the Prepetition CIT Secured Parties or any of their predecessors in interest under the Prepetition CIT Loan Documents with the Debtors, including without limitation equitable subordination, recharacterization, lender liability and deepening insolvency claims and causes of action; or.

F. challenging the Roll-Up in Paragraph L of this Order and any other matter to be waived or released pursuant to this Interim Order (including, without limitation, pursuant to Paragraphs 26 and 27).

Provided, however, that any Chapter 7 trustee subsequently appointed in these cases shall have until the later of (x) the expiration of the Challenge Period; or (y) 20 days after such trustee is appointed; in order to commence a Challenge Action.

29.      All parties in interest, including without limitation the Statutory Committee (if any), that fail to act in accordance with the time periods set forth in the preceding paragraph shall be, and hereby are, barred forever from commencing a Challenge Action and shall be bound by the waivers, Stipulations, and terms set forth in this InterimFinal Order (including Paragraphs 26, 27, and 28 of this InterimFinal Order). Any Challenge Action filed shall prohibit application of this paragraph only to the extent of the specific matters set forth in such Challenge Action on the date of filing unless otherwise ordered. For the avoidance of doubt, if any Challenge Action is timely filed and a final, non-appealable order is entered in favor of the plaintiff sustaining any such Challenge Action, the Debtors' Stipulations in this InterimFinal Order shall nonetheless remain binding and preclusive on any Statutory Committee and any other person or entity, except to the extent that such stipulations and admissions were raised (subject to Bankruptcy Rule 7015)

in an adversary proceeding or contested matter prior to the expiration of the Challenge Period and sustained by the final, non-appealable order. Nothing in this ~~Interim~~Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including ~~any~~the Statutory Committee ~~(if appointed)~~ or any non-statutory committees appointed or formed in these Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, and all rights to object to such standing are expressly reserved.

30.    The respective legal and equitable claims, counterclaims, defenses and/or rights of offset and setoff of the Prepetition CIT Secured Parties in response to any such Challenge Action are reserved, and the ability of a party to commence a Challenge Action shall in no event revive, renew or reinstate any applicable statute of limitations which may have expired prior to the date of commencement of such Challenge Action.  Despite the commencement of a Challenge Action, the prepetition claims and Liens of the Prepetition CIT Secured Parties shall be deemed valid, binding, properly perfected, enforceable, non-avoidable, not subject to disallowance under section 502(d) of the Bankruptcy Code and not subject to subordination under section 510 of the Bankruptcy Code until such time as, and only to the extent that, a final and non-appealable judgment and order is entered sustaining such Challenge Action in favor of the plaintiffs therein.  Notwithstanding anything to the contrary contained in this ~~Interim~~Final Order, the Court expressly reserves the right to order other appropriate relief against the Prepetition CIT Secured Parties in the event there is a timely and successful Challenge Action by any party in interest to the validity, enforceability, extent, perfection or priority of the Prepetition CIT Liens or the amount, validity, or enforceability of the Prepetition CIT Obligations.  For the avoidance of doubt, notwithstanding anything to the contrary in this ~~Interim~~Final Order or the DIP ~~Term Sheet~~Credit Facility Documents, the Prepetition CIT Adequate Protection Liens and

Prepetition CIT Adequate Protection Claims shall be valid, enforceable, properly perfected, and unavoidable until such time as, and only to the extent that, a final and non-appealable judgment and order is entered sustaining a Challenge Action in favor of the plaintiffs therein.

31.     In making decisions to advance any extensions of credit to the Debtors pursuant to the DIP Credit Facility or in taking any other actions reasonably related to this ~~Interim~~Final Order or the DIP Credit Facility Documents (including, without limitation, the exercise of its approval rights with respect to any budget), the DIP Agent, Prepetition CIT Agent, DIP Secured Parties, and Prepetition CIT Secured Parties shall have no liability to any third party and shall not be deemed to be in control of the operations of the Debtors or to be acting as a "control person", "responsible person" or other "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response Compensation and Liability Act, as amended, or any similar Federal or state statute), and the DIP Agent, Prepetition CIT Agent, DIP Secured Parties, and Prepetition CIT Secured Parties' relationship with the Debtors shall not constitute or be deemed to constitute a joint venture or partnership of any kind between the DIP Secured Parties or Prepetition CIT Secured Parties, respectively, and the Debtors.

32.     This ~~Interim~~Final Order shall be binding upon and inure to the benefit of the DIP Agent, the DIP Secured Parties, the Prepetition CIT Secured Parties, the Debtors, and their respective successors and assigns, including, without limitation, any trustee, responsible officer, examiner, estate administrator or representative, or similar person appointed in a case for the Debtors under any chapter of the Bankruptcy Code.  Except as set forth herein with respect to a Challenge Action and the Carve-Out, no rights are created under this ~~Interim~~Final Order for the

benefit of any creditor of the Debtors, any other party in interest in the Debtors' bankruptcy cases, or any other persons or entities, or any direct, indirect or incidental beneficiaries thereof.

