**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| UNCONDITIONAL LOVE INC., *et al.*,[1] | Case No. 23-11759 (MFW) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF JOHN MADDEN IN**
**SUPPORT OF ENTRY OF ORDER CONFIRMING**
**AMENDED COMBINED DISCLOSURE STATEMENT AND CHAPTER**
**11 PLAN OF UNCONDITIONAL LOVE INC. AND ITS AFFILIATED DEBTORS**

1.     I, John Madden, pursuant to 28 U.S.C. § 1746, and under penalty of perjury, declare the following to the best of my knowledge, information, and belief:

2.     I am the founder and Managing Partner of Emerald Capital Advisors, Corp. ("Emerald"), financial advisor to the debtors and debtors in possession (the "Debtors") in the above-captioned cases (these "Chapter 11 Cases").  I submit this declaration in support of confirmation of the *Amended Combined Disclosure Statement and Chapter 11 Plan of Unconditional Love Inc. and its Affiliated Debtors* (as may be amended, supplemented, or modified from time to time, the "Combined Disclosure Statement and Plan" or the "Plan").[2]  I am familiar with the Debtors' business and financial affairs and assets and liabilities.

3.     Except as otherwise noted, all matters set forth herein are based on (a) my personal knowledge and belief, (b) my review of the relevant documents, including the Plan,

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification number, are Unconditional Love Inc. d/b/a Hello Bello (5895), Unconditional Love Canada, Inc., and The Best Training Pants in the World Inc. (9369).  The Debtors' headquarters is located at 17383 Sunset Blvd, Suite B200, Pacific Palisades, CA 90272.

[2]     Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Combined Disclosure Statement and Plan.  The Debtors filed the *Notice of Blackline of Combined Disclosure Statement and Chapter 11 Plan of Unconditional Love Inc. and Its Affiliated Debtors* [Docket No. 451], which reflects certain revisions to the Combined Disclosure Statement and Plan (the "Amended Combined Disclosure Statement and Plan").

(c) information supplied to me by other representatives of the Debtors, including the Debtors' professional advisors, (d) my view, based on my personal and professional experience and knowledge of the Debtors' business affairs and financial condition, or (e) for matters involving the requirements for confirmation of the Plan under the Bankruptcy Code, my reliance on the advice of the Debtors' bankruptcy counsel.  I am authorized to submit this Declaration on behalf of the Debtors in support of confirmation of the Plan.  If called to testify, I could and would testify to the facts set forth herein.

4.      I am a Managing Partner of Emerald, a financial advisory firm that specializes in distressed transactions, advising on restructurings and special situations.  Emerald was founded in 2012 and employs approximately 15 professionals in their two U.S. based offices.  The professionals of Emerald have advised distressed companies or their constituents across all levels of the capital structure on a myriad of transactions ranging from large, complex deals to small, unique situations, exceeding $115 billion in aggregate debt restructured.

5.      In August 2023, the Debtors retained Emerald Capital as their financial advisor with respect to their restructuring efforts and the preparation of their chapter 11 cases.  Since being retained, Emerald Capital has worked closely with the Debtors' management and other professionals retained by the Debtors in these Chapter 11 Cases, and has become well acquainted with the Debtors' capital structure, liquidity needs, and business operations.

6.      I reviewed and am generally familiar with the terms and provisions of the Plan. With the Debtors' bankruptcy counsel, I was personally involved in the development of and discussions regarding the terms of the Plan, including the 9019 Settlement Agreement.  The Combined Disclosure Statement and Plan is the result of extensive, arm's-length and good faith negotiations among the Debtors and other interested parties, including the Committee, VMG,

36th Street Capital, and SCG.  Among other things, the Plan incorporates and effectuates the 9019 Settlement Agreement, and establishes the Litigation Trust to, among other things, pursue the Retained Causes of Action, make Distributions in accordance with Article X of the Plan, reconcile claims, and wind down the Debtors' affairs and the Estates.

7.       On May 7, 2024, following an interim hearing on the adequacy of the information contained in the Combined Disclosure Statement and Plan, the Court entered an order [Docket No. 407] (the "Solicitation Procedures Order") approving the Combined Disclosure Statement and Plan for purposes of solicitation.  To the best of my knowledge, information, and belief, the Debtors, with the assistance of the Claims Agent, complied with the solicitation and noticing procedures approved through the Solicitation Procedures Order, as well as the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law, as evidenced by the affidavit of service filed by the Claims Agent on June 11, 2024 [Docket No. 446].

