## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| UNCONDITIONAL LOVE INC., *et al.*,[1] | Case No. 23-11759 (MFW) |
| Debtors. | (Jointly Administered) |

## MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF THE AMENDED COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF UNCONDITIONAL LOVE INC. AND ITS AFFILIATED DEBTORS

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Edmon L. Morton (No. 3856)
Matthew B. Lunn (No. 4119)
Carol E. Cox (No. 6936)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

**WILLKIE FARR & GALLAGHER LLP**
Brian S. Lennon (admitted *pro hac vice*)
Debra M. Sinclair (admitted *pro hac vice*)
Erin C. Ryan (admitted *pro hac vice*)
Jessica D. Graber (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Co-Counsel to the Debtors*
*and Debtors in Possession*

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification number, are Unconditional Love Inc. d/b/a Hello Bello (5895), Unconditional Love Canada, Inc., and The Best Training Pants in the World Inc. (9369).  The Debtors' headquarters is located at 17383 Sunset Blvd, Suite B200, Pacific Palisades, CA 90272.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ................................................................................................................. 3

I.   GENERAL BACKGROUND. ................................................................................... 3

II.  THE PLAN AND DISCLOSURE STATEMENT ..................................................... 5

III. PLAN SOLICITATION AND VOTING. .................................................................. 6

ARGUMENT ...................................................................................................................... 8

I.   THE COURT HAS JURISDICTION AND NOTICE HAS PROPERLY
     BEEEN GIVEN. ......................................................................................................... 8

A.   Jurisdiction and Venue. ............................................................................................... 8

II.  THE PLAN SHOULD BE CONFIRMED BECAUSE IT COMPLIES WITH
     THE REQUIREMENTS OF BANKRUPTCY CODE SECTION 1129. .................... 9

     A.   The Plan Complies with All Applicable Provisions of the Bankruptcy
          Code—11 U.S.C. § 1129(a)(1). ........................................................................ 10

          1.   The Classification of Claims and Interests in the Plan Satisfies the
               Requirements of Section 1122 of the Bankruptcy Code. ........................... 10

          2.   The Plan Satisfies the Requirements of Section 1123(a) of the
               Bankruptcy Code. ...................................................................................... 11

          3.   The Combined Disclosure Statement and Plan Complies With the
               Requirements of Section 1123(b) of the Bankruptcy Code. ....................... 14

     B.   The Debtors Have Complied with the Applicable Provisions of the
          Bankruptcy Code—11 U.S.C. § 1129(a)(2). ..................................................... 22

     C.   The Combined Disclosure Statement and Plan Has Been Proposed in Good
          Faith and Not by Any Means Forbidden by Law—11 U.S.C. § 1129(a)(3). ... 23

     D.   The Combined Disclosure Statement and Plan Provides that Payments Made
          by the Debtors for Services or Costs and Expenses are Subject to
          Approval—11 U.S.C. § 1129(a)(4). .................................................................. 24

     E.   The Debtors Have Disclosed the Identity of Directors and Officers and the
          Nature of Compensation of Insiders—11 U.S.C. § 1129(a)(5). ........................ 25

     F.   The Combined Disclosure Statement and Plan Does Not Contain Any Rate
          Changes Subject to the Jurisdiction of Any Governmental Regulatory
          Commission—11 U.S.C. § 1129(a)(6). ............................................................. 25

     G.   The Combined Disclosure Statement and Plan is in the Best Interests of
          Creditors —11 U.S.C. § 1129(a)(7). ................................................................. 26

     H.   The Combined Disclosure Statement and Plan Has Been Accepted by an
          Impaired Voting Class—11 U.S.C. § 1129(a)(8). ............................................. 28

-ii-

I.    The Combined Disclosure Statement and Plan Provides for Payment in Full of All Allowed Priority Claims—11 U.S.C. § 1129(a)(9)................................28

J.    At Least One Impaired, Non-Insider Class Has Accepted the Plan—11 U.S.C. § 1129(a)(10). ........................................................................................30

K.    The Plan is Feasible—11 U.S.C. § 1129(a)(11). ..............................................30

L.    All Statutory Fees Have or Will Be Paid—11 U.S.C. § 1129(a)(12)...............31

M.  The Combined Disclosure Statement and Plan Appropriately Treats Retiree Benefits—11 U.S.C. § 1129(a)(13). .................................................................31

N.   Sections 1129(a)(14)–(16) of the Bankruptcy Code are Inapplicable. ............32

O.   The Plan Satisfies the "Cramdown" Requirements under Section 1129(b) of the Bankruptcy Code for Non-Accepting Classes. ...........................................32

       1.    The Plan Does Not Unfairly Discriminate With Respect to Any Class....33

       2.    The Combined Disclosure Statement and Plan is Fair and Equitable.......34

P.    The Combined Disclosure Statement and Plan Is Not an Attempt to Avoid Tax Obligations—11 U.S.C. § 1129(d). ..........................................................34

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Alta+Cast, LLC,*
No. 02-12982 (MFW), 2004 Bankr. LEXIS 219 (Bankr. D. Del. Mar. 2, 2004) .....................9

*In re Armstrong World Indus., Inc.,*
432 F.3d 507 (3d Cir. 2005)....................................................................................32

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship,*
526 U.S. 434 (1999)................................................................................................26

*In re Buttonwood Partners, Ltd.,*
111 B.R. 57 (Bankr. S.D.N.Y. 1990) ....................................................................33

*Cohen v. TIC Fin. Sys. (In re Ampace Corp.),*
279 B.R. 145 (Bankr. D. Del. 2002) .....................................................................14

*In re Coram Healthcare Corp.,*
271 B.R. 228 (Bankr. D. Del. 2001) .....................................................................23

*In re Coram Healthcare Corp.,*
315 B.R. 321 (Bankr. D. Del. 2004) .....................................................................10

*In re Drexel Burnham Lambert Group, Inc.,*
138 B.R. ...................................................................................................................26

*In re Elsinore Shore Assocs.,*
91 B.R. 238 (Bankr. D.N.J. 1988) .........................................................................22

*In re Exide Tech.,*
303 B.R. (Bankr. D. Del. 2003) .......................................................................14, 20

*Gruen Mktg. Corp. v. Asia Commercial Co., Ltd. (In re Jewelcor Inc.),*
150 B.R. 580 (Bankr. M.D. Pa. 1992) ..................................................................15

*Heartland Fed'n Sav. & Loan Ass'n v. Briscoe Enters. Ltd., II (In re Briscoe
Enters., Ltd., II),*
994 F.2d 1160 (5th Cir. 1993) .................................................................................9

*In re Indianapolis Downs, LLC,*
486 B.R. 286 (Bankr. D. Del. 2013) .................................................................18, 20

*In re Jersey City Med. Ctr.,*
817 F.2d 1055 (3d Cir. 1987)................................................................................10

*In re Jersey City Med. Ctr.*,
  817 F.2d at 1060–61 ............................................................................................... 11

*In re Johns-Manville Corp.*,
  68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd in part, rev'd in part on other
  grounds*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd, In re Johns-Manville Corp.*, 843
  F.2d 636 (2d Cir. 1988)......................................................................................... 33

*Kurak v. Dura Auto. Sys., Inc. (In re Dura Auto. Sys., Inc.)*,
  379 B.R. 257 (Bankr. D. Del. 2007) ..................................................................... 32

*In re Lernout & Hauspie Speech Prods., N.V.*,
  301 B.R. 651 (D. Del. 2003)............................................................................32, 33

*Lisanti v. Lubetkin (In re Lisanti Foods, Inc.)*,
  329 B.R. 491 (D.N.J. 2005) ................................................................................... 24

*In re New Century TRS Holdings, Inc.*,
  407 B.R. 576 (Bankr. D. Del. 2009) ..................................................................... 13

*In re NII Holdings, Inc.*,
  288 B.R. 356 (Bankr. D. Del. 2002) ..................................................................... 23

*In re Nutritional Sourcing Corp.*,
  398 B.R. 816 (Bankr. D. Del. 2008) ..................................................................... 10

*In re Owens Corning*,
  419 F.3d 195 (3d Cir. 2005).................................................................................. 13

*In re PWS Holding Corp.*,
  228 F.3d at 248 ....................................................................................................... 23

*In re Resorts Int'l Inc.*,
  145 B.R. 412 (Bankr. D.N.J. 1990) .................................................................22, 24

*In re Rubicon U.S. REIT, Inc.*,
  434 B.R. 168 (Bankr. D. Del. 2010) ..................................................................... 33

*In re Sea Launch Co., L.L.C.*,
  No. 09-12153 (BLS), 2010 Bankr. LEXIS 5283 (Bankr. D. Del. July 30,
  2010) ........................................................................................................................ 32

*In re Stone & Webster, Inc.*,
  286 B.R. 532 (Bankr. D. Del. 2002) ..................................................................... 13

*In re Tribune Co.*,
  464 B.R. 126 (Bankr. D. Del. 2011) ..................................................................9, 18

*U.S. Bank Nat'l Ass'n v. Wilmington Trust Co., Spansion, Inc. (In re Spansion, Inc.)*,
    426 B.R. 114 (Bankr. D. Del. 2010) ................................................................16, 20

*In re W.R. Grace*,
    446 B.R. 96 (Bankr. D. Del. 2011) ..................................................................19

