```
                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE

                                    .   Chapter 11
IN RE:                              .
                                    .   Case No. 23-11759(MFW)
UNCONDITIONAL LOVE, INC.,           .
et al,                              .
                                    .   824 Market Street
                                    .   Wilmington, Delaware 19801
              Debtors.              .
. . . . . . . . . . . . . . . . .   .   Tuesday, June 18, 2024

                    TRANSCRIPT OF VIDEO HEARING
                BEFORE THE HONORABLE MARY F. WALRATH
                   UNITED STATES BANKRUPTCY JUDGE

APPEARANCES VIA ZOOM:   (On the Record)

For the Debtors:          Carol E. Cox, Esq.
                          YOUNG, CONAWAY, STARGATT
                           & TAYLOR, LLP
                          Rodney Square
                          1000 North King Street
                          Wilmington, Delaware 19801

                          Brian S. Lennon, Esq.
                          Erin C. Ryan, Esq.
                          WILLKIE, FARR & GALLAGHER, LLP
                          787 Seventh Avenue
                          New York, New York 10019

For the U.S. Trustee:     Richard Schepacarter, Esq.
                          OFFICE OF THE U.S. TRUSTEE
                          844 King Street, Suite 2207
                          Wilmington, Delaware 19801



(Appearances Continued)

Audio Operator:           Electronically Recorded
                          by Mandy Bartowski, ECRO

Transcription Company:    Reliable
                          1007 N. Orange Street
                          Wilmington, Delaware 19801
                          (302)654-8080
                          Email:  gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.
```

```
APPEARANCES VIA ZOOM:   (On the Record - Continued)

For the Official Committee
of Unsecured Creditors:        Katherine Lynn, Esq.
                               HOGAN LOVELLS US, LLP
                               390 Madison Avenue
                               New York, New York 10017

                               Richard L. Wynne, Esq.
                               HOGAN LOVELLS US, LLP
                               1999 Avenue of the Stars
                               Suite 1400
                               Los Angeles, California 90067

Also Appearing:                John Madden
                               EMERALD CAPITAL ADVISORS

                               Aileen Daversa
                               STRETTO
```

INDEX

| | PAGE |
|---|---|
| DEBTORS' OBJECTION (NON-SUBSTANTIVE) TO PROOF OF CLAIM NUMBERS 94 AND 119 SOLELY FOR PURPOSES OF VOTING ON THE COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF UNCONDITIONAL LOVE AND ITS AFFILIATED DEBTORS | 4 |
| COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF UNCONDITIONAL LOVE AND ITS AFFILIATED DEBTORS | 7 |

| EXHIBIT | EVID. |
|---|---|
| Daversa Declaration | 12 |
| Madden Declaration | 12 |

1  (Proceedings commence at 10:31 a.m.)

2  THE COURT: Good morning. This is Judge Walrath.

3  We're here in the Unconditional Love hearing.

4  I'll turn it over to counsel for the debtor to get

5  us started.

6  MS. COX: Thank you, Your Honor. Good morning.

7  Carol Cox of Young, Conaway, Stargatt & Taylor for the

8  debtors. Can you hear me --

9  THE COURT: I can.

10  MS. COX: -- okay?

11  THE COURT: I can.

12  MS. COX: Great. Excellent.

13  Your Honor, we're here today for confirmation of

14  the combined disclosure statement and plan.

15  But before we get there, we have two other matters

16  on the agenda. The first item is the debtors' motion to

17  extend the period of exclusivity, for which an order has

18  already been entered. So the debtors would like to thank

19  Your Honor and Your Honor's chambers for entering that order.

20  THE COURT: Okay.

21  MS. COX: As to the second item on the agenda,

22  that's the debtors' motion, non substantive objection to

23  Proof of Claim Numbers 94 and 119, which we have going

24  forward on an uncontested basis.