33.    To the extent that any of the provisions of this ~~Interim~~Final Order shall conflict with any provisions of the DIP Credit Agreement, ~~the~~any other DIP ~~Term Sheet~~Credit Facility Document, or with any order of the Court authorizing the Debtors to continue the use of prepetition bank accounts, cash management systems, treasury management systems, or business forms, or any similar orders, this ~~Interim~~Final Order is deemed to control and supersede the conflicting provisions therein.  ~~The DIP Term Sheet provides that the Debtors are required to enter into the DIP Credit Agreement prior to entry of the Final Order.  The Debtors shall file a copy of the proposed DIP Credit Agreement in connection with their entry into such agreement, which shall be filed at least three (3) days prior to the Final Hearing.  Such agreement shall remain binding upon the Debtors upon their execution of the agreement, subject to the ability of the Court to examine and rule upon the propriety of any such provisions at the hearing to consider entry of the Final Order.~~

34.    The terms and conditions of this ~~Interim~~Final Order shall be effective and immediately enforceable upon its entry by the Clerk of the Court notwithstanding any potential application of Fed. R. Bankr. P. 6004(h) or otherwise.  Furthermore, to the extent applicable, the notice requirements and/or stays imposed by Fed R. Bankr. P. 4001(a)(3), 6003(b), and 6004(a) are hereby waived for good and sufficient cause.

35.    ~~Nothing in this Interim Order shall preclude the Court from entering a Final Order containing provisions inconsistent with or contrary to the provisions of this Interim Order, provided, however, that the DIP Secured Parties and Prepetition CIT Secured Parties shall be entitled to the benefits and protections of this Interim Order, including (a) the adequate~~

~~protection afforded to the Prepetition CIT Secured Parties set forth in this Interim Order, and (b)~~ ~~the protections afforded pursuant to section 364(e), with respect to all loans, advances, and other~~ ~~financial, accommodations made by them pursuant to this Interim Order.~~ The provisions of this ~~Interim~~Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Chapter 11 Cases or Successor Cases.  The terms and provisions of this ~~Interim~~Final Order, including the claims, liens, security interests, and other protections granted to the DIP Secured Parties and Prepetition CIT Secured Parties shall continue in the Chapter 11 Cases, in any Successor Cases, or following dismissal of the Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by this ~~Interim~~Final Order until all of the DIP Credit Facility Obligations, Prepetition CIT Obligations and CIT Adequate Protection Claims ~~pursuant to the Prepetition CIT Loan Documents and this Interim Order~~ have been indefeasibly paid in full in cash.  Except as provided herein, no Proceeds, Cash Collateral or Carve-Out may be used by any party in interest seeking to modify any of the rights granted to DIP Secured Parties or Prepetition CIT Secured Parties hereunder or in the DIP Credit Facility Documents.

36.    The Debtors and the DIP Agent may implement non-material modifications of the DIP Credit Facility Documents without the need for notice or further approval of the Court, provided, however, that copies of such amendments will be provided to the U.S. Trustee and the Statutory Committee ~~(if any)~~.  The Debtors and the DIP Agent may implement material modifications of the DIP Credit Facility Documents on at least seven (7) calendar days prior

notice to the Statutory Committee (if any) and the U.S. Trustee, and any proposed material modification that is objected to within such period shall only be implemented to the extent approved by the Court.

37.    The Debtors are authorized to do and perform all acts, to make, execute and deliver all instruments and documents, and to pay all fees and expenses that may be required or necessary for the Debtors' performance under this InterimFinal Order or the DIP Credit Facility Documents, including, without limitation, (a) the execution of the DIP Credit Facility Documents, (b) the payment of the fees and other expenses described herein or in the DIP Credit Facility Documents as such become due, including, without limitation, agent fees, commitment fees, letter of credit fees, and facility fees. The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this InterimFinal Order, including, without limitation, to: (a) permit the Debtors to grant the CIT Adequate Protection Liens and CIT Adequate Protection Claims; (b) permit the Debtors to perform such acts as the Prepetition CIT Agent may request in their reasonable discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the Prepetition CIT Secured Parties under the terms of this InterimFinal Order; and (d) authorize the Debtors to pay, and the Prepetition CIT Secured Parties to retain and apply, any payments made in accordance with the terms of this InterimFinal Order.

38.    The Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize the Debtors to obtain credit on terms and conditions to which the Debtors and DIP Agent have agreed. Thus, each of the terms and conditions constitutes a part of the authorization under sections 364 of the

Bankruptcy Code, and is, therefore, subject to the protections contained in section 364(e) of the Bankruptcy Code.