8.       On May 29, 2024, the Debtors filed the Plan Supplement, which included the Litigation Trust Agreement [Docket No. 433].  The Litigation Trust Agreement identified Genesis Credit Partners as the Litigation Trustee and the members of the Litigation Trust Oversight Committee.

**SATISFACTION OF PLAN CONFIRMATION REQUIREMENTS**

9.       I have been advised by the Debtors' legal advisors and believe, based on my review of the Plan and my discussions with those advisors, that the Plan satisfies all applicable provisions of the Bankruptcy Code and should be confirmed.

A. *The Combined Disclosure Statement and Plan Complies with the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(1) and 2 and Sections 1122 and 1123).*

10.     I have been advised by counsel and believe that the Debtors, as proponents of the Plan, have complied with the applicable provisions of the Bankruptcy Code, as required by section 1129(a)(1) and 1129(a)(2) of the Bankruptcy Code, respectively.

11.     **Classes of Claims.**  Article II of the Plan designates six (6) Classes of Claims against and Interests in the Debtors.  I believe that each Class under the Plan only contains Claims or Interests that are substantially similar to other Claims or Interests within the Class, and that the Classes under the Plan were not proposed for purposes of affecting the votes on the Plan or for any other inappropriate purposes.  Moreover, similar Claims and Interests have not been placed into different Classes in order to affect the outcome of the vote on the Combined Disclosure Statement Plan.  Further, the Plan provides for the same treatment of each Claim or Interest within a Class.

12.     **Release and Exculpation Provisions.**  The Plan includes certain release, exculpation, and limitation of liability provisions.  I believe that the Debtor Released Parties, the Third-Party Released Parties, and the Exculpated Parties have provided (a) many valuable contributions to the progress of these Chapter 11 Cases, including assisting in stewarding the Debtors through the bankruptcy process, negotiating and implementing settlements with various parties, including the 9019 Settlement Agreement, pursuing and closing the Sale, pursuing Confirmation of the Plan, and otherwise maximizing and preserving the Debtors' Assets for the benefit of all stakeholders, and/or (b) valuable concessions that paved the way for confirmation of the Plan and without which confirmation could not be achieved.  In light of these different contributions and concessions, I believe the releases and exculpations included as part of the overall compromise and settlement embodied by the Plan are fair, equitable, and reasonable.

13. Article XIV of the Plan provides for certain releases of Claims and Causes of Action held by the Debtors and by third parties. I believe that the release provisions in the Plan are necessary and integral components of the Plan. In addition to being supported by the Committee and receiving the overwhelming support of creditors voting on the Plan, the releases in the Plan are in exchange for, and are supported by, fair, sufficient, and adequate consideration provided by the parties receiving such releases, and are a good faith settlement and compromise of the Claims and Causes of Action released pursuant to the Plan. Under the consensual release provided for in Section 14.1(c) of the Plan (i.e., the Third-Party Releases discussed more fully below), the Releasing Parties do not waive or release Claims or Causes of Action arising from any acts or omissions that are determined by a Final Order to have constituted gross negligence, actual fraud, or willful misconduct.

14. Section 14.1(b) of the Plan (the "Debtor Releases") provides for certain releases of Claims and Causes of Action held by the Debtors against the Debtor Released Parties. It is my belief that the Debtor Releases were instrumental in formulating and obtaining support for the Plan, which is the result of, among other things, arm's-length and good faith negotiations among the Debtors, the Committee, VMG, 36th Street Capital, and SCG. Based on my familiarity with the Debtors' business and financial and legal affairs, in addition to my participation in the negotiations regarding the Plan, I am not aware of any valid Causes of Action that might be asserted against any of the Debtor Released Parties by the Debtors.