*In re Wash. Mut., Inc.*,
    442 B.R. 314 (Bankr. D. Del. 2011) ................................................................18, 21

*In re Zenith Elecs. Corp.*,
    241 B.R. 92 (Bankr. D. Del. 1999) ..................................................................17, 18, 21

**STATUTES**

11 U.S.C. 1129(b)(1) ..............................................................................................33

11 U.S.C. §§ 101–1532 ................................................................................... *passim*

11 U.S.C. § 1123(b)(3)(A) .....................................................................................14, 16, 20

11 U.S.C. § 1123(b)(3)(A), (B) .............................................................................14

11 U.S.C. § 1123(b)(3)(B) .....................................................................................14

11 U.S.C. § 1123(b)(5) ..........................................................................................14

11 U.S.C. § 1123(b)(6) ..........................................................................................14

11 U.S.C. § 1129(a)(1) ...........................................................................................10

11 U.S.C. § 1129(a)(2) ...........................................................................................22, 23

11 U.S.C. § 1129(a)(3) ...........................................................................................23, 24

11 U.S.C. § 1129(a)(4) ...........................................................................................24

11 U.S.C. § 1129(a)(5) ...........................................................................................25

11 U.S.C. § 1129(a)(5)(A)(i)–(ii) ..........................................................................25

11 U.S.C. § 1129(a)(5)(B) .....................................................................................25

11 U.S.C. § 1129(a)(6) ...........................................................................................25, 26

11 U.S.C. § 1129(a)(7) ...........................................................................................26, 28

11 U.S.C. § 1129(a)(8) ...........................................................................................28, 32

11 U.S.C. § 1129(a)(9) ................................................................................28, 29

11 U.S.C. § 1129(a)(10) .....................................................................................30

11 U.S.C. § 1129(a)(11) ...............................................................................30, 31

11 U.S.C. § 1129(a)(12) .....................................................................................31

11 U.S.C. § 1129(a)(13) .....................................................................................31

11 U.S.C. § 1129(b)(2)(B)(ii), (C)(ii) ................................................................34

11 U.S.C. § 1129(d) .....................................................................................34, 35

28 U.S.C. §§ 157 and 1334 ...................................................................................8

28 U.S.C. § 157(b)(2) ...........................................................................................8

28 U.S.C. §§ 1408 and 1409 .................................................................................8

**RULES**

Bankruptcy Rule 2002 ...........................................................................................8

Bankruptcy Rule 9019 .........................................................................................20

Bankruptcy Rules 2002, 6006, 9007, and 9014 ...................................................9

**OTHER AUTHORITIES**

36th Amendment .....................................................................................................4

H.R. Rep. No. 95-595 (1977) ..............................................................................22

H.R. Rep. No. 95-595 (1977), reprinted in 1978 U.S.C.C.A.N. 5963 ...............10

S. Rep. No. 95-989 (1978) ...................................................................................22

The debtors and debtors-in-possession (collectively, the "Debtors") in the above captioned chapter 11 cases (the "Chapter 11 Cases") hereby submit this memorandum of law (this "Memorandum") in support of confirmation, pursuant to section 1129 of the Bankruptcy Code, of the *Amended Combined Disclosure Statement and Chapter 11 Plan of Unconditional Love Inc. and its Affiliated Debtors* (as may be amended, supplemented, or modified, the "Combined Disclosure Statement and Plan" or "Plan").[2]  In support thereof, the Debtors have filed concurrently herewith (a) the *Declaration of John Madden in Support of Entry of Order Confirming Amended Combined Disclosure Statement and Chapter 11 Plan of Unconditional Love Inc. and Its Affiliated Debtors* (the "Madden Declaration"); and (b) a proposed form of order approving the Disclosure Statement on a final basis and confirming the Plan (as the same may be amended, modified and/or supplemented from time to time, the "Confirmation Order"). The Debtors also rely upon the *Certification of Aileen Daversa Regarding Solicitation of Votes and Tabulation of Ballots in Connection With the Combined Disclosure Statement and Chapter 11 Plan of Unconditional Love Inc. and its Affiliated Debtors* [Docket No. 452] (the "Voting Declaration"), which was prepared by Stretto, Inc., the Debtors' balloting agent ("Stretto" or the "Claims Agent"), and filed with the Court on June 14, 2024, and the affidavit of service filed by Stretto in connection with the Plan solicitation [Docket No. 446].

## PRELIMINARY STATEMENT

1.     The Debtors commenced these Chapter 11 Cases to pursue the sale of all or substantially all of their assets, while minimizing any potential adverse effects to the Debtors'

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Combined Disclosure Statement and Plan. The Debtors filed the *Notice of Blackline of Combined Disclosure Statement and Chapter 11 Plan of Unconditional Love Inc. and Its Affiliated Debtors* [Docket No. 451], which reflects certain revisions to the Combined Disclosure Statement and Plan (the "Amended Combined Disclosure Statement and Plan").

business, customers, employees and other key stakeholders.  Over the past several months following the Petition Date, the Debtors accomplished this goal.  The Debtors not only successfully stabilized their business, but also ran a robust Sale Process that culminated in the sale of substantially all of their assets through a 363 sale (the "Sale") to Bucky Acquisition Holdco, LLC (the "Stalking Horse Bidder")—preserving value, dozens of jobs, and hundreds of vendor and customer relationships.

2.       Following approval of the Sale to the Stalking Horse Bidder, the Debtors, the Committee, and other stakeholders, including VMG, 36th Street Capital, and SCG, engaged in extensive good faith arm's-length negotiations.  The result of those negotiations was the 9019 Settlement Agreement, which has paved the way for the conclusion of these Chapter 11 Cases through confirmation of a consensual Plan and the ultimate wind-down of the Debtors' affairs. Now approaching plan confirmation, the Debtors are in the final leg of their chapter 11 process.

3.       The Plan represents the best possible outcome for the Debtors' creditors, is the result of extensive negotiations, and enjoys broad support from the Debtors' board of directors and management team, the Committee, other key stakeholders, and the requisite majority of the Debtors' voting creditors, as evidenced by the Voting Declaration.  Voting Declaration at ¶ 12. The following table summarizes the Plan voting results:

| VOTING CLASS | TOTAL BALLOTS COUNTED | | | | | | |
| | ACCEPT | | | REJECT | | | Class Voting Results |
| | AMOUNT | NUMBER | OPT OUT | AMOUNT | NUMBER | OPT OUT | |
| Class 3 General Unsecured Claims | $61,293,224.57 100.0% | 45 95.7% | 14 | $29,580.14 0.0% | 2 4.3% | 2 | Accept |

4.      If confirmed, the Plan will result in the Debtors transferring all remaining Assets into the established Litigation Trust on the Effective Date.  The Assets include approximately $330,000 in cash and the Retained Causes of Action.  The Litigation Trustee shall investigate the Retained Causes of Action and determine if any can be brought for the benefit of Holders of General Unsecured Claims, who will be the beneficiaries of the Litigation Trust.

5.      The Debtors did not receive any formal objections to the adequacy of the information contained in the Combined Disclosure Statement and Plan or confirmation of the Combined Disclosure Statement and Plan.   The Debtors did, however, receive informal responses from the U.S. Trustee, the Texas Comptroller, and the Internal Revenue Service (the "Informal Responses").  The Informal Responses have been resolved by either making certain modifications to the Plan or revisions to the Confirmation Order specifically addressing those Informal Responses.

6.      As set forth in further detail below, the Combined Disclosure Statement and Plan satisfies the requirements of the Bankruptcy Code, the Bankruptcy Rules and all other applicable law, and should be approved as containing adequate information and confirmed accordingly. The Debtors will seek entry of the Confirmation Order at the confirmation hearing currently scheduled for June 18, 2024 (the "Confirmation Hearing") and move to consummate the Plan shortly thereafter.  Accordingly, the Debtors respectfully request that the Court confirm the Plan.

## BACKGROUND

## I.      GENERAL BACKGROUND.

7.      On October 23, 2023 (the "Petition Date"), the Debtors commenced voluntary cases under chapter 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Court").  On November 2, 2023, the United States Trustee for the District of Delaware appointed an official

committee of unsecured creditors (the "Committee") [Docket No. 76].  No request has been made for the appointment of a trustee or an examiner.

8.    Additional information regarding the Debtors, including their business operations, their corporate and capital structure, and the circumstances leading to the filing of these Chapter 11 Cases, is set forth in detail in the *Declaration of Erica Buxton in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") [Docket No. 12] and the Combined Disclosure Statement and Plan.

9.    The Debtors have conducted a robust Sale Process throughout these Chapter 11 Cases.  These efforts include the following:

- On November 20, 2023, the Court entered an order [Docket No. 153] establishing bidding procedures for the sale of the Debtors' assets.