25  Your Honor, as set forth in more detail in the

1    objection, the debtors are simply seeking to ensure that the
2    parties entitled to vote on the plan do so in the amounts and
3    classifications that the debtors believe are appropriate and
4    consistent across the various types of claims.
5            With respect to the specific claims, Your Honor,
6    the claimant filed two proofs of claim asserting that he is
7    owed $150 million on account of a workers' compensation claim
8    that has not yet been adjudicated on the merits.  It's the
9    debtors' position that the claim is unliquidated and wholly
10   contingent and, therefore, should vote in the amount of $1 in
11   accordance with our tabulation rules, as approved in the
12   solicitation procedures order.
13           The debtors are requesting that the claimant only
14   be permitted to vote on account of one claim, not two, as the
15   second claim is duplicative.
16           The debtors submit that, if the claimant is
17   entitled to vote on the combined disclosure statement and
18   plan in this amount currently asserted, the creditor body, as
19   a whole, will be negatively impacted and the plan process
20   will be compromised.  To protect the integrity of the
21   process, the debtors request that the claimant be permitted
22   to vote in the amount of one dollar, as provided for in our
23   approved solicitation procedures.
24           And lastly, Your Honor, we just wanted to mention
25   that no formal responses or objections to the claim objection

1  were received; however, we wanted to note for Your Honor that
2  the debtors received email communication from the claimant on
3  June 2nd that informed us of his vote on the plan.  And that
4  communication we received didn't touch on the substance of
5  the plan or on the merits of the claim objection, but he did
6  vote to reject the plan.
7          So, unless Your Honor has any questions, we'd
8  respectfully request entry of the proposed order.
9          THE COURT:  All right.  Is there anybody here for
10 the claimant?
11    (No verbal response)
12         THE COURT:  I hear none.
13         All right.  I agree that, if it's unliquidated, it
14 should be allowed to vote only in the amount of one dollar
15 per the solicitation procedures, so I will grant the motion.
16         MS. COX:  Thank you, Your Honor.
17         So now I will cede the virtual podium to my co-
18 counsel Erin Ryan of Willkie, Farr & Gallagher to handle the
19 balance of the confirmation hearing.
20         THE COURT:  Thank you.
21         MS. COX:  Thanks.
22         MS. RYAN:  Good morning, Your Honor.  Can you hear
23 me okay?
24         THE COURT:  I can.
25         MS. RYAN:  Thank you.  For the record, Erin Ryan of

1    Willkie, Farr & Gallagher on behalf of the debtors.  I am
2    joined today by my colleague Brian Lennon from Willkie and
3    John Madden from Emerald Capital Advisors, the debtors'
4    financial advisor.  We are also joined on the line by Aileen
5    Daversa from Stretto, the debtors' claims, notice, and
6    balloting agent.
7             Today is a milestone hearing for us.  We are here
8    before the Court to confirm the combined disclosure statement
9    and Chapter 11 plan of Unconditional Love, Inc. and its
10   debtor affiliates, which I will simply refer to throughout
11   today's hearing as "the plan."
12            I'm pleased to report that we are once again before
13   Your Honor on an entirely consensual basis.  But I'm also
14   pleased to report that the plan is supported by the major
15   economic stakeholders in this case; namely, the unsecured
16   creditors' committee.
17            The debtors would like to thank the committee, the
18   Office of the United States Trustee, the 9019 settlement
19   parties, and other key stakeholders for their diligent
20   attention and efforts throughout these cases and, in
21   particular, with respect to the plan before Your Honor today.
22            The consensus reached in these cases was hard
23   fought.  As Your Honor recalls, the debtors commenced these
24   cases in October 2023, with the primary goal of achieving a
25   value-maximizing sale of their assets.  Due to the exhaustive

1    efforts of the company's current directors, senior management
2    team, and advisors, the debtors accomplished their Chapter 11
3    goals.
4              Following the petition date, the debtors conducted
5    a sale process to market check the purchase agreement that
6    they entered into with the stalking horse bidder.  This
7    process ensured that the debtors realized the best possible
8    offer for their assets.
9              Your Honor approved the sale transaction with the
10   stalking horse bidder on December 11th, and the sale closed
11   on December 19th.
12             Following the closing of the sale, the debtors
13   engaged in extensive good faith negotiations with their
14   primary stakeholders on the terms of a consensual Chapter 11
15   plan to wind down their estates.  The plan before Your Honor
16   today is the result of those negotiations.
17             A crucial component to the debtors' ability to put
18   forward this plan and provide any recovery to general
19   unsecured creditors is the settlement that was reached among
20   the debtors, the creditors' committee, the debtors' pre-
21   petition junior secured creditor VMG, and two of the debtors'
22   equipment lessors, SCG and 36th Street Capital, both of which
23   have subordination agreements with VMG.
24             The 9019 settlement agreement is attached as
25   Exhibit B to the plan and is also described in detail in the