39.     Notwithstanding any provision in this ~~Interim~~Final Order to the contrary, any delay or failure by the Prepetition CIT Secured Parties or DIP Secured Parties to exercise their rights and remedies under ~~this~~the Interim Order, this Final Order, the Prepetition CIT Loan Documents, DIP Credit Facility Documents, or applicable law, as applicable, shall not constitute a waiver of any of the Prepetition CIT Secured Parties or DIP Secured Parties' rights hereunder, thereunder or otherwise, and no such waiver shall be deemed to have occurred unless such waiver is made pursuant to a written instrument executed in accordance with the term of the applicable document.

~~40.  A final hearing with respect to the Motion is scheduled for November 21, 2023 at 9:00 a.m. (ET) (the "Final Hearing") before the Honorable Mary F. Walrath, United States Bankruptcy Judge.  The Debtors shall promptly mail copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing and to any other party that has filed a Rule 2002 request for service.  Any party in interest objecting to the relief sought at the Final Hearing shall file written objections, and serve them on (i) the Debtors' proposed counsel, Willkie Farr & Gallagher LLP, attn:  Brian Lennon, Debra Sinclair, and Weston Eguchi, 787 Seventh Avenue, New York, NY 10019 and Young Conaway Stargatt & Taylor LLP, attn: Edmon L. Morton and Matthew B. Lunn, 1000 North King Street, Wilmington, DE 19801; (ii) the DIP Secured Parties' counsel, Holland & Knight LLP, attn:  Robert Jones and Brian Smith, 1722 Routh Street, Suite 1500, Dallas, TX 75201 and Erin Fay, Wilson Sonsini, 222 Delaware Avenue, Suite 800, Wilmington, DE 19801; and (iii) the U.S. Trustee, attn: Richard Schepacarter, Office of the United States Trustee, 844~~

~~King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, on or before 4:00 p .m. (ET) on~~

~~November 14, 2023.~~

40. ~~41.~~ This Court hereby retains jurisdiction to hear and determine all matters arising

from or related to the implementation, interpretation and/or enforcement of this ~~Interim~~Final

Order.

**Exhibit A**

~~Interim~~ **Approved Budget**

(See Attached)

**Exhibit B**

**363 Sale Milestones**

The Debtors shall be required to comply with the following (the "**Milestones**") (provided that if any deadline set forth below shall be due on a day that is not a Business Day, such deadline shall be extended to the next succeeding Business Day).  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the applicable DIP Financing Documents.

      a.      On the Petition Date, the Debtor shall have entered into an asset purchase agreement with the Stalking Horse Bidder, in form and substance satisfactory to the DIP Agent, providing for the Stalking Horse Bidder's purchase of substantially all of the Debtors' assets (subject to the Auction and process contemplated in the Sale Procedure Order)

      b.      On or before one business day after the Petition Date, or such later date to which the DIP Agent consents in writing in its sole discretion, the Debtors shall file a motion, in form and substance acceptable to the DIP Agent, requesting entry of the Sale Procedure Order (as defined below) authorizing procedures for the sale of substantially all of the Debtors' assets to the Stalking Horse Bidder (or, if an Auction is held, to the Winning Bidder).

      c.      On or before 30 days after Petition Date, or such later date to which the DIP Agent consents in writing in its sole discretion, the Bankruptcy Court shall have entered the Sale Procedure Order; and

      d.      On or before the date that is 72 days after the Petition Date, the Debtors shall have conducted an auction for the sale of substantially all of their assets (if necessary) and selected the successful bidder for the substantially all of their assets;

      e.      On or before the date that is 75 days after the Petition Date, or such later date to which the DIP Agent consents in writing in its sole discretion, the Bankruptcy Court shall have entered the Sale Order approving the 363 Sale; and

      f.      On or before the date that is 77 days after the Petition Date, provided that the Bankruptcy Court has waived the stay imposed by Bankruptcy Rule 6004(h) or such later date to which the DIP Agent consents in writing in its sole discretion, the Sale shall be closed.

Notwithstanding anything to the contrary herein, the Bankruptcy Court may set dates with respect to the Milestones beyond the outer dates specified above to accommodate its own schedule and to the extent the Bankruptcy Court makes such an extension, the Milestones hereunder shall be automatically extended by the same period as the Bankruptcy Court's extension.

**Exhibit C**

**Proceeds Application Waterfall**

(see attached)

1.  First, all Proceeds shall be applied to obligations owed under the Pre-Petition Credit Agreement and other Pre-Petition Credit Documents

2.  Second, all remaining Proceeds shall be applied to DIP Facility obligations arising under the DIP Credit Facility Documents.

**Exhibit D**
**DIP Term Sheet**
(see attached)