15. Many of the Debtor Released Parties, including of the current officers, directors, and estate professionals, have served the Debtors during these Chapter 11 Cases, and I believe that they have worked tirelessly to maximize value for the benefit of all stakeholders. These efforts included, among other things, overseeing a months-long marketing process (both prior to

and during the bankruptcy proceeding).  The Debtors' officers made themselves available to me and the Emerald team whenever needed (often with little or no notice and at inconvenient times), and supplied us with information when necessary, to make sure these Chapter 11 Cases ran as smoothly as possible.  The Debtors' professionals and management team also made significant efforts in connection with the Sale and Combined Disclosure Statement and Plan processes to maximize value for the Debtors' Estates.  In particular, the Debtors' directors, officers, and employees were critical to maintaining and preserving the value of substantially all of the assets involved in the Sale.  Such efforts included negotiating the business terms of the asset purchase agreement over a months-long marketing process, reviewing, and responding to extensive due diligence requests from numerous bidders, and overseeing the closing of the Sale and ensuring a smooth transition process, while ensuring the uninterrupted operation of the Debtors' business during these Chapter 11 Cases and preserving the value of the Debtors' estates in a challenging operating environment

16.     Based on my participation in the negotiations regarding the Plan, and based on my consideration of the information provided to me by the Debtors' legal and other advisors, I believe that the Debtor Releases are essential components of the Plan, including the 9019 Settlement Agreement, and constitute a sound exercise of the Debtors' business judgment. During the course of negotiations regarding the Plan, it was clear that the Debtor Releases would be necessary conditions to implementing the Plan.  I believe that without the Debtor Releases, the Debtors would neither have been able to secure the significant benefits provided by the Plan nor build consensus around the Plan.  I believe that the Debtor Releases were a material inducement to the concessions and contributions from the Debtor Released Parties under the Plan.

17.     Section 14.1(c) of the Plan provides for releases by the Releasing Parties (the "<u>Third-Party Releases</u>") of any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any derivative claims or claims asserted or assertable on behalf of the Debtors and the Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing or hereafter arising, in law, equity or otherwise against the Released Parties.  Such releases facilitated constructive participation in both the development of the Combined Disclosure Statement and Plan and the progression of these Chapter 11 Cases generally.  The parties being released through the Third Party Releases by Holders of Claims and Interests provided substantial contributions and support to these Chapter 11 Cases and the Plan.  In addition, the Third Party Releases by Holders of Claims and Interests do not provide a blanket immunity and contain a specific carve out for acts or omissions that constitute fraud, gross negligence, or willful misconduct.

18.     I believe that the Solicitation Package and other noticing materials filed and served in connection with the Plan provided recipients with timely, sufficient, appropriate, and adequate notice of the Third-Party Releases, including that all holders of Claims that voted to accept or reject the Plan would grant the Third-Party Release, unless they elected on their Ballot to opt out of the Third-Party Release.  Accordingly, I believe that each Releasing Party consented to the Third-Party Releases and, therefore, the Third-Party Releases should be approved as consensual third-party releases.

19.     Based on my participation in the negotiations regarding the Plan and discussions with the Debtors' legal advisors, I believe that the Third-Party Releases are an essential component of the Plan.  I further believe that without the Third-Party Releases, the Debtors and

their stakeholders would neither have been able to secure the substantial benefits provided by the Plan, including the 9019 Settlement Agreement and the other benefits noted above, nor build consensus around the Plan.  It is my understanding that the Third-Party Releases were a critical component of the Plan and were material inducement concessions and contributions received by the Debtors and their Estates in the Plan.  Accordingly, the Third-Party Releases are fair and necessary to the implementation of the Plan and should be approved.

20.     Section 14.1(a) of the Plan provides for exculpation of the Exculpated Parties, which parties have fiduciary obligations to the Estates, except in cases involving willful misconduct or gross negligence by such parties as determined by a Final Order.  Sections 14.1(a) and 14.1(d) of the Plan, together, provide that all Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Interest, from commencing or continuing in any manner any actions or other proceeding of any kind in respect of any Claim, Interest, or Cause of Action released or exculpated under Article XIV of the Plan.

21.     Based upon my review of the Plan, my personal knowledge of the circumstances leading up to its development, and my discussions with the Debtors' legal advisors, I believe that the exculpation and injunction provisions of Article XIV of the Plan are proper because, among other things, they are consensual, the product of extensive arm's-length negotiations, have been critical to obtaining the support of the various constituencies for the Plan, and are an essential part of the Plan.  The Debtors are unaware of any claims against any Exculpated Party that are being released or otherwise barred through Section 14.1(a) of the Plan.  Nonetheless, the exculpation and injunction provisions of the Plan are important in that they remove the threat of litigation from the Estates and the Exculpated Parties.