- In connection therewith, on December 19, 2024, the Stalking Horse Bidder purchased substantially all of the Debtors' assets for a Purchase Price in excess of $67.8 million, consisting of (i) up to $36 million as contemplated by the New CIT Facility Term Sheet with respect to the New CIT Facility, (ii) $15.8 million (minus the value of all postpetition ordinary course monthly lease payments paid to NFS and 36th prior to the Closing (which shall be paid by Sellers when due), to be paid in accordance with the NFS Amendment Term Sheet and the 36th Amendment Term Sheet), (iii) $15 million in cash (which, for the avoidance of doubt, includes the amount of the Buyer's Good Faith Deposit), (iv) an amount in cash equal to the Proration Amount, and (v) the assumption by the Buyer of the Assumed Liabilities.[3]

---

[3]    Capitalized terms used in this paragraph 9 shall have the meanings ascribed to them in the *Motion of the Debtors for Entry of Orders (I) (A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors Assets, (B) Authorizing the Debtors to Enter Into the Stalking Horse APA and to Provide the Stalking*

## II.    THE PLAN AND DISCLOSURE STATEMENT[4]

10.    The Combined Disclosure Statement and Plan specifically provides for creation of the Litigation Trust and the appointment of the Litigation Trustee to be the sole officer and director of the Debtors and to administer and wind-down the affairs of the Debtors and their Estates in accordance with the terms of the Plan, the Confirmation Order, and the Litigation Trust Agreement.   On the Effective Date, all remaining Assets of the Debtors, including Retained Causes of Action, will vest in and be transferred to the Litigation Trust.  The Litigation Trust will liquidate, prosecute, and distribute the proceeds thereof to Holders of Allowed Claims in accordance with the terms of the Plan, the Confirmation Order, and the Litigation Trust Agreement.

11.    The Plan also sets forth the treatment to be provided to each Class.  The Classes take into account the differing nature and priority under the Bankruptcy Code of the various Claims and Interests.  In particular, the Plan segregates various Claims against and Interests in the Debtors into the following groups: Class 1 (Priority Non-Tax Claims); Class 2 (Other Secured Claims); Class 3 (General Unsecured Claims); Class 4 (Subordinated Claims); Class 5 (Intercompany Claims); and Class 6 (Interests).  The Classes and their treatment under the Plan are further described as follows:

- **Class 1: Priority Non-Tax Claims.**  Class 1 consists of Priority Non-Tax Claims against the Debtors.  Class 1 Claims are Unimpaired by the Plan and the Holders of Class 1 Claims are deemed to accept the Plan and, therefore, are not entitled to

---

*Horse Bid Protections Thereunder, (C) Scheduling an Auction and a Sale Hearing and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption Procedures, and (E) Granting Related Relief; and (II) (A) Approving the Sale of the Debtors Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 17].

[4]    The following is a brief overview of the Plan and is qualified in its entirety by reference to the full text of the Plan.

vote on the Plan.

- **Class 2: Other Secured Claims.**  Class 2 consists of Other Secured Claims against the Debtors.  Class 2 Claims are Unimpaired by the Plan and the Holders of Class 2 Claims are deemed to accept the Plan and, therefore, are not entitled to vote on the Plan.

- **Class 3:  General Unsecured Claims.**  Class 3 consists of all General Unsecured Claims.  Unless the Holder agrees to a different treatment, Holders of Allowed General Unsecured Claims shall receive such Holder's pro rata share of the liquidation value of the Litigation Trust Assets.  Because Holders of Class 3 General Unsecured Claims are Impaired, but will receive a Distribution under the Plan, Holders of Class 3 General Unsecured Claims are entitled to vote on the Plan.

- **Class 4:  Subordinated Claims.**  Class 4 consists of all Subordinated Claims.  As of the Effective Date, all Allowed Subordinated Claims, if any, shall be cancelled, released, and extinguished.  Because Holders of Class 4 Subordinated Claims will receive no Distribution under the Plan, Holders of Class 4 Subordinated Claims are deemed to reject the Plan and, therefore, not entitled to vote on the Plan.

- **Class 5: Intercompany Claims.**  Class 5 consists of all Intercompany Claims.  Because Holders of Class 5 Intercompany Claims will receive no Distribution under the Plan, Holders of Class 5 Intercompany Claims are deemed to reject the Plan and, therefore, not entitled to vote on the Plan.

- **Class 6: Interests.**  Class 6 consists of all Interests.  On the Effective Date, all Interests shall be extinguished.  Because Holders of Class 6 Interests will receive no Distribution under the Plan, Holders of Class 6 Interests are deemed to reject the Plan and, therefore, not entitled to vote on the Plan.

12.     The Debtors and the Committee support confirmation of the Plan, as does the overwhelming majority of the Debtors' voting creditors as evidenced by the Voting Declaration.  Voting Declaration at ¶ 11.

## III.     PLAN SOLICITATION AND VOTING

13.     On May 7, 2024, the Court entered an Order [Docket No. 407] (the "Solicitation Procedures Order"), pursuant to which the Court, among other things, (i) approved the Combined Disclosure Statement and Plan, on an interim basis for solicitation purposes only; (ii) established procedures for the solicitation and tabulation of votes to accept or reject the Plan; (iii) approved

the form of Ballots and solicitation materials; (iv) established a voting record date; and (v) scheduled the Confirmation Hearing and related deadlines.  In accordance with the Solicitation Procedures Order, on May 13, 2024 (the "Service Date"), the Debtors commenced the solicitation of votes to accept or reject the Plan from Holders of Claims in Class 3 (the "Voting Class") by causing Stretto, to mail to the Holders of Claims in the Voting Class (that are entitled to vote on the Plan under the Solicitation Procedures Order) the following materials (collectively, the "Solicitation Packages"): (i) the Combined Disclosure Statement and Plan; (ii) notice of the confirmation hearing (the "Confirmation Hearing Notice"); (iii) the Ballot; (iv) a letter from the Committee recommending that Holders of General Unsecured Claims vote to accept the Combined Disclosure Statement and Plan; and (v) a pre-paid, pre-addressed return envelope.

14.     The Debtors did not solicit votes on the Plan from Holders of Unclassified Claims or from Holders of Claims in Classes 1 or 2, which are Unimpaired and conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f).  Further, the Debtors did not solicit votes on the Plan from the Holders of Subordinated Claims in Class 4, Intercompany Claims in Class 5, or Interests in Class 6, which all are Impaired and conclusively deemed to have rejected the Plan pursuant to the Bankruptcy Code.  However, on the Service Date and in accordance with the Solicitation Procedures Order, the Claims Agent mailed the Confirmation Hearing Notice to the following parties, to the extent such parties were not otherwise entitled to receive a Solicitation Package:  (a) all persons or entities that have filed, or are deemed to have filed a proof of Claim or request for allowance of Claim as of the Voting Record Date; (b) all persons or entities listed on the Schedules as holding a Claim or potential Claim; (c) the Securities and Exchange Commission and any regulatory agencies with oversight authority of the

Debtors; (d) the Internal Revenue Service; (e) the United States Attorney's office for the District of Delaware; (f) other known Holders of Claims (or potential Claims) and Interests; (g) all entities known to the Debtor to hold or assert a lien or other interest in the Debtors' property; (h) all state and local taxing authorities in the states in which the Debtors do business; (i) all counterparties to executory contracts and leases that have not been assumed as of the date of entry of the Solicitation Procedures Order; (j) all parties listed on the Debtors' creditor matrix; and (k) any other parties that have requested notice pursuant to Bankruptcy Rule 2002.

15.      On June 11, 2024, Stretto executed an affidavit of service [Docket No. 446] (the "Solicitation Affidavit") regarding the mailing of the Confirmation Hearing Notice and the Solicitation Packages, evidencing service in accordance with the terms of the Solicitation Procedures Order.  As set forth in the Voting Declaration, the Debtors received acceptance of the Combined Disclosure Statement and Plan from the voting class for all Debtors. Voting Declaration at ¶ 12.

## ARGUMENT

### I.  THE COURT HAS JURISDICTION AND NOTICE HAS PROPERLY BEEEN GIVEN.

#### A.  Jurisdiction and Venue.

16.      This Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2), and the Court has jurisdiction to determine whether the Combined Statement and Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

#### B.  Adequate Notice of Combined Hearing.

17.     In accordance with Bankruptcy Rules 2002, 6006, 9007, and 9014, the Solicitation Procedures Order, the Confirmation Hearing Notice, and the solicitation procedures set forth therein, adequate notice of (i) the time for filing objections to confirmation and approval of the Combined Disclosure Statement and Plan; (ii) the transactions, settlements, and compromises contemplated thereby; and (iii) the Confirmation Hearing was provided to all holders of Claims and Interests and other parties in interest entitled to receive such notice under the Bankruptcy Code and the Bankruptcy Rules.  No other or further notice of the Confirmation Hearing is necessary or required.

## II.     THE PLAN SHOULD BE CONFIRMED BECAUSE IT COMPLIES WITH THE REQUIREMENTS OF BANKRUPTCY CODE SECTION 1129.

18.     To obtain confirmation of the Plan, the Debtors must demonstrate that the Plan satisfies the applicable provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence.  See In re Tribune Co., 464 B.R. 126, 151–52 (Bankr. D. Del. 2011) (explaining that the plan proponent bears the burden of establishing the plan's compliance with section 1129(a) of the Bankruptcy Code (citing In re Exide Tech., 303 B.R. 48, 58 (Bankr. D. Del. 2003))); Heartland Fed'n Sav. & Loan Ass'n v. Briscoe Enters. Ltd., II (In re Briscoe Enters., Ltd., II), 994 F.2d 1160, 1165 (5th Cir. 1993) (stating the bankruptcy court must find that the debtor has satisfied the provisions of section 1129 by a preponderance of the evidence); In re Alta+Cast, LLC, No. 02-12982 (MFW), 2004 Bankr. LEXIS 219, at *5 (Bankr. D. Del. Mar. 2, 2004) (same).  This Memorandum, the record of these Chapter 11 Cases, the Madden Declaration, and any additional evidence that may be presented at the Confirmation Hearing, will demonstrate, by a preponderance of the evidence, that the Plan complies with the requirements of section 1129(a) of the Bankruptcy Code with respect to all Classes of Claims and Interests. Accordingly, the Plan should be confirmed.