1    opening introduction to the plan.  The highlights of this
2    settlement include:
3             First, on account of their pre-petition
4    subordinated notes claims, VMG shall receive a five-million-
5    dollar general unsecured claim and a thirty-million-dollar
6    interest in Class 6.
7             SCG shall receive any distribution on account of
8    VMG's general unsecured claim.
9             36th Street shall receive an allowed administrative
10   expense claim for 37.5 percent of its claim, and the balance
11   of its claim shall be a general unsecured claim.
12            VMG and the debtors' current directors and officers
13   shall receive releases, as set forth in the plan.
14            And most importantly, all remaining cash and assets
15   under the estate will be available for distribution to the
16   general unsecured creditors.
17            Without this settlement, the debtors and their
18   estates would have incurred substantial fees litigating VMG's
19   claim which would have materially reduced the funds available
20   for unsecured creditors.
21            Without the settlement paving the way for recovery
22   to GUCs, the plan -- with this settlement paving the way for
23   recovery to GUCs, this plan also establishes a litigation
24   trust, the terms of which are memorialized in the plan and
25   will be given effect through the litigation trust agreement.

1      So, with this overview, I will next walk the Court
2 through the events that have taken place since the May 7th
3 hearing to today.
4      THE COURT: Okay.
5      MS. RYAN: On May 7th, Your Honor entered the order
6 approving the adequacy of the disclosure statement on an
7 interim basis and approving the solicitation and notice
8 procedures at Docket Number 407.
9      Since the entry of that order, the debtors have
10 launched solicitation to the voting class of general
11 unsecured claims and have provided notice of the confirmation
12 hearing to the non-voting classes.
13      The debtors also filed the plan supplement, first
14 at Docket Number 433, and an amended version filed at Docket
15 Number 447.
16      On June 8th, 2024, the deadline to vote and object
17 to the plan passed.
18      We are happy to report that Class 3, representing
19 general unsecured claims has overwhelmingly voted to accept
20 the plan.
21      Another indication of the broad support that this
22 plan has received is that we have not received any formal
23 objections to the plan. We have worked with the Office of
24 the United States Trustee and other parties-in-interest to
25 consensually resolve the informal comments that we received

1    to the plan and proposed order, which I will address later in
2    this presentation.
3           That brings us to where we are today.  We are
4    seeking approval of the disclosure statement on a final basis
5    and confirmation of the plan.
6           In connection with today's hearing, the debtors
7    filed a memorandum of law in support of confirmation.  This
8    was filed at Docket Number 451.
9           The debtors also filed two declarations in support
10   of confirmation:
11          The first is the declaration of Aileen Daversa of
12   Stretto, the debtors' balloting agent.  Ms. Daversa submitted
13   a voting certification at Docket Number 452 in support of the
14   solicitation process and voting results.
15          The debtors also filed the declaration of John
16   Madden of Emerald Capital Advisors, the debtors' financial
17   advisor.  This is at Docket Number 453.  Mr. Madden is our
18   primary declarant in support of the 1129 confirmation
19   requirements.
20          Your Honor, each of the declarants is on the line
21   and available for cross-examination; Mr. Madden is in the
22   room with me.  At this time, we would respectfully ask that
23   these declarations be admitted into evidence.
24          THE COURT:  Does anybody object to that?
25      (No verbal response)