22.     I also believe the Exculpated Parties played critical roles in, and made significant contributions to, these Chapter 11 Cases and that such contributions represent good and valuable consideration to the Debtors, their Estates, and creditors.   Additionally, I believe that the injunction provisions of Section 14.1(d) are critical to the releases provided for in Article XIV of the Plan.   It is also my understanding and belief that exculpation and injunction provisions provided for in Article XIV of the Plan are fair and equitable, confer material benefits on, and are in the best interests of, the Debtors, their Estates, and creditors, and are necessary to implementation of the Plan.

23.     ***Substantive Consolidation***.   Section 9.2 of the Plan provides for the deemed substantive consolidation of the Debtors' Estates for purposes of confirming and consummating the Plan, including, but not limited to, Distributions.   Under the circumstances of these Chapter 11 Cases, I believe that it is appropriate and in the best interests of the Debtors' Estates and that, absent such consolidation, the process of winding down the Estates, liquidating the remaining Assets, including pursuit of the Retained Causes of Action, and administering Distributions could be more time consuming and costly.   I understand that no party has objected to the proposed deemed substantive consolidation, which I believe is further proof that it is fair and equitable under the circumstances of these Chapter 11 Cases.

B.   *The Combined Disclosure Statement and Plan Has Been Proposed in Good Faith (Section 1129(a)(3)).*

24.     ***The Combined Disclosure Statement and Plan Has Been Proposed in Good Faith and Not by Any Means Forbidden by Law.***   The Combined Disclosure Statement and Plan has been proposed by the Debtors in good faith.   Throughout these cases, the Debtors have focused on maximizing the value of the Debtors Estates and the recoveries of all creditors under the circumstances of these Chapter 11 Cases.   The Combined Disclosure Statement and Plan,

Plan Supplement, and all documents necessary to effect the Combined Disclosure Statement and Plan were developed after months of analysis and negotiations between the Debtors and other key constituents and were proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates and effectuating a successful and speedy wind-down of the Debtors' operations after the marketing and sale of substantially all of the Debtors' assets. Moreover, the Plan is the product of extensive, arm's-length negotiations among the Debtors' key stakeholders and is fully supported by the Committee and the Prepetition Secured Parties.

25.     The Debtors filed the Plan with the expectation that it will allow for a timely and efficient liquidation and distribution of the Litigation Trust Assets to the Debtors' creditors in accordance with the Plan. Further, I believe that the Plan maximizes the value of the Estates for their creditors.

C. *The Combined Disclosure Statement and Plan Provides for the Payment of Fees and Expenses in Compliance with Section 1129(a)(4) of the Bankruptcy Code.*

26.     ***The Plan Provides that Payments Made by the Debtors for Services or Costs and Expenses are Subject to Approval***. I believe that payments made or to be made by the Debtors for services or for costs or expenses in connection with these Chapter 11 Cases prior to the Effective Date, including all Professional Fee Claims, have been approved by, or are subject to approval of, the Court. I also believe that all of the payments to be made under the Plan are reasonable and appropriate in these Chapter 11 Cases, and I believe that the payments for the costs and expenses of the Litigation Trust set forth in the Plan will secure and compensate parties for providing services necessary to the implementation of the Plan and the wind-down of the Debtors' Estates.

D. *The Combined Disclosure Statement and Plan Identifies Individuals Proposed to Serve as Successor to the Debtors (Section 1129(a)(5)).*

27. **Resignation of Debtors' Directors and Officers, and Establishment of the Litigation Trust.** In accordance with section 1123(a)(5) of the Bankruptcy Code, Article IX of the Plan provides adequate means for the Plan's implementation, including the deemed resignation or termination of the Debtors' current directors and officers, and the establishment of the Litigation Trust. The Plan Supplement included the identity and compensation of the Litigation Trustee and Oversight Committee. I believe that the establishment of the Litigation Trust is in the best interests of creditors and consistent with public policy.

28. The responsibilities of the Litigation Trust will include: (i) being vested with, and pursuing or liquidating, the Litigation Trust Assets; (ii) pursuing, settling, compromising, or abandoning any existing or potential Causes of Action and Avoidance Actions; (iii) reconciling and objecting to Claims, as provided for in the Plan; (iv) making Distributions to the Beneficiaries; (v) winding down the affairs of the Debtors; and (vi) performing all actions necessary to effectuate the purpose of the Litigation Trust. The Litigation Trust shall be vested with the right to liquidate the Litigation Trust Assets and make Distributions to Holders of Allowed Claims in accordance with Section 9.8 of the Plan.