A. **The Plan Complies with All Applicable Provisions**
   **of the Bankruptcy Code—11 U.S.C. § 1129(a)(1).**

19.     Section 1129(a)(1) of the Bankruptcy Code provides that a court may confirm a chapter 11 plan only if such plan complies with the applicable provisions of the Bankruptcy Code. *See* 11 U.S.C. § 1129(a)(1). The legislative history of section 1129(a)(1) explains that this provision encompasses the requirements of sections 1122 and 1123, which govern the classification of claims under a plan and the contents of a plan, respectively. See H.R. Rep. No. 95-595, at 412 (1977), reprinted in 1978 U.S.C.C.A.N. 5963; see also In re Nutritional Sourcing Corp., 398 B.R. 816, 824 (Bankr. D. Del. 2008). A principal objective of section 1129(a)(1) is to assure compliance with the sections of the Bankruptcy Code governing classification of claims and interests and the contents of a plan. Accordingly, the determination of whether the Plan complies with section 1129(a)(1) requires an analysis of its compliance with sections 1122 and 1123 of the Bankruptcy Code. As set forth below, the Plan complies with these sections of the Bankruptcy Code.

1. **The Classification of Claims and Interests in the Plan Satisfies the**
   **Requirements of Section 1122 of the Bankruptcy Code.**

20.     Section 1122(a) of the Bankruptcy Code provides that the claims or interests within a given class must be "substantially similar." See 11 U.S.C. § 1122(a). Section 1122(a), however, does not mandate that "substantially similar" claims be classified together. See In re Jersey City Med. Ctr., 817 F.2d 1055, 1061 (3d Cir. 1987) (agreeing that section 1122 permits the grouping of similar claims in different classes); In re Coram Healthcare Corp., 315 B.R. 321, 348 (Bankr. D. Del. 2004) (noting that "section 1122 . . . provides that claims that are not 'substantially similar' may not be placed in the same class; it does not expressly prohibit placing 'substantially similar' claims in separate classes"). Section 1122 of the Bankruptcy Code provides plan proponents with a great degree of flexibility in classifying claims and interests, and

10

courts are offered broad discretion in approving a proponent's classification scheme and to properly consider the specific facts of each case before rendering a decision.  See In re Jersey City Med. Ctr., 817 F.2d at 1060–61 ("Congress intended to afford bankruptcy judges broad discretion [under section 1122] to decide the propriety of plans in light of the facts of each case") (internal citation omitted).

21.      The Plan is a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors.  Article II of the Plan designates six (6) Classes of Claims against and Interests in the Debtors.   In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims against and Interests in the Debtors contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class. Moreover, the Plan's classification of Claims and Interests into six (6) Classes satisfies the requirements of section 1122 of the Bankruptcy Code, because the Claims and Interests in each Class differ from the Claims and Interests in each other Class in a legal or factual nature, or are based upon other relevant criteria.  In addition, valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims against and Interests in the Debtors under the Plan.  Based upon the foregoing, the Debtors submit that the Plan satisfies the requirements of section 1122 of the Bankruptcy Code.

> **2.      The Plan Satisfies the Requirements of Section 1123(a) of the Bankruptcy Code.**

22.      The Plan also complies with section 1123(a) of the Bankruptcy Code, which sets forth seven (7) requirements for every chapter 11 plan.  See 11 U.S.C. § 1123(a).   As demonstrated below, the Plan complies with each such requirement:

    i.   Section 1123(a)(1).  Article II of the Plan properly designates all Claims and Interests that require classification, as required by section 1123(a)(1) of the Bankruptcy Code.

ii. <u>Section 1123(a)(2)–(3)</u>.  Article II of the Plan specifies whether each Class of Claims or Interests is Impaired under the Plan and the treatment of each Impaired Class, as required by section 1123(a)(2)–(3) of the Bankruptcy Code.

iii. <u>Section 1123(a)(4)</u>.  In accordance with section 1123(a)(4) of the Bankruptcy Code, Article VII of the Plan provides the same treatment for each Claim or Interest in a given Class unless the Holder of such Claim or Interest agrees to less favorable treatment.

iv. <u>Section 1123(a)(5)</u>.  In accordance with section 1123(a)(5) of the Bankruptcy Code, Article IX of the Plan provides adequate means for the Plan's implementation.  For example, the Plan provides for the appointment of the Litigation Trustee to serve as the sole officer and director of the Debtors.  Additionally, after the Effective Date, the Litigation Trust will continue in existence for purposes of, among other things, (a) winding down the Estates as expeditiously as reasonably possible and liquidating the Retained Causes of Action and any other Assets held by the Litigation Trust after the Effective Date, (b) resolving any Disputed Claims, (c) making Distributions on account of Allowed Claims in accordance with the Plan, (d) enforcing and prosecuting claims, interests, rights, and privileges under any Retained Causes of Action in an efficient manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith, and (e) exercising such other powers as may be vested in it pursuant to an order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Combined Disclosure Statement and Plan.  The Litigation Trustee, on behalf of the Litigation Trust, shall be vested with the right to liquidate the assets and make distributions to Holders of Allowed Claims.  Finally, the Litigation Trust will be initially funded by the vesting and transfer of the Litigation Trust Assets.

v. <u>Section 1123(a)(6)</u>.  There are no equity securities being issued under the Plan, and no charters being modified or approved as part of the Plan.  Therefore, section 1123(a)(6) of the Bankruptcy Code is inapplicable to the Plan.

vi. <u>Section 1123(a)(7)</u>.  Section 9.3 of the Plan provides that the Litigation Trustee shall be the sole officer and director of each Debtor.  The Debtors submit that the Plan provisions governing the manner of selection of the Litigation Trustee are consistent with the interests of creditors and equity security holders and with public in accordance with section 1123(a)(7) of the Bankruptcy Code.  The identity of the Litigation Trustee is acceptable to the Debtors and no party in interest as objected to the appointment of the Litigation Trustee or asserted that the Plan provisions for the selection of the Litigation Trustee are inconsistent with public policy or the interests of creditors.

23.     In addition, the Plan proposes that the Debtors' Estates be deemed substantively consolidated solely for purposes of the Plan as specifically provided in Section 9.2 of the Plan.

The Debtors believe that such deemed substantive consolidation is fair, equitable, and in the best interests of the Debtors' Estates.  See In re Owens Corning, 419 F.3d 195, 205 (3d Cir. 2005) ("Substantive consolidation…emanates from equity [and] treats separate legal entities as if they were merged into a single survivor left with all the cumulative assets and liabilities.").  Section 1123(a)(5)(C) of the Bankruptcy Code "clearly authorizes a bankruptcy court to confirm a Chapter 11 plan containing a provision which substantively consolidates the estates of the two or more debtors."  In re Stone & Webster, Inc., 286 B.R. 532, 546 (Bankr. D. Del. 2002). Substantive consolidation is appropriate with the consent of the parties, see In re Owens Corning, 419 F.3d 195 at 211; In re New Century TRS Holdings, Inc., 407 B.R. 576, 591 (Bankr. D. Del. 2009), and, here, the Plan has received overwhelming support from the Voting Class and no objections to substantive consolidation were filed.  The substantive consolidation proposed by the Plan does not negatively impact any Entity's rights thereunder and is consistent with the 9019 Settlement Agreement.  Additionally, no Creditor would be entitled to any greater recoveries on an absolute priority basis than the recoveries contemplated under the Plan.

24.    Finally, the Debtors historically held themselves out as a single entity, and, absent the substantive consolidation proposed under the Plan, the process of detangling the assets and liabilities of the Debtors and their Estates would be time consuming, counterproductive, and costly.  Moreover, allocating the amount each Debtor is entitled to in connection with the liquidation and sale of the Debtors' assets would be challenging as the liquidation and sale proceeds received by the Debtors were not allocated on a Debtor-by-Debtor basis.  Accordingly, the Debtors believe that substantive consolidation solely for purposes of the Plan is appropriate and that the Plan satisfies the requirements sets forth in section 1123(a)(5) of the Bankruptcy Code.

###### 3.     The Combined Disclosure Statement and Plan Complies With the Requirements of Section 1123(b) of the Bankruptcy Code.