1       THE COURT: All right. I will allow them to be
2  admitted and made part of the record in support of
3  confirmation.
4       (Daversa Declaration at DI 452 received in evidence)
5       (Madden Declaration at DI 453 received in evidence)
6       MS. RYAN: Thank you, Your Honor.
7       With respect to plan solicitation, the adequacy of
8  the disclosures in the plan was previously approved by this
9  Court on an interim basis and for solicitation purposes. For
10 the reasons set forth in our papers, as well as in Stretto's
11 voting certification and the various affidavits of service
12 that were filed on the docket, we submit that proper notice
13 of today's hearing was provided and that the plan contained
14 adequate information for purposes of satisfying the
15 requirements of the Bankruptcy Code. No objection had been
16 raised to the contrary. As a result, we are seeking final
17 approval of the disclosures in the plan as part of the
18 confirmation order.
19      With respect to the plan itself, the debtors'
20 memorandum of law in support of confirmation and supporting
21 declarations set forth in detail the debtors' arguments that
22 the plan satisfies the requirements of Section 1129 of the
23 Bankruptcy Code. If it's okay with Your Honor, rather than
24 repeat all of the debtors' arguments with respect to the 1129
25 requirements, we will rely on the arguments set forth in our

1     papers.  But I'm happy to walk Your Honor through them, if

2     that's your preference.

3              THE COURT:  That is not necessary.  I think you've

4     done a good job in the memorandum of law.  And since there

5     are no objections, I think there's no contested issue on any

6     of those.

7              MS. RYAN:  Okay.  Thank you, Your Honor.

8              So, next, I will plan to address a few changes that

9     we made to the plan and confirmation order, including to

10    resolve informal comments that we received ahead of today's

11    hearing.

12             THE COURT:  Okay.

13             MS. RYAN:  So these changes are all reflected in

14    the modified version of the plan and in the confirmation

15    order.

16             On June 14th, we filed a modified plan at Docket

17    Number 451 with a cumulative blackline against the

18    solicitation version.

19             We also filed a proposed form of confirmation order

20    at Docket Number 455.

21             But turning to the plan changes, the plan reflects

22    a number of changes to incorporate comments from the U.S.

23    Trustee with respect to the releases, starting with the

24    relevant definitions, the first of which is Section 1.119,

25    the definition of the "release opt-out election," which now

1  provides that, if a holder rejects the plan, they will not be
2  deemed a releasing party.
3        The next is in Section 1.120 and the definition of
4  "releasing parties," which is revised such that a party that
5  does not submit or return a ballot shall not be deemed to
6  grant the release.
7        THE COURT: Uh-huh.
8        MS. RYAN: Third, we took note of Your Honor's
9  question at the disclosure statement hearing and we changed
10 Section 1.135, the definition of "third-party releases,"
11 which now removes the debtor and the estates from that
12 definition.
13       Turning to the releases themselves in Section 14.2,
14 I will touch on the main changes there.
15       In 14.2(a) and (b) we added actual fraud to the
16 list of actions that are not exculpated or released by the
17 debtors.
18       In 14.2(d), this added language is to clarify that
19 the debtors and the litigation trust are not receiving a
20 discharge under Bankruptcy Code Section 524.  It also
21 delineates the scope and extent of the injunction that is
22 granted under the plan and the actions that holders of a
23 claim or interest in the debtors may not take against the
24 debtors or the litigation trust.
25       The confirmation order also incorporates language

1  to resolve informal comments that the debtors received from
2  the IRS and the Texas Comptroller. These changes are in
3  Paragraphs 28 through 33. The purpose of these paragraphs
4  was to reserve all parties' rights in anticipation of filing
5  certain state and federal tax returns and any amendments that
6  may need to be made to these parties' proofs of claim.
7           So, with that, unless Your Honor has any questions
8  about the plan, we would submit that the evidence on the
9  record is sufficient to warrant confirmation of the plan and
10 approval of the disclosures set forth therein on a final
11 basis.
12          THE COURT: All right. I had no questions.
13          Does anyone else wish to be heard with respect to
14 confirmation or approval of the disclosure statement on a
15 final basis?
16          MS. LYNN: Yes, Your Honor. Good morning.
17 Katherine Lynn of Hogan Lovells on behalf of the committee of
18 unsecured creditors. I'm joined by my colleague Rick Wynne.
19          Your Honor, we wanted to state on the record this
20 morning the committee's support for the confirmation of the
21 debtors' combined disclosure statement and plan.
22          As we said at the disclosure statement hearing last
23 month, the committee believes that the debtors' plan and, in
24 particular, the 9019 settlement, which the plan incorporates,
25 is the best and most efficient outcome for all parties-in-

1  interest in this case.