E. *The Combined Disclosure Statement and Plan Does Not Contain Rate Changes (Section 1129(a)(6)).*

29. **The Plan Does Not Contain Any Rate Changes Subject to the Jurisdiction of Any Governmental Regulatory Commission.** The Debtors' business does not involve the establishment of rates subject to approval of any governmental regulatory commission, and, as a result, the Plan does not propose the change of any such rates.

F. *The Combined Disclosure Statement and Plan is in the "Best Interests" of Creditors and Interest Holders (Section 1129(a)(7)).*

30.     **The Plan is in the Best Interests of Creditors**.  In connection with the Combined Disclosure Statement and Plan, Emerald, with the assistance of the Debtors' management team and advisors, prepared a liquidation analysis that was filed as Exhibit A to the Combined Disclosure Statement and Plan (the "Liquidation Analysis").  The Liquidation Analysis was completed with the direct involvement of individuals under my direct supervision.  I am familiar with the methods used and the conclusions reached in preparing the Liquidation Analysis.  It is my understanding that the Liquidation Analysis represents the Debtors' best estimate of the cash proceeds, net of liquidation-related costs that would be available for distribution to the Holders of Claims and Interests if the Debtors were to be liquidated under chapter 7 of the Bankruptcy Code

31.     As described in Section 4.8 of the Plan, entitled the "Best Interests Test and Liquidation Analysis," because the Plan is a liquidating plan, the "best interests" test is substantially similar to the estimates of the results of the chapter 11 liquidation contemplated by the Plan.  I have been advised that, with respect to each Class of Claims and Interests that is Impaired under the Plan, each Holder of a Claim or Interest has either accepted the Plan or, to the extent that such Holder has not accepted the Plan, such Holder will receive under the Plan at least as much as would be received in a chapter 7 liquidation.  This is based on my understanding and belief that a liquidation under chapter 7 of the Bankruptcy Code would increase costs to the Debtors' estates and likely cause delay and uncertainty in the prosecution of these Chapter 11 Cases.  The Debtors' consummation of a chapter 11 plan is imminent.  On the other hand, a chapter 7 trustee would need to retain professionals and familiarize himself or herself with the Debtors' affairs and the status of these Chapter 11 Cases, which would result in substantial costs

to the Debtors' estates.  Moreover, the addition of a chapter 7 trustee at this stage in these Chapter 11 Cases would likely provide little additional benefit, as substantially all of the Debtors' assets have already been liquidated, and the Plan provides for the appointment of the Litigation Trustee to wind down the Estates in a cost-effective manner and to, among other things, oversee Distributions, evaluate and prosecute any Retained Cause of Action, reconcile claims, and liquidate any remaining assets of value.

32.    Accordingly, I believe, and as demonstrated by the Liquidation Analysis, that Holders of Allowed Claims would receive less than anticipated under the Plan if these Chapter 11 Cases were converted to chapter 7 cases, and, therefore, the classification and treatment of Claims and Interests in the Plan comport with section 1129(a)(7) of the Bankruptcy Code.  In light of the foregoing, as it has been explained to me, I believe that the Plan satisfies the "best interests test" because no Holder of a Claim or Interest in Classes 3 through 6 (the Impaired Classes under the Plan) would receive or retain property on account of its Claim or Interest under a liquidation scenario of a value that is more than such party will receive under the Plan.

G.    *The Combined Disclosure Statement and Plan is Confirmable Notwithstanding Section 1129(a)(8).*

33.    **The Plan Has Been Accepted by an Impaired Voting Class and Satisfies the "Cramdown" Requirements under Bankruptcy Code Section 1129(b) for Non-Accepting Classes.**  I understand that Classes 1 and 2 are deemed to accept in accordance with the Plan.  I understand that Class 3 voted to accept the Plan at all Debtors.  However, I understand that Classes 4, 5, and 6 (the "Deemed Rejecting Classes") are deemed to reject the Plan.  As such, I am advised that the Plan does not meet the requirements of section 1129(a)(8) of the Bankruptcy Code, but that the Combined Disclosure Statement and Plan can still be confirmed if the Combined Disclosure Statement and Plan satisfies the "cram down" provisions of section

1129(b) of the Bankruptcy Code.   As discussed below, I believe the Combined Disclosure Statement and Plan satisfies Section 1129(b).