######         a.     The Plan Discretionary Provisions <u>are Consistent with Section 1123(b).</u>

25.     Section 1123(b) of the Bankruptcy Code contains various discretionary provisions that may be included in a chapter 11 plan.  <u>See</u> 11 U.S.C. § 1123(b).  For example, a plan may impair or leave unimpaired any class of claims or interests and provide for the assumption or rejection of executory contracts and unexpired leases.  A plan also may include the settlement or adjustment of any claim or interest held by the debtor or the debtor's estate, or provide for the debtor's retention and enforcement of any such claim or interest.  <u>See</u> 11 U.S.C. § 1123(b)(3)(A), (B); <u>see</u>, <u>e.g.</u>, <u>In re Exide Tech.</u>, 303 B.R. at 67 (Bankr. D. Del. 2003) (noting that 11 U.S.C. § 1123(b)(3)(A) permits settlements to be incorporated into a plan of reorganization); <u>Cohen v. TIC Fin. Sys. (In re Ampace Corp.)</u>, 279 B.R. 145, 158–59 (Bankr. D. Del. 2002) (noting that 11 U.S.C. § 1123(b)(3)(B) permits a plan to retain causes of action by the debtor or representatives).  Likewise, a plan may modify the rights of secured creditors or unsecured creditors, or leave unaffected the rights of creditors in any class of claims.  11 U.S.C. § 1123(b)(5).  Finally, a plan may contain "any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]."  11 U.S.C. § 1123(b)(6).

26.     In accordance with the section 1123(b) of the Bankruptcy Code, the Plan employs various discretionary provisions, including the following:

i.     Article XII provides for the rejection of all of the Debtors' executory contracts and leases that are not assumed or assumed and assigned;

ii.     Articles IX–XI, along with the Litigation Trust Agreement, establish procedures for the settlement of Claims and mechanics for distribution with respect to Allowed Claims;

iii.     Article XV provides that the Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Combined

Disclosure Statement and Plan, except as otherwise specifically stated therein; See <u>Gruen Mktg. Corp. v. Asia Commercial Co., Ltd. (In re Jewelcor Inc.)</u>, 150 B.R. 580, 582 (Bankr. M.D. Pa. 1992) ("There is no doubt that the bankruptcy court's jurisdiction continues post-confirmation to 'protect its confirmation decree, to prevent interference with the execution of the plan and to aid otherwise in its operation.'" (citations omitted)). and

iv.   Article XIV provides for:  (a) a release by the Debtors of certain parties (the "<u>Debtor Release</u>"); (b) a consensual third-party release (the "<u>Third-Party Release</u>," and together with the Debtor Release, the "<u>Releases</u>"); (c) an exculpation (the "<u>Exculpation</u>"); and (d) certain injunction provisions prohibiting parties from pursuing Claims or Causes of Action exculpated or released under the Combined Disclosure Statement and Plan (the "<u>Injunction</u>").

27.   The Debtors submit that the discretionary provisions contained in the Plan are reasonable and appropriate in light of the circumstances of the Chapter 11 Cases and permissible under section 1123(b) of the Bankruptcy Code.

b.   The Releases, Exculpation, and<br>
<u>Injunction Should Be Approved.</u>

28.   The Releases, Exculpation, and Injunction are proper because, among other things, they are the product of arms' length negotiations and have been critical to obtaining the support of the various constituencies for the Plan.  Such provisions are fair and equitable, are given for valuable consideration, and are in the best interests of the Debtors and their creditors. Neither the Releases, the Exculpation, nor the Injunction is inconsistent with the Bankruptcy Code and, as a result, the requirements of section 1123(b) of the Bankruptcy Code have been satisfied.

29.   The principal terms of the Releases, Exculpation, and Injunction, as well as the basis for approval of these Plan provisions, are described below.  The Debtors submit that, based upon the circumstances and record of these Chapter 11 Cases and the paramount interest of creditors and other parties-in-interest, the Releases, the Exculpation, and the Injunction should be approved.

(i)      *Debtor Release (Plan § 14.2(b))*

> Pursuant to the Plan and the Confirmation Order, the Debtors (on their own behalf and as a representative of their respective Estates) will release certain entities that commonly are released in chapter 11 plans from Claims, Causes of Action and other liabilities as and to the extent set forth in the Plan.

30.     Each of the parties to be released by the Debtors are stakeholders or critical participants in these Chapter 11 Cases and the Combined Disclosure Statement and Plan process. Specifically, the Debtor Released Parties are:

> (a) the Debtors' Current Directors and Officers; (b) the Debtors' Professionals and other advisors; (c) the Prepetition CIT Secured Parties; (d) the DIP Agent; (e) the DIP Lenders; (g) VMG; and (h) with respect to each of the foregoing, their Related Parties, provided that under no circumstances shall any of the Former Directors or Officers of any of the Debtors be a Debtor Released Party.

31.     Section 14.2(b) of the Plan represents a valid settlement (as and to the extent provided for in the Combined Disclosure Statement and Plan) pursuant to section 1123(b)(3)(A) of the Bankruptcy Code of whatever Claims any Debtor may have against the Debtor Released Parties. The Debtors have proposed the Debtor Release based on their sound business judgment. See U.S. Bank Nat'l Ass'n v. Wilmington Trust Co., Spansion, Inc. (In re Spansion, Inc.), 426 B.R. 114, 143 (Bankr. D. Del. 2010) ("[A] debtor may release claims in a plan pursuant to Bankruptcy Code § 1123(b)(3)(A), if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate."). Indeed, the Debtors believe that, under the circumstances, pursuing claims against the Debtor Released Parties is not in the best interest of the Debtors' various stakeholders, because, among other reasons, the costs involved would likely outweigh any potential benefit to the Estates from pursuing such claims.

The Debtors' belief is further confirmed by the fact that no party has objected to the Debtor Release and the overwhelming creditor support for the Plan.

32.     The efforts of the Debtor Released Parties were integral to the development of the Combined Disclosure Statement and Plan and the timely and efficient resolution of these Chapter 11 Cases.   The Debtor Release is the product of extensive arm's length and good faith negotiations, and without the releases, among other things, the Debtors would have not been able to garner sufficient support for the Plan.   Further, the settlement embodied in the 9019 Settlement Agreement paved the way for a consensual and value maximizing Plan with significant support of the Debtors' creditors.   Without the material consideration obtained through the 9019 Settlement Agreement, recoveries under the Plan would have been negatively impacted and the Debtors could have been forced to convert these Chapter 11 Cases to chapter 7 resulting in reduce recoveries to Holders of Allowed Claims.

33.     Bankruptcy courts typically consider the *Master Mortgage* factors to determine whether a release by a debtor should be approved:  (a) whether there is an identity of interest between the debtor and the third party, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate; (b) whether the non-debtor has made a substantial contribution; (c) the essential nature of the release to the extent that, without the release, there is little likelihood of success; (d) an agreement by a substantial majority of creditors to support the release, specifically if the impacted class or classes "overwhelmingly" vote to accept the plan; and (e) whether there is a provision in the plan for payment of all or substantially all of the claims of the class or classes affected by the release.  See In re Zenith Elecs. Corp., 241 B.R. 92, 110 (Bankr. D. Del. 1999) (citing In re Master Mortg. Inv. Fund, Inc., 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994)).  Importantly, a court need not find that all of these

factors apply to approve a debtor's release of claims.  See, e.g., In re Wash. Mut., Inc., 442 B.R. 314, 346 (Bankr. D. Del. 2011).  Rather, such factors are "helpful in weighing the equities of the particular case after a fact-specific review."  In re Indianapolis Downs, LLC, 486 B.R. 286, 303 (Bankr. D. Del. 2013).

34.     *First*, there is an identity of interest between the Debtors and the Debtor Released Parties because such parties all "share the common goal" of confirming the Plan.  See In re Tribune Co., 464 B.R. 126, 187 (Bankr. D. Del. 2011) (finding an identity of interest existed between the debtors and the released parties because they "share[d] the common goal of confirming" the plan and implementing the global settlement).  The Plan is the result of efforts by the Debtors and the Debtor Released Parties, and extensive arm's length and good faith negotiations among the Debtors, the Committee and the Debtor Released Parties resulting in the compromise of the Debtor Released Parties' Claims and their support of the Plan.  Each of the Debtor Released Parties, as a critical participant during these Chapter 11 Cases, shares a common goal with the Debtors in seeing the Plan succeed, and ensuring that these Chapter 11 Cases and the Debtors' Estates can be wound down in a timely and efficient manner.  Like the Debtors, these parties seek to confirm the Plan and implement the transactions contemplated thereunder. See Zenith Elecs., 241 B.R. at 110 (concluding that certain releases who "were instrumental in formulating the Plan" shared an identity of interest with the debtor "in seeing that the Plan succeed").

35.     *Second*, the Debtor Released Parties provided, or are providing necessary contributions in exchange for the Debtor Release, including by contributing value necessary to consummate the Plan, agreeing to compromise or otherwise waive substantive rights to effectuate the 9019 Settlement Agreement, and providing other material support to the Debtors'

overall chapter 11 efforts, including the Debtors' Plan efforts and the wind-down of the Estates. See In re W.R. Grace, 446 B.R. 96, 138 (Bankr. D. Del. 2011). Among other things, the Current Directors and Officers have continued to operate and manage the Debtors' business and financial affairs throughout the Chapter 11 Cases, helped to develop and implement the Debtors' chapter 11 strategy, implemented a value maximizing sale transaction for the benefit of all stakeholders and otherwise navigated the Debtors through the chapter 11 process. The other Debtor Released Parties (a) negotiated and agreed to provide a debtor-in-possession financing facility and consensual access to prepetition cash collateral to give the Debtors access to the liquidity needed to operate during these Chapter 11 Cases and fund a value-maximizing Sale Process; (b) supported a consensual liquidation of the Debtors' Estates through the establishment of the Litigation Trust; (c) agreed to the compromise of the claims pursuant to the 9019 Settlement Agreement to permit the conclusion of these Chapter 11 Cases through the Plan; and (d) devoted significant time and resources to negotiating the terms of the Plan and related documents, among other things. Accordingly, the value contributed by the Debtor Released Parties supports the Debtor Release.