2  The committee members have been very actively
3  involved in this matter and view this plan as the best
4  outcome for all general unsecured creditors.  This support is
5  reflected in the overwhelming number of votes that were
6  received by the debtors approving the plan; in fact, 96
7  percent of the general unsecured creditors who voted, voted
8  in favor of the plan.  And the committee members who voted
9  all voted in favor of the plan, and they represent nearly $58
10 million in claims against the debtors' estates.

11 The committee is somewhat disappointed here by the
12 limited economic recoveries that will be made available to
13 general unsecured creditors; however, given the results of
14 the debtors' sale process, the committee understands that
15 there are very limited remaining assets of the debtors'
16 estate remaining and the proposed recoveries reflect that
17 reality.

18 As Ms. Ryan stated, post-confirmation, a litigation
19 trust will be established, and the litigation trustee will
20 (indiscernible) for retained causes of action, reconcile
21 claims filed against the debtors' estate, and make
22 distributions to unsecured creditors when appropriate.  The
23 committee is hopeful that, through the retained causes of
24 action, the litigation trustee will be able to secured
25 additional recoveries for unsecured creditors.

1           Finally, we'd just like to thank the debtors and
2    their professionals and all the other professionals involved
3    in this case for working collaboratively with the committee.
4    We appreciate the time and effort made by all parties to
5    reach consensual agreement on a number of issues throughout
6    the case.
7           Unless Your Honor has any questions, I have nothing
8    further on behalf of the committee.
9           THE COURT:  All right.  Thank you.
10          Anybody else?
11      (No verbal response)
12          THE COURT:  All right.  Based on the vote of the
13   creditors -- oh, I'm sorry.  Mr. Schepacarter, did you wish
14   to be heard?
15          MR. SCHEPACARTER:  Yes, Your Honor.  Thank you.  My
16   computer was slow, but apparently I finally got it to work.
17   For the record, Richard Schepacarter for the United States
18   Trustee.
19          I just wanted to say that we did make a number of
20   changes to the plan and we -- there weren't any -- I actually
21   reviewed it, the confirmation order.  There weren't any
22   changes that necessarily needed to be made there.
23          But I did want to note for the record that, if you
24   check the affidavit that was filed at 452, the tabulation,
25   there are a number of parties who actually accepted the plan,

1     but did opt out of the releases, so I wanted to note that for
2     the record.  I thought that was a significant number of
3     people, you know, the creditors who voted and actually opted
4     out.  I thought that was to be -- just t be noted.
5             THE COURT:  All right.  Thank you.
6             All right.  Well, based on the vote of the --
7     overwhelming vote of the creditors in favor, based on the
8     resolution of the informal comments to the plan and proposed
9     form of order reflected on the docket and the lack of
10    objections, I will confirm the plan and give final approval
11    to the disclosure statement in this case.  The parties have
12    spoken and I'm happy to confirm it.
13            MS. RYAN:  Thank you, Your Honor.
14            We would like to thank Your Honor and your chambers
15    for all of your attention the past few months in getting us
16    here to today.
17            THE COURT:  Well, I don't know how much I did, but
18    I thank the committee and the other parties-in-interest for
19    resolving what was interesting issues in the case regarding
20    the VMG claim, and thank the debtor for getting us to where
21    we are today.  Okay?
22            MS. RYAN:  Thank you, Your Honor.
23            UNIDENTIFIED:  Thank you, Your Honor.
24            THE COURT:  I will enter the order.  I think -- did
25    you file it or upload it?  I didn't check the docket, but if

1  you haven't, Ms. Capp will be contacting you.  So, if you

2  submit a form of order, I will enter the order.

3          MS. RYAN:  Thank you, Your Honor.

4          THE COURT:  All right.  We can stand adjourned

5  then, I think.

6          COUNSEL:  Thank you, Your Honor.  Thank you, Your

7  Honor.

8          (Proceedings concluded at 10:50 a.m.)

9                           *****

10                       CERTIFICATION

11         I certify that the foregoing is a correct

12  transcript from the electronic sound recording of the

13  proceedings in the above-entitled matter to the best of my

14  knowledge and ability.

18  _____     June 21, 2024

19  Coleen Rand, AAERT Cert. No. 341

20  Certified Court Transcriptionist

21  For Reliable