H. *The Combined Disclosure Statement and Plan Satisfies the Cramdown Requirements (Section 1129(b)).*

34.     The Impaired Non-Voting Classes (Classes 4, 5, and 6) are deemed to reject the Combined Disclosure Statement and Plan.   I understand that, because these classes are deemed to reject, the Combined Disclosure Statement and Plan must not unfairly discriminate against the Holders of Claims and Interests in those Classes and the Combined Disclosure Statement and Plan must be fair and equitable with respect to the Holders in such classes.

35.     With respect to the Deemed Rejecting Classes, I do not believe there is any unfair discrimination under the Combined Disclosure Statement and Plan because there are no other Classes containing creditors with Claims or Interests similar to those in such Classes and each Class contains Claims and Interests that are similarly situated.

36.     I also understand that a plan is fair and equitable with respect to a class of impaired equity interests if the Combined Disclosure Statement and Plan satisfies the "absolute priority" rule (i.e., no Holder of a claim or equity interest that is junior to the class of dissenting Holders will receive or retain property under the Combined Disclosure Statement and Plan on account of such junior interest).   The Combined Disclosure Statement and Plan satisfies the absolute priority rule with respect to the rejecting Classes.   *First*, no Class of Claims or Interests junior to such Classes will receive or retain any property under the Combined Disclosure Statement and Plan.   *Second*, no Class of Claims or Interests will receive or retain property under the Combined Disclosure Statement and Plan that has a value greater than 100% nor has any party asserted as such.   Accordingly, and on the basis of my discussions with the Debtors' legal

advisors, I believe that the Plan satisfies the "cram down" requirements of section 1129(b) of the Bankruptcy Code.

37.    ***The Plan Provides for Payment in Full of All Allowed Priority Claims.*** I have been advised and believe that the Plan's treatment of Administrative Expense Claims, Other Secured Claims, Professional Fee Claims, Priority Tax Claims, and Priority Non-Tax Claims satisfies section 1129(a)(9) of the Bankruptcy Code.

I.    *Classes of Impaired Claim Holders Have Voted to Accept the Combined Disclosure Statement and Plan (Section 1129(a)(10)).*

38.    ***At Least One Impaired, Non-Insider Class Has Accepted the Plan.*** As demonstrated by the Voting Declaration, Class 3, which is Impaired under the Plan, voted to accept the Plan without counting any acceptance of an insider.

J.    *The Combined Disclosure Statement and Plan Satisfies the Feasibility Requirement of the Bankruptcy Code (Section 1129(a)(11)).*

39.    ***The Plan is Feasible.*** The Debtors will be able to meet their obligations under the Combined Disclosure Statement and Plan and, thus, I believe that the Combined Disclosure Statement and Plan is feasible.  The Plan is a plan of liquidation designed to maximize the value of the Debtors' Assets, including the Retained Causes of Action, and to distribute the proceeds in an orderly and efficient manner to the holders of Allowed Claims in accordance with the Plan. Based on a review of actual claims asserted against the Debtors, the Debtors expect to have sufficient Cash, and any proceeds of the Retained Causes of Action to ensure that the holders of Allowed Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, Other Secured Claims, and Priority Non-Tax Claims will be Paid in Full.  In addition, Holders of Allowed General Unsecured Claims will receive their *pro rata* share of the liquidated value of the Litigation Trust Assets.  Any remaining Cash will be distributed in accordance with the Plan. Because the Debtors are liquidating their remaining assets and the Plan provides for their

dissolution, I do not believe that the Debtors will require further financial reorganization following the Effective Date.

40.     I have reviewed the projected Claims to be paid under the Combined Disclosure Statement and Plan and the costs of administering the Combined Disclosure Statement and Plan and the Debtors' wind-down.  Based on my knowledge of the Debtors' business, books and records, Schedules of Assets and Liabilities, and the claims reconciliation process, I believe the Debtors will have sufficient available cash from the Wind-Down Budget and the liquidation of the Litigation Trust Assets to make the required cash distributions and satisfy their other financial obligations in accordance with the terms of the Combined Disclosure Statement and Plan.  Moreover, the Debtors have already taken significant steps to wind down in an orderly fashion during these Chapter 11 Cases.  Accordingly, the Plan satisfies the requirements of feasibility under section 1129(a)(11) of the Bankruptcy Code.