36.     *Third*, the Debtor Release is an essential component of the Plan and constitutes a sound exercise of the Debtors' business judgment, as attested to in the Madden Declaration. Madden Declaration at ¶16. During the course of negotiations regarding the Plan, it was clear that the Debtor Release would be a necessary condition to consummation of the transactions embodied in the Plan, including the 9019 Settlement Agreement. Without the Debtor Release, the Debtors and their stakeholders would neither have been able to secure the significant benefits provided by the Plan, nor build consensus around the Plan. The Debtor Release was a material inducement to the concessions and contributions received by the Debtors and their Estates under

the Plan. Accordingly, the Debtor Release is essential to Plan consummation and to preserving and maximizing the value of the Debtors' Estates for the benefit of stakeholders.

37.     *Fourth*, as evidenced by the Voting Declaration and noted above, the Debtors' stakeholders overwhelmingly support the Plan. Voting Declaration at ¶ 12. Given the critical nature of the Debtor Release, this degree of consensus evidences the Debtors' stakeholders' support for the Debtor Release and the Plan.

38.     The Debtor Release represents a valid settlement (as and to the extent provided for in the Plan) of any claims the Debtors and their Estates may have against the Debtor Released Parties, pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019. The Debtors, in consultation with the Committee and other constituencies, have proposed the Debtor Release based on their sound business judgment. See In re Spansion, Inc., 426 B.R. 114, 143 (Bankr. D. Del. 2010) ("[A] debtor may release claims in a plan pursuant to Bankruptcy Code § 1123(b)(3)(A), if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate"). For these reasons, the Debtor Release is justified as a valid exercise of the Debtors' business judgment, is in the best interests of the Debtors and their Estates, and is an integral part of the Plan, and, therefore, should be approved.

*(ii)     Third-Party Releases (Plan § 14.2(c))*

39.     Section 14.2(c) of the Plan also provides for voluntary third-party releases by the Releasing Parties.

40.     Such consensual releases are fully consistent with governing law. As the Court has recognized, "Courts in this jurisdiction have consistently held that a plan may provide for a release of third party claims against a non-debtor upon consent of the party affected." In re Indianapolis Downs, LLC, 486 B.R. at 306; see also In re Exide Tech., 303 B.R. 47, 74 (Bankr.

D. Del. 2003) ("The 'Releases by Holders of Claims' provision applies to release both prepetition and postpetition claims against the Releases, but it binds only those creditors and equity holders who accept the terms of the Plan. Because it is consensual, there is no need to consider the *Zenith* factors."); In re Wash. Mut., Inc., 442 B.R. 314, 350 (Bankr. D. Del. 2011). The Debtors submit that the Third Party Releases are consensual releases as "Releasing Parties" is defined in the Plan to exclude any party that makes a Release Opt-Out Election. See Plan § 1.101. As a result, the Releasing Parties have consented to the Third-Party Release because such parties had the opportunity to affirmatively opt out of the releases or object to the Plan, but did not make a Release Opt-Out Election. The Ballots and Confirmation Hearing Notice provided clear notice of the Third-Party Release, and clearly stated that parties would be deemed to have consented to the Third-Party Release if they did not make a Release Opt-Out Election. The Ballots and Confirmation Hearing Notice further provided instructions on how to make a Release Opt-Out Election. The Third-Party Release, therefore, has been consented to by each of the Releasing Parties, and, therefore, is appropriate and should be approved.

*(iii)    Exculpation (Plan § 14.2(a)).*

41.    The Plan provides for the exculpation of, and limitation of liability for the Exculpated Parties. The Exculpation is subject to a standard carve-out for gross negligence, actual fraud, and willful misconduct. The Exculpation is also narrowly tailored to protect Estate fiduciaries for their actions taken in furtherance of the Chapter 11 Cases.

42.    The Exculpated Parties have played critical roles, made significant contributions and participated in the Chapter 11 Cases in good faith. The Exculpation is necessary to protect those Estate fiduciaries who have contributed to the Debtors' Sale and Plan efforts from collateral attacks related to their good-faith acts or omissions. Further, the scope of the

Exculpation is targeted, and has no effect on liability that is determined to have constituted gross negligence, actual fraud, or willful misconduct. Accordingly, the Exculpation is appropriate, consistent with applicable law and should be approved.

*(iv)      Injunction (Plan § 14.2(d))*

43.      Section 14.2(d) of the Plan, as modified to address the Informal Response from the U.S. Trustee, generally provides that all Entities holding Claims or Interests are permanently enjoined from commencing or continuing in any matter, action or proceeding relating to any Claim or Interest that has been discharged, released, or exculpated pursuant to the Plan or from in any way attempting to enforce, collect, or recover anything (including assertions of any right of setoff, subrogation, or recoupment) on account of such Claims or Interests.  See Plan § 14.2(d).  The Injunction is necessary to, among other things, preserve and enforce the Releases and Exculpation, and is appropriately tailored to achieve that purpose.  Accordingly, the Court should approve the injunction as set forth in the Plan.

### B.      The Debtors Have Complied with the Applicable Provisions of the Bankruptcy Code—11 U.S.C. § 1129(a)(2).

44.      Section 1129(a)(2) of the Bankruptcy Code requires that the "proponent of the plan complies with the applicable provisions of this title."  11 U.S.C. § 1129(a)(2).  The legislative history to section 1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code. See H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978) ("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure"); see also In re Resorts Int'l Inc., 145 B.R. 412, 468–69 (Bankr. D.N.J. 1990); In re Elsinore Shore Assocs., 91 B.R. 238, 258 (Bankr. D.N.J. 1988).  In determining whether a plan proponent has complied with this section, courts

22

focus on whether the proponent has adhered to the disclosure and solicitation requirements of sections 1125 and 1126.  See In re PWS Holding Corp., 228 F.3d at 248.

45.     The Debtors complied with all requirements set forth in the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Solicitation Procedures Order governing notice, disclosure, and solicitation in connection with the Combined Disclosure Statement and Plan.  Accordingly, the requirements of section 1129(a)(2) of the Bankruptcy Code have been satisfied.

**C.     The Combined Disclosure Statement and Plan Has Been Proposed in Good Faith and Not by Any Means Forbidden by Law—11 U.S.C. § 1129(a)(3).**

46.     Section 1129(a)(3) requires that a chapter 11 plan be "proposed in good faith and not by any means forbidden by law."  See 11 U.S.C. § 1129(a)(3).  "The good faith standard requires that the plan be 'proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code.'"  In re Coram Healthcare Corp., 271 B.R. 228, 234 (Bankr. D. Del. 2001) (citations omitted).  In determining whether a plan has been proposed in good faith, courts have recognized that they should avoid applying any hard and inflexible rules, but should instead evaluate each case on its own merits.  See, e.g., In re NII Holdings, Inc., 288 B.R. 356, 362 (Bankr. D. Del. 2002); Century Glove, 1993 WL 239489, at *4 (stating good faith should be evaluated in light of the totality of the circumstances surrounding confirmation); In re PWS Holdings Corp., 228 F.3d at 243 (finding that plan was proposed in good faith).

47.     The Debtors proposed the Plan in good faith and not by any means forbidden by law.  The Plan is the culmination of significant arm's length and good faith negotiations among the Debtors, the Committee, the DIP Secured Parties, the Prepetition CIT Secured Parties, the parties to the 9019 Settlement Agreement and other significant parties in interest and reflects the

results of these negotiations.  The Debtors submit that the Plan is fundamentally fair to all stakeholders and has been proposed with the legitimate purpose of liquidating and winding down the affairs of the Debtors in a timely and efficient manner.  Accordingly, the Plan has been filed in good faith and satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

> **D.      The Combined Disclosure Statement and Plan Provides that Payments Made by the Debtors for Services or Costs and Expenses are Subject to Approval—11 U.S.C. § 1129(a)(4).**

48.      Section 1129(a)(4) of the Bankruptcy Code provides that a bankruptcy court shall confirm a plan only if "payment made or to be made by the proponent . . . for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable."  11 U.S.C. § 1129(a)(4).  Section 1129(a)(4) has been construed to require that all payments of professional fees paid from estate assets be subject to review and approval by the bankruptcy court as to the reasonableness of such fees.  See, e.g., Lisanti v. Lubetkin (In re Lisanti Foods, Inc.), 329 B.R. 491, 503 (D.N.J. 2005); In re Resorts Int'l, Inc., 145 B.R. at 476.

49.      In accordance with section 1129(a)(4) of the Bankruptcy Code, no payment for services or costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Combined Disclosure Statement and Plan and incidental to the Chapter 11 Cases, including Professional Fee Claims, has been or will be made by the Debtors other than payments that have been authorized by order of the Court.  Further, Section 6.1(c) of the Plan provides that Professional Fee Claims are subject to Court approval and the standards of the Bankruptcy Code.  Accordingly, the provisions of the Combined Disclosure Statement and Plan comply with section 1129(a)(4) of the Bankruptcy Code.