K.  *The Combined Disclosure Statement and Plan Provides for the Payments of Statutory Fees Under 28 U.S.C. § 1930 (Section 1129(a)(12)).*

41.     ***All Statutory Fees Have or Will be Paid.***  The Plan provides that all fees required under 28 U.S.C. § 1930 will be paid on or before the Effective Date, or when such fees come due in the ordinary course, and I believe the Debtors or the post-Effective Date Debtors, as applicable, have adequate means to make such payments.

L.  *Section 1129(a)(13) is Not Applicable to the Combined Disclosure Statement and Plan.*

42.     ***The Plan Appropriately Treats Retiree Benefits***.  The Debtors do not have any retiree benefit programs within the meaning of section 1114 of the Bankruptcy Code. Accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Plan.

M. *Section 1129(c)-(d) of the Bankruptcy Code are Inapplicable to the Combined Disclosure Statement and Plan.*

43.     The Plan is the only chapter 11 plan that has been proposed in these Chapter 11 Cases.  Further, the Plan does not have as one of its principal purposes the avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act of 1933, and I am unaware of any filing by any governmental agency asserting such avoidance.  As a result, I believe that the Combined Disclosure Statement and Plan satisfy sections 1129(c) and (d) of the Bankruptcy Code.

N. *The Rejection of Remaining Executory Contracts and Unexpired Leases Under the Combined Disclosure Statement and Plan is Appropriate (Section 1123(b)(2)).*

44.     Article XII of the Plan provides for the rejection of executory contracts and unexpired leases that have not been previously assumed or rejected under section 365 of the Bankruptcy Code.  The Debtors are winding down their business and have no need for the vast majority of their contracts and leases, which will continue to incur expenses for the Wind-Down Estates if not rejected.  Therefore, I believe that they have exercised sound business judgment in rejecting those agreements through the Plan.

O. *The Settlements Included in the Combined Disclosure Statement and Plan are Sound (Section 1123(b)(3)).*

45.     I have been informed that, in accordance with section 1123(b)(1) of the Bankruptcy Code, the Plan provides for the settlement and/or adjustment of certain claims or interests belonging to the Debtors or their estates.  In particular, the 9019 Settlement Agreement, which is a component of the Plan, represents a fair and reasonable resolution of certain disputes between the Debtors, the Committee, VMG, 36th Street Capital, and SCG, as provided for in the Plan. The 9019 Settlement Agreement, as set forth in the Plan: (i) is fair and equitable; (ii) obviates the expense, delay, inconvenience, and uncertainty that would be incurred as a result

of certain litigation; and (iii) advances the paramount interest of creditors. The 9019 Settlement Agreement, which allows Holders of Allowed General Unsecured Claims to receive distributions, paves the wave for the consensual resolution of these Chapter 11 Cases and confirmation of the Plan, and, through the 9019 Settlement Agreement, the Debtors, the Committee, VMG, 36th Street Capital, and SCG have resolved, among other things, VMG's right and claim to the Debtors' remaining Assets, including litigation related thereto and any potential objections to the Plan. The 9019 Settlement Agreement will also facilitate potential distributions to Holders of Allowed General Unsecured Claims, for which there would be no possibility without such settlement. For these reasons, I believe that confirmation of the Plan as it pertains to the 9019 Settlement Agreement is necessary and appropriate.

P.   *Creation of the Litigation Trust Is Reasonable and Appropriate.*

46.   I believe the creation of the Litigation Trust, pursuant to the Litigation Trust Agreement, is reasonable and appropriate. The Litigation Trust will be established to liquidate, prosecute, and distribute the proceeds thereof to Holders of Allowed Claims in accordance with the terms of the Plan, the Confirmation Order, and the Litigation Trust Agreement. I understand that, on the Effective Date, all remaining Assets of the Debtors, including Retained Causes of Action, will vest in and be transferred to the Litigation Trust.

## CONCLUSION

47.   I believe, in my business judgment, that the Plan will enable the Holders of Allowed Claims to realize the highest possible recoveries under the circumstances of these Chapter 11 Cases. I therefore conclude, in my business judgment, that the Plan is in the best interests of all creditors, and respectfully request that the Court enter an order confirming the Combined Disclosure Statement and Plan.

I certify under penalty of perjury that, based upon my knowledge, information, and belief as

set forth in this Declaration, the foregoing is true and correct.

Executed: June 14, 2024

/s/ John Madden
John Madden
Emerald Capital Advisors, Corp.