E.    **The Debtors Have Disclosed the Identity of Directors and Officers
and the Nature of Compensation of Insiders—11 U.S.C. § 1129(a)(5).**

50.    Section 1129(a)(5)(A) of the Bankruptcy Code requires the proponent of any plan

to disclose the "identity and affiliations of any individual proposed to serve, after confirmation of

the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor

participating in a joint plan with the debtor, or a successor to the debtor under the plan," and

requires a finding that "the appointment to, or continuance in, such office of such individual, is

consistent with the interests of creditors and equity security holders and with public policy." See

11 U.S.C. § 1129(a)(5)(A)(i)–(ii).  Additionally, section 1129(a)(5)(B) requires the proponent of

a plan to disclose the "identity of any insider that will be employed or retained by the

reorganized debtor, and the nature of any compensation for such insider."  See 11 U.S.C. §

1129(a)(5)(B).  The Debtors have provided the information required under section 1129(a)(5) by

identifying the Litigation Trustee and the members of the Litigation Trust Oversight Committee.

The appointment of the Litigation Trustee will be approved in the Confirmation Order.  Further,

Section 9.3 of the Plan provides that the Litigation Trustee shall be deemed to be the sole officer

and director of each Debtor.  Based upon the foregoing, the Plan satisfies the requirements of

section 1129(a)(5) of the Bankruptcy Code.

F.    **The Combined Disclosure Statement and Plan Does Not Contain
Any Rate Changes Subject to the Jurisdiction of Any
Governmental Regulatory Commission—11 U.S.C. § 1129(a)(6).**

51.    Section 1129(a)(6) of the Bankruptcy Code requires that any regulatory

commission having jurisdiction over the rates charged by the reorganized debtor in the operation

of its business approve any rate change under the plan.  See 11 U.S.C. § 1129(a)(6).  The Plan

does not provide for any rate changes subject to the jurisdiction of any governmental regulatory

commission.  Accordingly, the Debtors submit that section 1129(a)(6) of the Bankruptcy Code is inapplicable to the Plan.

**G.  The Combined Disclosure Statement and Plan is in the Best Interests of Creditors —11 U.S.C. § 1129(a)(7).**

52.    Section 1129(a)(7) of the Bankruptcy Code requires that a plan be in the best interests of creditors and equity holders.  See 11 U.S.C. § 1129(a)(7).  This "best interests" test focuses on individual dissenting creditors rather than classes of claims.  See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship, 526 U.S. 434, 441 n.13 (1999).  The best interests test requires that each holder of a claim or equity interest either accept the plan or receive or retain under the plan property having a present value, as of the effective date of the plan, not less than the amount such holder would receive or retain if the debtor was liquidated under chapter 7 of the Bankruptcy Code.  See 11 U.S.C. § 1129(a)(7).  If a class of claims or equity interests unanimously approves the plan, the best interests test is deemed satisfied for all members of that class. See In re Drexel Burnham Lambert Group, Inc., 138 B.R. at 761.

53.    Under the Plan, Classes 3, 4, 5, and 6 are Impaired.  The test, therefore, requires that each Holder of a Claim or Interest in Classes 3, 4, 5, and 6 either accept the Plan, or receive or retain under the Plan property having a present value, as of the Effective Date, not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

54.    The Debtors have satisfied section 1129(a)(7).  The Debtors are not seeking to require Holders of Claims or Interests to accept non-cash consideration so that the Debtors can pursue going-concern value.  During the course of these Chapter 11 Cases, the Debtors sold substantially all of their assets, and, after the Sale closed, the Debtors proposed the Plan and began the process of winding down the Estates.

55.     As demonstrated by the liquidation analysis attached to the Plan as Exhibit A (the "Liquidation Analysis"), the best interests test is satisfied as to each Holder of an Impaired Claim and no party in interest has asserted otherwise.   As set forth in the Liquidation Analysis, conversion of these Chapter 11 Cases would have a negative impact on the ultimate proceeds available for distribution to Creditors, including, without limitation, as a result of an increase in Administrative Claims because there would be an additional tier of Administrative Claims by the chapter 7 trustee and his or her professionals.   The chapter 7 trustee's professionals, including legal counsel and accountants, would add administrative expenses that would be entitled to be paid ahead of Allowed Claims against, or Allowed Interests in, the Debtors.   The Estates would also be obligated to pay all unpaid expenses incurred by the Debtors and the Committee during the Chapter 11 Cases, which would continue to be allowed in the chapter 7 case as well.

56.     Furthermore, the Liquidation Analysis indicates that each Holder of a Claim or Interest in an Impaired Class has accepted the Plan or will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.   As set forth more fully in the Madden Declaration, the Debtors believe that the estimated liquidation values set forth in the Liquidation Analysis are fair and reasonable estimates of the value of the Debtors' assets upon a hypothetical liquidation under chapter 7 of the Bankruptcy Code and that, based on those estimates, each Class of Claims and Interests will receive at least as much as that Class would receive in a hypothetical chapter 7 liquidation.   Madden Declaration at ¶ 32.

57.     For the reasons set forth above, the Debtors believe that the Plan clearly provides recovery greater than the recovery in a chapter 7 for Holders of Allowed Claims, and, therefore,

the Plan complies with section 1129(a)(7) of the Bankruptcy Code and meets the requirements of the "best interests" test.

**H.     The Combined Disclosure Statement and Plan Has Been Accepted by an Impaired Voting Class—11 U.S.C. § 1129(a)(8).**

58.     Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims and interests either has accepted or is not impaired under a chapter 11 plan.  See 11 U.S.C. § 1129(a)(8).  The Plan is a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors, as described in Article II of the Plan.  As set forth in Article II, Classes 1 and 2 are Unimpaired and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Class 3 General Unsecured Claims, which is the only Class of Impaired Claims and Interests entitled to vote to accept or reject the Plan, overwhelmingly voted to accept the Plan pursuant to section 1126(c) of the Bankruptcy Code.  Class 4 (Subordinated Claims), Class 5 (Intercompany Claims), and Class 6 (Interests) were deemed to have rejected the Plan and, therefore, were not entitled to vote on the Plan.

**I.     The Combined Disclosure Statement and Plan Provides for Payment in Full of All Allowed Priority Claims—11 U.S.C. § 1129(a)(9).**

59.     Section 1129(a)(9) of the Bankruptcy Code requires that all claims entitled to priority pursuant to section 507(a) of the Bankruptcy Code be paid in full in cash unless the holders thereof agree to a different treatment.  See 11 U.S.C. § 1129(a)(9).  As required by section 1129(a)(9) of the Bankruptcy Code, Articles VI and VII of the Plan provide for full payment to all Holders of Administrative Claims, Other Secured Claims, and Priority Non-Tax Claims.

60.     Section 6.1 of the Plan provides that each Holder of an Allowed Administrative Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Administrative Claim: (i) Cash equal to the amount of such Allowed

28

Administrative Claim; or (ii) such other treatment as to which the Debtors or the Litigation Trustee, as applicable, and the Holder of such Allowed Administrative Claim shall have agreed upon in writing.

61.      Section 6.3 of the Plan provides that within the time period provided in Article X of the Plan, each Holder of an Allowed Priority Tax Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Priority Tax Claim: (i) Cash equal to the amount of such Allowed Priority Tax Claim; or (ii) such other treatment as to which the Debtors or the Litigation Trustee, as applicable, and the Holder of such Allowed Priority Tax Claim shall have agreed upon in writing.

62.      Section 7.1 of the Plan provides that each Holder of an Allowed Priority Non-Tax Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 1 Claim: (a) cash equal to the amount of such Allowed Priority Non-Tax Claim; or (b) such other treatment which the Debtors or the Litigation Trustee, as applicable, and the Holder of such Allowed Priority Non-Tax Claim have agreed upon in writing.

63.      In addition, Section 7.2 of the Plan provides that each Holder of an Allowed Other Secured Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 2 Claim: (a) return of the collateral securing such Allowed Other Secured Claim; (b) Cash equal to the amount of such Allowed Other Secured Claim; or (c) such other treatment which the Debtors or the Litigation Trustee, as applicable, and the Holder of such Allowed Other Secured Claim have agreed upon in writing.

64.      Accordingly, the Debtors submit that the Plan complies with section 1129(a)(9) of the Bankruptcy Code.

**J.      At Least One Impaired, Non-Insider Class Has
         Accepted the Plan—11 U.S.C. § 1129(a)(10).**

65.      Section 1129(a)(10) of the Bankruptcy Code requires that at least one impaired
class of claims must accept the plan, excluding the votes of insiders.   See 11 U.S.C. §
1129(a)(10).  At least one Impaired Class of Claims or Interests has accepted the Plan, excluding
the votes of insiders, and as set forth above, the Voting Class for each Debtor has accepted the
Plan.  Accordingly, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy
Code.

**K.      The Plan is Feasible—11 U.S.C. § 1129(a)(11).**

66.      Pursuant to section 1129(a)(11) of the Bankruptcy Code, a chapter 11 plan may be
confirmed only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or
the need for further financial reorganization, of the debtor or any successor to the debtor under
the plan, unless such liquidation or reorganization is proposed in the plan."   11 U.S.C. §
1129(a)(11).  Pursuant to section 1129(a)(11) of the Bankruptcy Code, the Court must determine,
among other things, that confirmation of the Plan is not likely to be followed by the liquidation
or need for further financial reorganization of the Debtors or any successors to the Debtors under
the Plan (unless such liquidation or reorganization is proposed in the Plan).  These conditions are
referred to as the "feasibility" of the Plan.

67.      The Plan is a liquidating plan and, accordingly, all of the Debtors' remaining
assets, including Retained Causes of Actions, will be liquidated and distributed to Holders of
Allowed Claims pursuant to the terms of the Plan, and provided the Plan is confirmed and goes
effective, the Debtors will be dissolved on or after the Effective Date.  To implement the wind
down and dissolution of the Debtors, the Plan provides for the appointment of the Litigation
Trustee to, among other things, serve as the sole officer and director of each Debtor, to make the

necessary Distributions to Holders of Allowed Claims under the Plan and pursue the Retained Causes of Action.  Additionally, the Debtors believe that the Cash and any additional proceeds from the liquidation of the Litigation Trust Assets will be sufficient to allow the Litigation Trustee to make all the payments required under the Plan and take any other actions necessary thereto.

68.    Accordingly, the Plan satisfies the requirements of feasibility under section 1129(a)(11) of the Bankruptcy Code.

**L.    <u>All Statutory Fees Have or Will Be Paid—11 U.S.C. § 1129(a)(12).</u>**

69.    Section 1129(a)(12) of the Bankruptcy Code provides that a court may confirm a chapter 11 plan only if "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan."  11 U.S.C. § 1129(a)(12).  Section 6.1(d) of the Plan provides for the payment, on or before the Effective Date, of any fees due pursuant to section 1930 of title 28 of the United States Code.  Therefore, the Plan meets the requirements of section 1129(a)(12) of the Bankruptcy Code.

**M.    The Combined Disclosure Statement and Plan**
**<u>Appropriately Treats Retiree Benefits—11 U.S.C. § 1129(a)(13).</u>**

70.    Section 1129(a)(13) of the Bankruptcy Code requires that a chapter 11 plan provide for the continued payment of certain retiree benefits "for the duration of the period that the debtor has obligated itself to provide such benefits."  11 U.S.C. § 1129(a)(13).  The Debtors have no obligations to provide any such retiree benefits, and, accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Plan.

N.      **Sections 1129(a)(14)–(16) of the Bankruptcy Code are Inapplicable.**

71.     None of the Debtors are (a) required to pay any domestic support obligations, (b) individuals, or (c) nonprofit corporations or trusts.   Accordingly, sections 1129(a)(14) through (16) of the Bankruptcy Code are not applicable.  See In re Sea Launch Co., L.L.C., No. 09-12153 (BLS), 2010 Bankr. LEXIS 5283, at *41 (Bankr. D. Del. July 30, 2010) ("Section 1129(a)(16) by its terms applies only to corporations and trusts that are *not* moneyed, business, or commercial.").

O.      **The Plan Satisfies the "Cramdown" Requirements under
        Section 1129(b) of the Bankruptcy Code for Non-Accepting Classes.**

72.     Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims and interests either accept a plan or be unimpaired under the plan.  See 11 U.S.C. § 1129(a)(8). Section 1129(b) of the Bankruptcy Code provides that if all applicable requirements of section 1129(a) are met—notwithstanding a failure to comply with section 1129(a)(8)—a plan may be confirmed so long as it does not discriminate unfairly and is fair and equitable with respect to each class of claims and interests that is impaired and has not accepted the plan.

73.     Therefore, to confirm a plan that has not been accepted by all impaired classes, the plan proponent must show that the plan does not "discriminate unfairly" against, and is "fair and equitable" with respect to, the non-accepting impaired classes.  See, e.g., John Hancock Mut. Life Ins. Co., 987 F.2d at 157 n.5; see also In re Armstrong World Indus., Inc., 432 F.3d 507, 512 (3d Cir. 2005); Kurak v. Dura Auto. Sys., Inc. (In re Dura Auto. Sys., Inc.), 379 B.R. 257, 271–72 (Bankr. D. Del. 2007); In re Lernout & Hauspie Speech Prods., N.V., 301 B.R. 651, 660 (D. Del. 2003).

74.     As the Voting Class voted to accept the Plan, the only Impaired Classes that did not accept the Plan are: Class 4 (Subordinated Claims), Class 5 (Intercompany Claims), and

Class 6 (Interests).  As discussed below, the Plan may be confirmed as to each of these Classes pursuant to the "cramdown" provisions of section 1129(b) of the Bankruptcy Code.

       **1.**       **The Plan Does Not Unfairly Discriminate With Respect to Any Class.**

75.     Section 1129(b)(1) of the Bankruptcy Code prohibits unfair discrimination with respect to any impaired class of claims or interests that has not accepted the plan.  <u>See</u> 11 U.S.C. 1129(b)(1).  A plan unfairly discriminates in violation of section 1129(b)(1) of the Bankruptcy Code only if similar classes are treated differently without a reasonable basis for the disparate treatment.  <u>See, e.g.</u>, <u>In re Rubicon U.S. REIT, Inc.</u>, 434 B.R. 168, 175 (Bankr. D. Del. 2010) (noting that courts generally look to whether "[v]alid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan"); <u>In re Lernout & Hauspie Speech Prods.</u>, 301 B.R. at 660 ("The hallmarks of the various [unfair discrimination] tests have been whether there is a reasonable basis for the discrimination, and whether the debtor can confirm and consummate a plan without the proposed discrimination").  As between two classes of claims or two classes of equity interests, there is no unfair discrimination if (i) the classes are comprised of dissimilar claims or interests, <u>See, e.g.</u>, <u>In re Johns-Manville Corp.</u>, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986), <u>aff'd in part, rev'd in part on other grounds</u>, 78 B.R. 407 (S.D.N.Y. 1987), <u>aff'd, In re Johns-Manville Corp.</u>, 843 F.2d 636 (2d Cir. 1988), or (ii) taking into account the particular facts and circumstances of the case, there is a reasonable basis for such disparate treatment.  <u>See, e.g.</u>, <u>In re Buttonwood Partners, Ltd.</u>, 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990).

76.     The Plan does not "discriminate unfairly" with respect to Classes 4, 5 and 6, as the Plan does not provide any distributions to similarly-situated Claim or Interest Holders.  The Claims and Interests in Classes 4, 5 and 6 are legally and factually distinct from Claims and Interests in other Classes and are properly classified in separate Classes.  The Claims in Class 4

are all subordinate to the priority of the Claims in Classes 1 through 3.  Class 5 is the only Class that contains Claims of a Debtor against another Debtor, which are routinely placed in separate classes from other Claims, and Class 6 is the only Class that contains Interests.  Therefore, the Plan does not unfairly discriminate with respect to any Impaired Class that did not accept the Plan.

### 2. The Combined Disclosure Statement and Plan is Fair and Equitable.

77.     Section 1129(b)(2) of the Bankruptcy Code provides that the plan is fair and equitable with respect to a class of impaired unsecured claims or interests if, under the plan, no holder of any junior claim or interest will receive or retain property under the plan on account of such junior claim or interest.  See 11 U.S.C. § 1129(b)(2)(B)(ii), (C)(ii).

78.     Distributions under the Plan are made in the order of priority prescribed by the Bankruptcy Code and in accordance with the rule of absolute priority.  With respect to the Classes that are deemed to reject the Plan—Classes 4, 5 and 6—no Claim or Interest junior to such Classes will receive a recovery under the Plan on account of such Claim or Interest. Accordingly, the Plan is "fair and equitable" and, therefore, consistent with the requirements of section 1129(b) of the Bankruptcy Code.

### P. The Combined Disclosure Statement and Plan Is Not an Attempt to Avoid Tax Obligations—11 U.S.C. § 1129(d).

79.     Section 1129(d) of the Bankruptcy Code provides that a court may not confirm a plan if the principal purpose of the plan is to avoid taxes or the application of Section 5 of the Securities Act of 1933 (the "Securities Act").  See 11 U.S.C. § 1129(d).  The Plan meets these requirements because the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of the Securities Act, and no party in interest has filed an objection alleging otherwise.  The principal purpose of the Plan is to effectuate the Debtors' orderly

liquidation, in a timely and efficient manner, through a Distribution mechanism that will maximize creditor recoveries.   Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

## VI.    CONCLUSION

80.    For the reasons set forth in this Memorandum, the Debtors respectfully request that the Court enter an order confirming the Plan, in substantially the form of the proposed Confirmation Order the Debtors have filed concurrently herewith.

Dated: June 14, 2024
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Carol E. Cox*
Edmon L. Morton (No. 3856)
Matthew B. Lunn (No. 4119)
Carol E. Cox (No. 6936)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
emorton@ycst.com
mlunn@ycst.com
ccox@ycst.com

-and-

**WILLKIE FARR & GALLAGHER LLP**
Brian S. Lennon (admitted *pro hac vice*)
Debra M. Sinclair (admitted *pro hac vice*)
Erin C. Ryan (admitted *pro hac vice*)
Jessica D. Graber (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
blennon@willkie.com
dsinclair@willkie.com
eryan@willkie.com
jgraber@willkie.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*